JAMES BECKLEY,

      **Plaintiff,**

v.

PRIORITY AUTO GROUP, INC.,

PRIORITY AUTOMOTIVE
HUNTERSVILLE, INC.,

DENNIS ELLMER and

MATTHEW ELLMER

      **Defendants.**

Case No. 3:21-cv-00072-RJC-DSC

### DEFENDANTS PRIORITY AUTO GROUP, INC., DENNIS ELLMER AND MATTHEW ELLMER'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, TRANSFER OF VENUE

Defendants Priority Auto Group, Inc. ("PAG"), Dennis Ellmer ("D. Ellmer") and Matthew Ellmer ("M. Ellmer"), (together, "Add-on Defendants") submit this brief in support of their Motion to Dismiss. Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6), Add-on Defendants respectfully request that all of Plaintiff James Beckley's ("Plaintiff") claims against them be dismissed for (1) lack of personal jurisdiction or (2) failure to state a claim upon which relief may be granted. In the alternative, pursuant to 28 U.S.C. § 1404(a), Add-on Defendants respectfully request that the case be transferred to the Eastern District of Virginia, Norfolk Division.

## I.    INTRODUCTION

On January 6, 2021, Plaintiff filed his Complaint in Mecklenburg County Superior Court asserting purported state law claims against his former employer Defendant Priority Automotive Huntersville, Inc. doing business as Priority Honda Huntersville ("PAH") and Add-On Defendants

for: (1) violation of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat §§ 95-25.1 (Count 1); (2) breach of contract (Count 2); (3) fraudulent inducement and misrepresentation (Count 3); and (4) negligent misrepresentation (Count4). Compl. (ECF No. 1-1). On February 17, 2021, Defendants timely removed the case to this Court. Notice of Removal (ECF No. 1).

Plaintiff's claims against Add-On Defendants are improper and should be dismissed for two independent reasons.

First, Plaintiff's claims against Add-On Defendants should be dismissed under Rule 12(b)(2) because Plaintiff cannot meet his burden of showing that the Court has personal jurisdiction over Add-On Defendants. Plaintiff cannot show that Add-On Defendants are subject to general personal jurisdiction in North Carolina. As Plaintiff acknowledges, PAG is a Virginia corporation and D. Ellmer and M. Ellmer are Virginia residents. Compl. ¶¶ 2, 4-5. Add-On Defendants exist, live, work and conduct business in Virginia. They do not have contacts with North Carolina that would render them "at home" there. Plaintiff likewise cannot show that Add-On Defendants are subject to specific personal jurisdiction in North Carolina. Add-On Defendants have not purposefully availed themselves of the privilege of conducting activities in North Carolina out of which Plaintiff says his claims arise, and the exercise of specific personal jurisdiction over Add-On Defendants in North Carolina would not be constitutionally reasonable. As set forth in the Declarations of PAG's Vice President and Treasurer Stacy Cummings ("Cummings"), D. Ellmer and M. Ellmer attached hereto as **Exhibits 1-3**, all of the alleged acts and omissions giving rise to this action occurred in Virginia. Plaintiff's purported claims do not arise out of or relate to any conduct by PAG or D. Ellmer or M. Ellmer personally in North Carolina. Plaintiff therefore cannot meet his burden to make a prima facie case of specific personal jurisdiction over Add-On Defendants.

2

Second, Plaintiff's claims against Add-On Defendants should be dismissed under Rule 12(b)(6) because they fail to state claims upon which relief can be granted. Add-On Defendants were not Plaintiff's employer and Plaintiff has failed to plausibly allege that they had any agreements with or made any actionable misrepresentations to Plaintiff related to his employment, his compensation, his equity interest or otherwise. Specifically, Plaintiff's purported NCWHA claim (Count 1) fails because: (1) Add-On Defendants are not Plaintiff's employers under the NCWHA; and (2) the wages allegedly withheld were proper under the NCWHA. Plaintiff's purported breach of contract claims (Count 2) fails because: (1) Add-On Defendants have no such relationship with Plaintiff; and (2) the alleged oral contracts are non-existent or an unenforceable "agreement to agree." Plaintiff's purported fraudulent inducement and misrepresentation claim (Count 3) fails because Plaintiff has not alleged: (1) a false representation; or (2) fraudulent intent. Plaintiff's purported negligent misrepresentation claim (Count 4) fails because Plaintiff has not alleged: (1) a false representation; or (2) justifiable reliance.

Alternatively, if the Court finds personal jurisdiction over Add-on Defendants, the Court should transfer the case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a). Virginia is substantially more convenient for the majority of the parties and witnesses - everyone other than Plaintiff.

## II.    FACTUAL BACKGROUND

### A.    PAG Has No Contacts With North Carolina.

PAG is a Virginia corporation with its principal place of business in Chesapeake, Virginia. PAG provides legal, financial, accounting and payroll services to individual dealerships. PAG is comprised of the General Counsel's Office, Human Resources, Payroll and Accounting Comptrollers all of which operate exclusively out of Chesapeake and Suffolk, Virginia.

Declaration of Stacy Cummings ("Cummings Declaration") ¶ 5 (**Ex. 1**). PAG does not engage in any business in North Carolina. PAG does not have any property in North Carolina. PAG does not have any offices or bank accounts in North Carolina. PAG does not have any employees, operations or facilities in North Carolina. *Id.* ¶ 6.

PAG was not involved in any of the alleged acts and omissions giving rise to this action. Plaintiff was never an employee of PAG. PAG was not involved in PAH's interviewing, offering or hiring of Plaintiff. PAG was not involved in the negotiating, offering or acceptance of the terms and conditions of Plaintiff's employment with PAH. All of these events occurred in Virginia and PAG had no involvement in any of them. *Id.* ¶ 9. Plaintiff's purported claims do not arise out of or relate to any conduct by PAG in North Carolina (or elsewhere). *Id.* ¶ 11. Plaintiff fails to identify a single event in North Carolina in which PAG participated. *Id.* ¶ 12.

**B.     D. Ellmer Has No Contacts With North Carolina.**

D. Ellmer is a resident of Virginia Beach, Virginia. Declaration of Dennis Ellmer ("D. Ellmer Declaration") ¶ 2 (**Ex. 2**). His office is in Chesapeake, Virginia. *Id.* ¶ 3. He lives and works in Virginia. *Id.* at ¶ 4. He personally does not engage in any business in North Carolina. He does not have any property, offices or bank accounts in North Carolina. *Id.* ¶ 5.

Plaintiff's purported claims do not arise out of or relate to any conduct by D. Ellmer personally in North Carolina. *Id.* ¶ 11. Plaintiff identifies a single isolated event in North Carolina in which D. Ellmer participated as President of PAH: at a brief airport meeting on July 2, 2019. *Id.* ¶ 12. The airport meeting was merely introductory and there was no discussion of any terms or conditions of Plaintiff's employment or any alleged equity or partnership which was never offered to Plaintiff. *Id.* ¶ 13. The airport meeting was preliminary and irrelevant to the jurisdictional analysis. *Id.* All of Plaintiff's other allegations relate to events in Virginia. *Id.* ¶ 14.

### C.    M. Ellmer Has No Contacts With North Carolina.

M. Ellmer is a resident of Virginia Beach, Virginia.  Declaration of Matt Ellmer ("M. Ellmer Declaration") ¶ 2 (**Ex. 3**).  His office is in Chesapeake, Virginia.  *Id.* ¶ 3.  He lives and works in Virginia.  *Id.* at ¶ 4.  He personally does not engage in any business in North Carolina.  He does not have any property, offices or bank accounts in North Carolina.  *Id.* ¶ 5.

Plaintiff's purported claims do not arise out of or relate to any conduct by M. Ellmer personally in North Carolina.  *Id.* ¶ 11.  Plaintiff identifies two isolated events in North Carolina in which M. Ellmer participated as Chief Operating Officer ("COO") of PAH:  (a) an airport meeting on July 2, 2019; and (b) a dinner on July 18, 2019.  *Id.* ¶ 12.  The airport meeting was merely introductory and there was no discussion of any terms or conditions of Plaintiff's employment (much less any alleged equity or partnership which was never offered to Plaintiff).  *Id.* ¶ 13.  The dinner on July 18, 2019 was celebratory, no concerns were expressed or assurances given, and it occurred over a week after Plaintiff was hired in Virginia on July 10, 2019.  *Id.* ¶ 14.  The airport meeting was preliminary, the dinner was after-the-fact and both are irrelevant to the jurisdictional analysis.  All of Plaintiff's other allegations relate to events in Virginia.  *Id.* ¶ 15.

### D.    All Alleged Acts And Omissions Giving Rise To Action Occurred In Virginia.

Plaintiff formerly was employed by PAH as General Manager ("GM") of the Honda dealership in Huntersville, North Carolina.[1]  PAH is a Virginia corporation with its principal place of business in Chesapeake, Virginia that operated the Honda dealership until it was sold to MileOne AutoGroup ("MileOne") on October 11, 2020.  Cummings Declaration ¶¶ 7-8.  Plaintiff was never an employee of PAG, D. Ellmer or M. Ellmer.  *Id.* ¶ 9.

---

[1] PAH does not challenge personal jurisdiction over it in North Carolina for purposes of this action.  PAH is, however, moving to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6) and joins in and supports Add-on Defendants' alternative motion to transfer the case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a).

5

All of the alleged acts and omissions giving rise to this action occurred in Virginia. PAH interviewed, offered and hired Plaintiff in Virginia. The terms and conditions of Plaintiff's employment with PAH were negotiated, offered and accepted in Virginia. D. Ellmer Declaration ¶ 9; M. Ellmer Declaration ¶ 9. As Plaintiff acknowledges, Plaintiff traveled to Virginia for his job interview on July 8-9, 2019, and PAH offered and hired him in Virginia. Plaintiff accepted the job offer and PAH hired him in Virginia on July 10, 2019. Plaintiff began his employment with PAH on July 19, 2019. Cummings Declaration at ¶ 10; D. Ellmer Declaration ¶ 10; M. Ellmer Declaration ¶ 10. In sum, PAH interviewed, offered and hired Plaintiff in Virginia. The terms and conditions of Plaintiff's employment with PAH were negotiated, offered and accepted in Virginia. Plaintiff's purported claims do not arise out of or relate to any conduct by PAG or D. Ellmer or M. Ellmer personally in North Carolina. D. Ellmer Declaration ¶ 15; M. Ellmer Declaration ¶ 16.

### E.     Plaintiff's Relevant Factual Allegations Fail to Establish And Refute Claims.

PAH operated a Honda dealership in Huntersville, North Carolina. Compl. ¶ 13. Plaintiff was employed by PAH as GM of the Honda dealership in Huntersville, North Carolina from July 19, 2019, until it was sold to MileOne on October 11, 2020. *Id.* ¶ 15.

On July 8, 2019, Plaintiff traveled to Virginia for his job interview. *Id.* ¶ 30. Plaintiff met with the General Managers of Priority Chesapeake Honda and Priority Chesapeake Toyota Robert Chen ("Chen") and Nick Mumejain in Virginia, received short tours of their dealerships in Virginia. These dealerships are separate individual corporations not under PAG or PAH. During this short tour, Plaintiff asked Chen about his dealership and how he earned ownership interest and the benefits of being an "equity partner" in a dealership in Virginia. *Id.*

On July 9, 2019, Plaintiff met with D. Ellmer and M. Ellmer in Virginia. Plaintiff claims that D. Ellmer and M. Ellmer made assurances to him in Virginia. *Id.* ¶¶ 31-32. PAH offered and

hired Plaintiff in Virginia. Plaintiff accepted the job offer and PAH hired him in Virginia on July 10, 2019. Plaintiff began his employment with PAH on July 19, 2019. *Id.* ¶¶ 30-32, 34.

On September 9, 2020, D. Ellmer and M. Ellmer met with Plaintiff and informed him that the Honda dealership in Huntersville, North Carolina would be sold to MileOne on October 11, 2020. *Id*. ¶ 44. On October 11, 2020, PAH sold the Honda dealership to MileOne. *Id.* ¶ 13. On October 23, 2020, MileOne terminated Plaintiff's employment. *Id.* ¶ 45.

Plaintiff claims to have accepted the GM position at PAH "based on the representations and promises made by Dennis Ellmer and Matt Ellmer regarding their promise not to sell Priority Huntersville and Dennis Ellmer's promise of equity ownership in Priority Huntersville after 9 months." *Id.* ¶ 34. Plaintiff claims that by accepting employment he "entered into a binding oral contract to permit [him] to become an equity partner in Priority Huntersville after 9 months of employment." *Id.* ¶ 35. Plaintiff claims breach of contract for "failing to offer him an equity position in Priority Huntersville when [he] reached 9 months of employment." *Id.* ¶ 42.

Plaintiff also claims that under his oral "compensation agreement," he was contractually entitled to receive "a minimum of $40,000 per month during the first 12 months of his employment" and in March 2020 the amount of this guarantee was arbitrarily reduced "to $30,000 per month, in breach of [his] compensation contract" and he is owed "$50,000 (March 2020 — July 2020) because of this breach." *Id.* ¶ 43.

For "Count 1 – Violation of NCWHA," Plaintiff claims that "Defendants violated N.C. Gen. Stat. §§ 95-25.6 and 95-25.7 by failing to pay [him] all promised and earned wages on his regularly paydays." *Id.* ¶ 48. However, Plaintiff fails to allege or identify any facts showing that Add-on Defendants (who were not his employers) had a duty to pay him any wages, much less the exorbitant wages he claims to have "earned," or that the alleged wage withholding was improper.

7

For "Count 2 – Breach of Contract," Plaintiff claims that Defendants breached oral contract(s): (1) "to pay [him] a minimum of $40,000 per month during the first 12 months of his employment;" and (2) "to permit [him] to become an equity shareholder of Priority Huntersville after 9 months of employment." *Id.* ¶¶ 51-52. However, Plaintiff fails to allege or identify any facts showing that Add-On Defendants promised or had a duty to pay him anything or permit him to acquire some unknown equity interest in a dealership operated by another entity PAH.

Plaintiff fails to allege or identify any compensation agreement or any promise to pay him anything (much less a $40K per month minimum) made at any time before, during or after his employment with PAH. Plaintiff likewise fails to allege or identify any of the essential terms of the alleged oral contract to permit him to become an equity shareholder, including the amount of equity interest he would acquire and what he would have to do and pay for it. Plaintiff does not even allege or identify the equity interest he would acquire, much less any of the terms and conditions of his acquisition of it. Refuting Plaintiff's claim that he was allegedly promised some unknown equity interest in Priority Huntersville on unknown terms "after 9 months of employment" on April 19, 2020, he continued to work for PAH through October 11, 2020, and did not raise this issue until he filed his Complaint on January 6, 2021. See Compl. generally.

For "Count 3 – Fraudulent Inducement and Misrepresentation," Plaintiff claims that he was intentionally induced "to accept employment as General Manager of Priority Huntersville through knowingly false representations of fact and current intent regarding the sale of Priority Huntersville and the promise of equity partnership after 9 months of employment." *Id.* ¶ 55. According to Plaintiff, these "false representations and/or concealed material facts were reasonably calculated and intended to deceive [Plaintiff] into leaving employment with Keffer Automotive and accepting employment with Defendants." *Id.* ¶ 57. However, Plaintiff fails to allege or identify any facts

showing that Add-On Defendants made any false misrepresentations or acted with fraudulent intent. Plaintiff cannot plausibly allege that any representations related to not selling the dealership or equity were untruthful when made.

Plaintiff fails to allege or identify any false factual statements about the sale of Priority Huntersville or equity partnership made at any time before, during or after his employment with PAH. Refuting Plaintiff's assertion that PAH misrepresented prior to July 19, 2019, its then "current intent regarding the sale of Priority Huntersville," Priority Huntersville was not sold until 15 months later on October 11, 2020. Refuting Plaintiff's assertion that PAH misrepresented his eligibility for some unknown equity interest in Priority Huntersville as of April 19, 2020, he continued to work for PAH through October 11, 2020 without raising any issues.

For "Count 4 – Negligent Misrepresentation," Plaintiff claims that he "justifiably relied, to his detriment, on Defendants representations regarding the sale of Priority Huntersville, the offer of an equity partnership in Priority Huntersville after 9 months of employment, and the compensation that would be paid to Plaintiff. *Id.* ¶ 61. However, Plaintiff fails to allege or identify any facts showing that Add-On Defendants made any negligent misrepresentations or his justifiable reliance. Plaintiff cannot plausibly allege that any representations related to not selling the dealership, equity or compensation were untruthful when made.

Plaintiff fails to allege or identify any false factual statements about the sale of Priority Huntersville, equity partnership or compensation made at any time before, during or after his employment with PAH. Refuting Plaintiff's assertion that PAH misrepresented he would receive "guaranteed compensation during the first 12 months of his employment" through July 19, 2020, after his compensation was reduced in March 2020 (as a result of the COVID-19 pandemic), he continued to work for PAH through October 11, 2020, without raising this issue.

III.    **THE COURT SHOULD DISMISS ADD-ON DEFENDANTS FOR LACK OF PERSONAL JURISDICTION**

A.    **Legal Standard.**

Plaintiff has the burden of pleading facts showing there is a prima facie basis for the Court to exercise personal jurisdiction over each of the Add-on Defendants. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). While a defendant "must affirmatively raise a personal jurisdiction challenge, . . . the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *UMG Recordings, Inc. v. Kurbanov*, 2020 WL 34769936 *3 (4th Cir. 2020). At that point, Plaintiff has the burden to ultimately "prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2012). Plaintiff has not met (and cannot meet) his burden. Plaintiff cannot show general jurisdiction because Add-on Defendants have not engaged in continuous and systematic activities in North Carolina. Plaintiff cannot show specific jurisdiction because Plaintiff's claims do not arise out of Add-On Defendants' conduct in North Carolina.

B.    **Add-On Defendants Are Not Subject To Personal Jurisdiction in NC.**

Courts in the Fourth Circuit evaluating specific personal jurisdiction[2] "consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

---

[2] There is no conceivable basis for Plaintiff to assert general jurisdiction over Add-on Defendants. No Add-on Defendants could be "fairly regarded as at home" in North Carolina. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

10

Plaintiff cannot establish a prima facie case that (1) Add-on Defendants "purposefully availed" themselves of the privilege of conducting activities in North Carolina or (2) Plaintiff's claims arise out of such activities. Add-on Defendants are all Virginia persons or entities. PAG has never undertaken activities relevant to Plaintiff's claims anywhere, let alone in North Carolina. D. Ellmer and M. Ellmer's alleged activities relevant to Plaintiff's claim occurred in Virginia and were undertaken on behalf of and in their capacity as President and COO of PAH. See Cumming Declaration, D. Ellmer Declaration and M. Ellmer Declaration (**Ex. 1-3**). Plaintiff's failure to establish each of these elements is dispositive.

1. **Plaintiff fails to make a showing that any Add-on Defendants purposefully availed themselves of North Carolina as a forum.**

Plaintiff cannot establish that Add-on Defendants "purposefully availed" themselves of the privilege of conducting activities in this forum. See *Consulting Eng'rs Corp.*, 561 F.3d at 280. Plaintiff does not allege that any Add-on Defendants took particular actions that supposedly establish specific personal jurisdiction. Instead, the Complaint vaguely alleges that a group consisting of all "Defendants" undertook actions involving North Carolina. See Compl. generally. In reality, any alleged North Carolina actions were undertaken by Plaintiff's employer PAH – not PAG, D. Ellmer or M. Ellmer. "This method of 'group pleading' fails to provide any defendant with 'fair notice of what the … claim is and the grounds upon which it rests.'" *Adolphe v. Option One Mortg. Corp.*, 2012 WL 5873308, at *5 (W.D.N.C. 2012). Accordingly, Plaintiff's allegations fail as a matter of law to provide grounds for an exercise of jurisdiction over Add-on Defendants.

In any event, none of Plaintiff's intentionally conflated "group" allegations can possibly show any Add-on Defendants purposefully availed themselves of this forum. Plaintiff makes no allegations involving PAG's activities in this forum, a single allegation involving D. Ellmer's activities in this forum, and two activities involving M. Ellmer's activities in this forum. All fail.

11

As discussed above, PAG was not involved in any of the alleged acts and omissions giving rise to this action. Cummings Declaration ¶ 5. D. Ellmer's one and only alleged interaction with Plaintiff as President of PAH in North Carolina was a preliminary and irrelevant airport meeting. D. Ellmer Declaration ¶¶ 12-14. M. Ellmer's two alleged interactions with Plaintiff as COO of PAH in North Carolina were the preliminary and irrelevant airport meeting and the after-the-fact and irrelevant celebratory dinner on July 18, 2019. M. Ellmer Declaration ¶¶ 12-15. The Complaint's jurisdictional allegations fail to identify any relevant conduct that Add-on Defendants directed at North Carolina. Plaintiff therefore cannot make a prima facie showing of purposeful availment. See Walden, 571 U.S. at 284 (holding that minimum contacts "must arise out of contacts that the defendant *himself* creates with the forum State").

        2.       **Plaintiff's claims do not arise out of any North Carolina activities by the Add-on Defendants.**

Plaintiff also fails to satisfy the "arising out of" prong. This prong requires a connection between the activities to which Plaintiff points for jurisdictional purposes and the activities that underlie his claims. *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 139 (4th Cir. 2020). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* Plaintiff's claims arise out of alleged pre-employment promises, oral agreements and misrepresentations entirely separate from his employment activities as the GM of PAH's Honda dealership in Huntersville, North Carolina. For purposes of these claims, what matters is where the terms and conditions of Plaintiff's employment with PAH were negotiated, offered and accepted in Virginia. PAH interviewed, offered and hired Plaintiff in Virginia. Plaintiff traveled to Virginia for his job interview on July 8-9, 2019, and PAH offered him and hired him in Virginia. Plaintiff accepted the job offer and PAH hired him in Virginia. Cummings Declaration ¶¶ 9-13; D. Ellmer Declaration ¶¶ 9-16; M. Ellmer Declaration ¶¶ 9-17.

12

The fact that Plaintiff ultimately worked for PAH in North Carolina is irrelevant. What matters for jurisdiction purposes is where the alleged promises and representations that Plaintiff now contends are breached or false were made: Virginia (*Id.*); not where Plaintiff alleged worked, "cleaned and organized" "the interior and exterior of Priority Huntersville," "installed a new sales and management team" "improve[d] morale and sales skills," "began a community outreach program," was "consistently praises and recognized" for his "job performance and the results he achieved," or "set all-time records for sales." Compl. ¶¶ 36-39. Plaintiff's failure to connect these extraneous activities that purportedly support jurisdiction and those that underlie the claim is dispositive of the second prong. Plaintiff's alleged employment activities in North Carolina are irrelevant to the allegations from which his claims arise: the negotiation, offering and acceptance of the terms and conditions of his employment with PAH – all of which occurred in Virginia. Plaintiff seeks to subject Add-on Defendants to jurisdiction not by pointing to any conduct that they allegedly committed in North Carolina, but instead by pointing to his own North Carolina activities. This is an improper "attempt[] to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284.

### 3. Exercise of personal jurisdiction would not comport with due process.

If the Court finds that Plaintiff satisfies both the purposeful availment and the arising out of requirements for personal jurisdiction (it should not), the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." *ALS Scan*, 293 F.3d at 712. Plaintiff's attempt to force Add-on Defendants – Virginia persons and entities that have no contacts with North Carolina - to defend themselves here would be unjust.

Because Plaintiff has not sufficiently alleged that Add-on Defendants have directed any activities toward North Carolina, and Plaintiff's claims do not arise from such activities, the exercise of jurisdiction over Add-on Defendants would impose unreasonable burdens on them and be constitutionally unreasonable. *See Consulting Eng'rs*, 561 F.3d at 278. Moreover, Plaintiff has another avenue for relief by asserting these his claims against Add-on Defendants in Virginia where the existence of personal jurisdiction and the propriety of venue is undisputed. The most efficient use of the judicial economy would be for Plaintiff to assert any such claims in Virginia.

## IV.   THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST ADD-ON DEFENDANTS FOR FAILURE TO STATE A CLAIM

### A.   Plaintiff Fails To State A NCWHA Claim (Count 1).

Plaintiffs' claims against Add-on Defendants under the NCWHA fail for two independent reasons. First, Add-on Defendants were not Plaintiff's "employer" under the NCWHA. PAH was Plaintiff's only employer. Second, even if Add-on Defendants are employers under the NCWHA (which they are not), the wages allegedly withheld from Plaintiff were proper under the NCWHA.

#### 1.   Add-On Defendants are not employers under the NCWHA.

"[T]he NCWHA makes an '**employer**' liable for unpaid wages, liquidated damages, costs, and reasonable attorneys' fees." *Powell v. P2Enterprises, LLC*, 247 N.C. App. 731, 734 (2016) (citing N.C. Gen. Stat. § 95–25.22) (emphasis added). The NCWHA explains that an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." N.C. Gen. Stat. § 95-25.2. "To decide whether an individual is an 'employer' for purposes of NCWHA and FLSA liability, courts apply an 'economic reality' test." *Powell*, 247 N.C. App. at 734. "This test examines []the totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." *Id.* at 734-35.

14

"Factors commonly relied on by courts in determining the extent of an individual's operational control over employees include whether the individual: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Id.* at 735; s*ee Steelman v. Hirsch*, 473 F.3d 124, 128 (4th Cir. 2007) ("the 'economic reality' standard calls for pragmatic construction" of employment relationships and any judicial evaluation must examine "the circumstances of the whole activity" instead of "isolated factors").

Plaintiff's allegations that Add-on Defendants are employers are bare legal conclusions, and Plaintiff fails to allege sufficient information to demonstrate that any of them are, in fact, Plaintiff's employer. Compl. ¶¶ 9-12. Plaintiff's allegations are murky and fail to differentiate whether "Priority" refers to PAH or PAG despite defining them separately as "Priority Auto Group" and "Priority Huntersville" earlier in the Complaint, and acknowledging that they are separate and distinct legal entities with wholly different purposes. Compl. Intro., ¶¶ 2-3, 9, 13-14.

Plaintiff's own allegations in the Complaint acknowledge that he was an employee of PAH, and that PAG, D. Ellmer, and M. Ellmer were not his employers. Plaintiff asserts that he was "the General Manager of **Priority Huntersville**"; he was hired as the "General Manager of **Priority Huntersville**"; Plaintiff "accept[ed] employment as General manager of **Priority Huntersville**"; that he was recruited to "**Priority Huntersville**" and the terms and conditions of his employment were negotiated with "**Priority Huntersville**"; that he received an "offer of employment with **Priority Huntersville**"; D. Ellmer intended to sign with Plaintiff, "a deal of partnership with **Priority Honda Huntersville**"; Plaintiff's wife had concerns with the "**Priority Huntersville** General Manager Position"; "During Plaintiff's first year at **Priority Huntersville**"; Plaintiff was praised for "the results he achieved at **Priority Huntersville**." Compl. ¶¶ 15-17, 22, 32-34, 37-39

15

(emphasis added). Plaintiff's complaint continues to alternate between citing PAG or PAH as his employer, or sometimes simply just presumably combining the two as "Priority." PAG was never Plaintiff's employer — Plaintiff was only ever an employee of PAH and as such he has no NCWHA claim against Add-on Defendants.

Plaintiff does not allege, and PAG did not: (1) have the power to hire and fire the employees of PAH; (2) supervise or control employee work schedules or conditions of employment for employees of PAH; or (3) determine the rate and method of payment for employees of PAH; or (4) maintain employment records for employees of PAH. *See Powell*, 247 N.C. App. at 734. Only PAH had the authority required to be considered an "employer" under the NCWHA. As such, Plaintiff fails to allege that PAG was his employer under the NCWHA, and Plaintiff's claims against PAG under the NCWHA must be dismissed as a matter of law.

Similarly, Plaintiff acknowledges that he was employed as a General Manager of PAH, and he fails to state a claim against D. Ellmer as an employer under the NCWHA. Although Plaintiff alleges that D. Ellmer was the President of Priority (Compl. ¶ 10), Plaintiff does not allege that D. Ellmer issued payment to Plaintiff, as Plaintiff has paid by his employer — PAH. Plaintiff **does not** assert that D. Ellmer supervised him, or controlled his work schedule, or maintained his employment records. Only PAH had the authority required to be considered an "employer" under the NCWHA. As such, Plaintiff fails to allege that D. Ellmer was his employer under the NCWHA, and Plaintiff's claims against D. Ellmer under the NCWHA must be dismissed.

Plaintiff also fails to state a claim against M. Ellmer under the NCWHA because M. Ellmer is not an "employer." As explained above, PAH was Plaintiff's sole employer. Although M. Ellmer was involved in Plaintiff's recruitment as an officer of PAH, M. Ellmer would have no authority to hire Plaintiff absent his position as an officer of PAH. While it is true that Plaintiff did

report to M. Ellmer as an officer of PAH, M. Ellmer has no authority to conduct business on behalf of PAH in his personal capacity, and as such, should not be considered an "employer" in his personal capacity. M. Ellmer's interactions with Plaintiff were on behalf of PAH. M. Ellmer did not personally, or in his capacity as an officer of PAH, control Plaintiff's work schedule, or maintain employment records for Plaintiff. Only PAH had the authority required to be considered an "employer" under the NCWHA.

PAH was the entity that had the exclusive power to (1) hire and fire Plaintiff; (2) supervise or control Plaintiff's work schedules or Plaintiff's conditions of employment; (3) determine the rate and method of payment for Plaintiff; and (4) maintain Plaintiff's employment records. *See Powell*, 247 N.C. App. 735. To the extent Plaintiff can state any claim under the NCWHA (which Defendants deny) it would be against his actual employer PAH, not any of the Add-on Defendants.

### 2. Wages allegedly withheld from Plaintiff were proper under NCWHA.

Plaintiff asserts that he had a compensation agreement where he was guaranteed "$40,000 per month during the first 12 months of his employment." Compl. at ¶ 43. Plaintiff asserted that "[i]n **March 2020**, Priority Auto Group arbitrarily reduced the amount of [Plaintiff's pay] to $30,000 per month, in breach of Plaintiff's compensation contract." *Id*. (emphasis added). Plaintiff complains of this reduction, but just paragraphs before in the Complaint, Plaintiff boasts about his increased benefits in the same month to cite his alleged excellent performance, specifically that "[i]n or about March 2020, Priority Auto Group **began paying the full cost of Plaintiff's *family health insurance*** premiums." *Id*. at ¶ 40 (emphasis added).

The NCWHA sets forth scenarios where an employer withholding wages is proper. *See* N.C. Gen. Stat. § 95-25.8. Specifically, the NCWHA provides that "an employer may withhold or divert a portion of an employee's wages for cash shortages, inventory shortages, or loss or

damage to an employer's property after giving the employee written notice of the amount to be deducted seven days prior to the payday on which the deduction is to be made." N.C. Gen. Stat. § 95-25.8(c). Plaintiff fails to plausibly allege that the wages were improperly withheld. Instead, Plaintiff simply propounds conclusory allegations regarding the wages in question without any evidence or support that such wages were withheld improperly. Plaintiff had full knowledge that all employees of PAH were foregoing a portion of their wages beginning in March 2020, as a result of the COVID-19 pandemic. As GM of PAH, Plaintiff personally signed several wage change orders in response to the COVID-19 pandemic for his employees at PAH. For these reasons, Plaintiff has failed to allege a claim against any Add-On Defendants under the NCWHA.

**B.** **Plaintiff Fails To State Breach Of Contract Claims (Count 2).**

In his Complaint Plaintiff asserts two separate bases for breach of contract claims. First Plaintiff claims that all defendants "breached their contract with Plaintiff to pay Plaintiff a minimum of $40,000 per month during the first 12 months of his employment." Compl. ¶ 51. Second, Plaintiff claims that "Defendants breached their contact [sic] with Plaintiff to permit Plaintiff to become an equity shareholder of Priority Huntersville after 9 months of employment." *Id.* at ¶ 52. Any alleged breach of contract claims should be directed to Plaintiff's employer PAH — **the only party with which Plaintiff had an employment relationship or alleged contract.** Add-on Defendants did not contract with Plaintiff for his wages, an equity interest or otherwise, and as such, cannot be liable for any alleged breach.

Plaintiff fails to allege or identify any facts showing how or why Add-On Defendants (who were not his employers) had a duty to (1) pay him anything or (2) permit him to acquire equity in a dealership operated by another entity PAH. On (1), Plaintiff fails to allege or identify any compensation agreement or any promise to pay him anything (much less a $40K per month

18

minimum) made at any time before, during or after his employment with PAH. On (2), Plaintiff fails to allege or identify any of the essential terms of the alleged oral contract to permit him to become an equity shareholder, including the amount of equity interest he would acquire and what he would have to do and pay for it. Plaintiff does not even allege or identify the equity interest he would acquire, much less any of the terms and conditions of his acquisition of it. Plaintiff has failed to plausibly allege any promise or agreement regarding (1) guaranteed wages and any alleged promise or agreement regarding (2) acquisition of an equity interest is an unenforceable "agreement to agree."

It is hornbook contract law in both North Carolina and Virginia that in order for there to be a mutual, valid, and enforceable contract, there must be a meeting of the minds of the parties with regard to the same set of terms and obligations. *Charlotte Motor Speedway, LLC v. County of Cabarrus*, 230 N.C. App. 1, 7 (2013); *see also* Crews *v. Sullivan*, 133 Va. 478 (1922); *Persinger & Co. v. Larrowe*, 254 Va. 404, 408 (Va. 1996) ("Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent, and, therefore, no contract"). Moreover, "[t]o be enforceable, the terms of a contract must be sufficiently definite and certain, and a contract that leav[es] material portions open for future agreement is nugatory and void for indefiniteness." *Miller v. Rose*, 138 N.C.App. 582, 587–88, (2000); *see also Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364 (Va. 1981).

The Supreme Courts of North Carolina and Virginia have definitively held that "agreements to agree" are unenforceable. "A contract to enter into a future contract must specify all its material and essential terms." *Boyce v. McMahan*, 285 N.C. 730, 734 (1974). "If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Id*.; *see also W.J. Schafer Assoc., Inc. v. Cordant, Inc.*, 254 Va. 514, 519 (1997).

Plaintiffs' breach of contract claim must be dismissed as a matter of law. The Court need look no further than the allegations Plaintiff makes regarding his alleged equity arrangement. Plaintiff asserts that PAG's Digital Performance and Marketing Director, who obviously has no authority to negotiate an equity agreement, "**believed** that Dennis Ellmer would be **'open' to the idea** of Plaintiff obtaining an equity stake in Priority Huntersville." Compl. ¶ 26 (emphasis added). Plaintiff also asserts that "Matt Ellmer told Plaintiff that a[n] [] equity arrangement **could be** provided to Plaintiff if he accepted the General Manager position at Priority Huntersville." Compl. ¶ 27 (emphasis added). Plaintiff fails to identify or allege **any** concrete terms of the alleged equity arrangement because there was no such agreement. Talk of the possibility of an alleged partnership opportunity in the future is not an enforceable contract.

Plaintiff has failed to identify any material terms of the alleged contract. Plaintiff fails to allege any facts or information regarding: the cost required for Plaintiff to buy into PAH; the amount of equity Plaintiff was to receive for that unestablished purchase price in PAH; the class of shares Plaintiff would be permitted to purchase in PAH; the timing of such an equity purchase in PAH; what sales benchmarks would be required for Plaintiff to qualify to purchase equity in PAH; how the sale of such equity would occur in the future if Plaintiff wanted to leave PAH; and what portion of costs Plaintiff would share as an equity owner in PAH. The only detail that Plaintiff alleges is, at best, a condition precedent to the agreement to agree — the requirement that Plaintiff be employed by PAH for 9 months before he could *potentially* purchase equity in PAH. There simply was no agreement in place regarding Plaintiff's opportunity to become an equity holder in PAH. And the terms are so substantially uncertain that Plaintiff cannot provide a single term of the alleged equity agreement. This is fatal to Plaintiff's claim.

The Supreme Court of North Carolina's analysis in *Boyce* is directly controlling on this issue. "A contract to enter into a future contract must specify all its material and essential terms… [i]f **any** portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Boyce*, 285 N.C. at 734 (emphasis added). Here, it is not just some aspects of the alleged oral contract that are uncertain: it is all of them.

### C. Plaintiff Fails To State A Fraudulent Inducement Claim (Count 3).

In North Carolina, "the essential elements of fraud in the inducement are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *TradeWinds Airlines, Inc. v. C-S Aviation Servs.*, 222 N.C. App. 834, 733 S.E.2d 162, 168 (N.C. Ct. App. 2012) . In order for the defendants failure to carry out its contractual promise to constitute fraudulent inducement of the contract, defendant's promise "must have been made (1) with the present intent not to carry it out and (2) with the purpose to induce the plaintiff to carry out its promises while the defendant did not intend to fulfill its promises." *Hoyle v. Bagby*, 253 N.C. 778, 117 S.E.2d 760, 762 (N.C. 1961).

North Carolina recognizes the narrow scope of fraudulent inducement claims. *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 594 (M.D.N.C. 2003). The mere failure to carry out a promise in contract does not support a tort action for fraud. *Id*. A failure to perform a promise can be a basis for fraud only where there is evidence the promissor had a "specific intent" not to perform at the time a promise was made. *Id*. "Mere generalities and conclusory allegations of fraud will not suffice to sustain a fraud claim." *Id*. Thus, where, as here, the Defendants did "nothing more than assert that a promissor never intended to honor its obligations under an agreement, dismissal as a matter of law is appropriate." *Id*.

21

In *Norman*, the court granted a Rule 12(b)(6) motion to dismiss and held that a plaintiff-employee failed to allege with the requisite particularity that the defendant-employer never intended to follow, or knew that it would not follow, the policies outlined in its handbook. *Id*. at 595. The employee alleged that the employer:

> [N]ever intended to comply with the Progressive Discipline Policy as evidenced by their reckless procedure in the termination of [employee]. [Employer] never intended to comply with the handbook used as bait for prospective pilots as evidenced by its reckless disregard of the promises of the handbook. . . . [Employer's] actual performance demonstrates that they never intended to be bound by the things that they held out to recruit Plaintiff's employment.

*Id*. The court in *Norman* held that such a general and conclusory allegation was insufficient because it missed "the crucial point." *Id*. "[T]o be liable for fraud, the promissor must do something *more* than just disregard or break its promises." *Id*. The Court found the employer's disregard of the outlined policies was not evidence that the employer never intended to follow policies. Rather, "it is only evidence that they did, in fact, ultimately disregard the promise." *Id*.

In the case at hand, Plaintiff simply alleges that:

> Defendants intentionally induced Plaintiff to accept employment as General Manager of Priority Huntersville through knowingly false representations of fact and current intent regarding the sale of Priority Huntersville and the promise of equity partnership after 9 months of employment; [and]
> …
> Defendants made false representations and/or concealed material facts regarding the sale of Priority Huntersville and the promise of equity partnership after 9 months of employment

Compl. ¶¶ 55-56.

Plaintiff fails to demonstrate with any specificity that any of the Add-on Defendants ever had any fraudulent intent to induce him to accept employment as GM of PAH by making false factual statements regarding [1] the sale of Priority Huntersville and [2] the promise of equity partnership after 9 months of employment. *Id.* ¶ 55. Plaintiff has failed to plausibly allege that

22

these statements were "(1) false representation[s] or concealment of a material fact[s], (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to [Plaintiff]." *TradeWinds*, 733 S.E.2d at 168. Refuting Plaintiff's assertion that (1) PAH misrepresented prior to July 19, 2019, its then "current intent regarding the sale of Priority Huntersville," Priority Huntersville was not sold until 15 months later on October 11, 2020. Refuting Plaintiff's assertion that (2) PAH misrepresented his eligibility for some unknown equity interest in Priority Huntersville as of April 19, 2020, he continued to work for PAH through October 11, 2020 without raising any issues. Plaintiff fails to plausibly allege that these statements were anything other than true at the time they were made.

Plaintiff explains that he was hired by PAH on July 19, 2019 (Compl. ¶ 15) and the dealership operated by PAH was sold on October 11, 2020 (Compl. ¶ 13). Between July, 2019 and October, 2020, nearly fifteen months had passed, and the COVID-19 global pandemic changed the world. Change of circumstances does not constitute fraud. Plaintiff has done "nothing more than assert that [the defendants] never intended to honor its obligations under an [alleged] agreement, [so] dismissal as a matter of law is appropriate." *Tradewinds*, 286 F. Supp. 2d at 594.

### D. Plaintiff Fails To State A Negligent Misrepresentation Claim (Count 4).

Plaintiff asserts that he relied on the defendants' representations regarding the sale of PAH and his ability to purchase equity in PAG. Compl. at ¶ 61. "The tort of negligent misrepresentation occurs when [1] a party justifiably relies [2] to his detriment [3] on information prepared [4] without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988); *see also Simms v. Prudential Life Ins. Co. of America*, 140 N.C. App. 529, 532 (2000).

23

Similar to his fraudulent inducement and misrepresentation claim, Plaintiff's negligent misrepresentation claim fails because he has not alleged that Add-on Defendants made any false representations or his justifiable reliance *Id.* Plaintiff does not allege that Add-on Defendants furnished him any information without a reasonable duty of care, let alone in regard to the sale of the dealership, his alleged equity agreement, or his wages. *Id.*

Plaintiff fails to allege or identify any false factual statements about (1) the sale of Priority Huntersville, (2) equity partnership or (3) compensation made at any time before, during or after his employment with PAH. Refuting Plaintiff's assertions: (1) Priority Huntersville was not sold until 15 months later on October 11, 2020; and Plaintiff continued to work for PAH through October 11, 2020, without raising any issues concerning his alleged partnership interest eligibility as of April 19, 2020 or his compensation reduction due to the COVID-19 pandemic along with all other PAH employees in March 2020.

## V. ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE EASTERN DISTRICT OF VIRGINIA PURSUANT TO 28 U.S.C. § 1404(a).

If this Court finds personal jurisdiction over Add-on Defendants and declines to dismiss the Complaint, the Court should transfer the case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a). Virginia is substantially more convenient for the majority of the parties and witnesses - everyone other than Plaintiff.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The statute was drafted in accordance with the doctrine of forum non conveniens, which permits transfer to a more convenient forum. *See Van Dusen v. Barrack*, 376 U.S. 612, 634 n.30 (1964).

24

Factors courts consider include: the convenience of the parties and witnesses; accessibility of sources of proof; the applicability of each forum state's substantive law; the advantages of having a local court determine questions of local law; judicial economy; obstacles to a fair trial; the public's interest in having local controversies adjudicated locally; and the plaintiff's original choice of forum. See *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997).

The relevant circumstances here support a transfer of this case to the Eastern District of Virginia. The convenience of the witnesses militates in favor of a transfer. Defendants do not employ anyone, or conduct any operations, in North Carolina. Rather, Defendants' business and its locations are based in Virginia. All documents and sources of proof are located in Virginia. This dispute also concerns alleged conduct of Defendants' employees and/or agents in Virginia, including Matthew Pennell, Robert Chen and Nick Mumejain. A trial of the parties' claims will likely require testimony from several different witnesses, all but one of whom (Plaintiff) are based in Virginia. Thus, the location of the parties and witnesses outside this district raises serious concerns as to the expense of discovery, availability of witnesses, this Court's power to secure such witnesses and the adequacy of deposition testimony, among other things.

## IV.    CONCLUSION

For the foregoing reasons, Add-on Defendants respectfully request that the Court grant their Motion to Dismiss for (1) lack of personal jurisdiction or (2) failure to state a claim upon which relief may be granted pursuant to Rules 12(b)(2) and 12(b)(6) or alternatively transfer the case to the Eastern District of Virginia, Norfolk Division pursuant to 28 U.S.C. § 1404(a).

Dated:  February 24, 2021             Respectfully submitted,

                                      **PRIORITY AUTO GROUP, INC.,
                                      DENNIS ELLMER and MATTHEW ELLMER**

                                      By      /s/  Joshua F. P. Long

Joshua F. P. Long (N.C. Bar No. 26497)
WOODS ROGERS PLC
Wells Fargo Tower, Suite 1800
10 S. Jefferson Street
Roanoke, Virginia  24011
Telephone: (540) 983-7725
Facsimile: (540) 983-7711
jlong@woodsrogers.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to all counsel of record.

/s/    Joshua F. P. Long