UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JAMES BECKLEY,<br><br>    Plaintiff,<br><br>v.<br><br>PRIORITY AUTO GROUP, INC.,<br><br>PRIORITY AUTOMOTIVE HUNTERSVILLE, INC.,<br><br>DENNIS ELLMER and<br><br>MATTHEW ELLMER<br><br>    Defendants. | Case No. 3:21-cv-00072-RJC-DSC |

**DEFENDANT PRIORITY AUTOMOTIVE HUNTERSVILLE, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, FOR TRANSFER OF VENUE TO THE EASTERN DISTRICT OF VIRGINIA, NORFOLK DIVISION**

Defendant Priority Automotive Huntersville doing business as Priority Honda Huntersville ("PAH") submit this brief in support of its Motion to Dismiss. Pursuant to Federal Rule of Civil Procedure 12(b)(6), PAH respectfully request that all of Plaintiff James Beckley's ("Plaintiff") claims against PAH be dismissed for failure to state a claim upon which relief may be granted. In the alternative, pursuant to 28 U.S.C. § 1404(a), PAH respectfully requests that the court grant Priority Auto Group, Inc. ("PAG"), Dennis Ellmer ("D. Ellmer"), and ("M. Ellmer")'s motion to transfer the case to the Eastern District of Virginia, Norfolk Division.

## I. INTRODUCTION

On January 6, 2021, Plaintiff filed his Complaint in Mecklenburg County Superior Court asserting purported state law claims against his former employer Defendant Priority Automotive PAH, PAG, D. Ellmer (President of PAH), and M. Ellmer (COO of PAH) for: (1) violation of the

North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat §§ 95-25.1 et seq. (Count 1); (2) breach of contract (Count 2); (3) fraudulent inducement and misrepresentation (Count 3); and (4) negligent misrepresentation (Count4). Compl. (ECF No. 1-1). On February 17, 2021, Defendants timely removed the case to this Court based on diversity jurisdiction. Notice of Removal (ECF No. 1).

Plaintiff's claims against PAH should be dismissed under Rule 12(b)(6) because he fails to state claims upon which relief can be granted. Although PAH is was Plaintiff's employer, Plaintiff's purported NCWHA claim (Count 1) fails because the wages allegedly withheld were proper under the NCWHA. Plaintiff's purported breach of contract claims (Count 2) fail because the alleged oral contracts are non-existent or an unenforceable "agreement to agree." Plaintiff's purported fraudulent inducement and misrepresentation claim (Count 3) fails because Plaintiff has not alleged: (1) a false representation; or (2) fraudulent intent. Plaintiff's purported negligent misrepresentation claim (Count 4) fails because Plaintiff has not alleged: (1) a false representation; or (2) justifiable reliance.

Alternatively, if the Court finds personal jurisdiction over PAG, D. Ellmer, or M. Ellmer, the Court should transfer the case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a). Virginia is substantially more convenient for the majority of the parties and witnesses - everyone other than Plaintiff.

## II. FACTUAL BACKGROUND

Plaintiff formerly was employed by PAH as General Manager ("GM") of the Honda dealership in Huntersville, North Carolina.[1] On July 8, 2019, Plaintiff traveled to Virginia for his

---

[1] PAH does not challenge personal jurisdiction over it in North Carolina for purposes of this action. PAH is, however, moving to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6) and joins in and supports Add-on Defendants' alternative motion to transfer the case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a).

job interview with PAH. Compl. ¶ 30. Plaintiff met with the General Managers Priority Chesapeake Honda and Priority Chesapeake Toyota Robert Chen and Nick Moonjohn in Virginia, received short tours of their dealerships in Virginia. These entities are separate corporations not under PAG or PAH. During these short tours, Plaintiff asked Chen about his dealership and how he earned ownership interest and the benefits of being an "equity partner" in a dealership in Virginia. *Id.*

On July 9, 2019, Plaintiff met with D. Ellmer and M. Ellmer in Virginia. Plaintiff claims that D. Ellmer and M. Ellmer made assurances to him in Virginia. *Id.* ¶¶ 31-32. PAH offered and hired Plaintiff in Virginia. Plaintiff accepted the job offer and PAH hired him in Virginia on July 10, 2019. Plaintiff began his employment with PAH on July 19, 2019. *Id.* ¶¶ 30-32, 34.

On September 9, 2020, D. Ellmer and M. Ellmer met with Plaintiff and informed him that the Honda dealership in Huntersville, North Carolina would be sold to MileOne on October 11, 2020. *Id.* ¶ 44. On October 11, 2020, PAH sold the Honda dealership to MileOne. *Id.* ¶ 13. On October 23, 2020, MileOne terminated Plaintiff's employment. *Id.* ¶ 45.

Plaintiff claims to have accepted the GM position at PAH "based on the representations and promises made by Dennis Ellmer and Matt Ellmer regarding their promise not to sell Priority Huntersville and Dennis Ellmer's promise of equity ownership in Priority Huntersville after 9 months." *Id.* ¶ 34. Plaintiff claims that by accepting employment he "entered into a binding oral contract to permit [him] to become an equity partner in Priority Huntersville after 9 months of employment." *Id.* ¶ 35. Plaintiff claims breach of contract for "failing to offer him an equity position in Priority Huntersville when [he] reached 9 months of employment." *Id.* ¶ 42.

Plaintiff also claims that under his oral "compensation agreement," he was contractually entitled to receive "a minimum of $40,000 per month during the first 12 months of his

3

employment" and in March 2020 the amount of this guarantee was arbitrarily reduced "to $30,000 per month, in breach of [his] compensation contract" and he is owed "$50,000 (March 2020 — July 2020) because of this breach." *Id.* ¶ 43.

For "Count 1 – Violation of NCWHA," Plaintiff claims that "Defendants violated N.C. Gen. Stat. §§ 95-25.6 and 95-25.7 by failing to pay [him] all promised and earned wages on his regular paydays." *Id.* ¶ 48. However, Plaintiff fails to allege or identify any facts showing how or why PAH had a duty to pay him the exorbitant wages he claims to have "earned." See Compl. generally.

For "Count 2 – Breach of Contract," Plaintiff claims that defendants breached oral contract(s): (1) "to pay [him] a minimum of $40,000 per month during the first 12 months of his employment;" and (2) "to permit [him] to become an equity shareholder of Priority Huntersville after 9 months of employment." *Id.* ¶¶ 51-52. However, Plaintiff fails to allege or identify any facts showing how or why any other defendant other than PAH (none of which were his employers) had a duty to pay him anything, or why any defendant would need to permit him to acquire equity in a dealership owned by PAH.

Plaintiff fails to allege or identify any compensation agreement or any promise to pay him anything (much less a $40K per month minimum) made at any time before, during or after his employment with PAH. Similarly, Plaintiff fails to allege or identify any of the essential terms of the alleged oral contract to permit him to become an equity shareholder, including the amount of equity interest he would acquire and what he would have to do and pay for it. Plaintiff does not even allege or identify the equity interest he would acquire, much less any of the terms and conditions of his acquisition of it. Refuting Plaintiff's claim (2) that he was allegedly promised some unknown equity interest in Priority Huntersville on unknown terms "after 9 months of

4

Case 3:21-cv-00072-RJC-DSC   Document 7   Filed 02/24/21   Page 4 of 16

employment" on April 19, 2020, he continued to work for PAH through October 11, 2020, and did not raise this issue until he filed his Complaint on January 6, 2021. See Compl. generally.

For "Count 3 – Fraudulent Inducement and Misrepresentation," Plaintiff claims that he was intentionally induced "to accept employment as General Manager of Priority Huntersville through knowingly false representations of fact and current intent regarding [1] the sale of Priority Huntersville and [2] the promise of equity partnership after 9 months of employment." *Id.* ¶ 55. According to Plaintiff, these "false representations and/or concealed material facts were reasonably calculated and intended to deceive [Plaintiff] into leaving employment with Keffer Automotive and accepting employment with Defendants." *Id.* ¶ 57. However, Plaintiff fails to allege or identify any facts showing how or why PAH made any false misrepresentations or acted with fraudulent intent.

Plaintiff fails to allege or identify any false factual statements about (1) the sale of Priority Huntersville or (2) equity partnership made at any time before, during or after his employment with PAH. Refuting Plaintiff's assertion that PAH misrepresented prior to July 19, 2019, its then "current intent regarding the sale of Priority Huntersville," Priority Huntersville was not sold until 15 months later on October 11, 2020. Refuting Plaintiff's assertion that PAH misrepresented his eligibility for some unknown equity interest in Priority Huntersville as of April 19, 2020, he continued to work for PAH through October 11, 2020 without raising any issues.

For "Count 4 – Negligent Misrepresentation," Plaintiff claims that he "justifiably relied, to his detriment, on Defendants representations regarding [1] the sale of Priority Huntersville, [2] the offer of an equity partnership in Priority Huntersville after 9 months of employment, and [3] the compensation that would be paid to Plaintiff. *Id.* ¶ 61. However, Plaintiff fails to allege or identify

5

any facts showing how or why PAH made any negligent misrepresentations or his justifiable reliance.

In sum, Plaintiff fails to allege or identify any false factual statements about (1) the sale of Priority Huntersville, (2) equity partnership or (3) compensation made at any time before, during or after his employment with PAH. Refuting Plaintiff's assertions: (1) Priority Huntersville was not sold until 15 months later on October 11, 2020; and (2) Plaintiff continued to work for PAH through October 11, 2020. Refuting Plaintiff's assertion that (3) PAH misrepresented he would receive "guaranteed compensation during the first 12 months of his employment" through July 19, 2020, after his compensation was reduced in March 2020 (as a result of the COVID-19 pandemic), he continued to work for PAH through October 11, 2020, without raising this issue. Confirming they are all after the fact disgruntled fabrications, Plaintiff did not raise any of these issues until he filed his Complaint on January 6, 2021. See Compl. generally.

### III. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST PAH FOR FAILURE TO STATE A CLAIM

#### A. Plaintiff Fails To State A NCWHA Claim (Count 1).

"[T]he NCWHA makes an 'employer' liable for unpaid wages, liquidated damages, costs, and reasonable attorneys' fees." *Powell v. P2Enterprises, LLC*, 247 N.C. App. 731, 734 (2016) (citing N.C. Gen. Stat. § 95–25.22). The NCWHA explains that an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." N.C. Gen. Stat. § 95-25.2. "To decide whether an individual is an 'employer' for purposes of NCWHA and FLSA liability, courts apply an 'economic reality' test." *Powell*, 247 N.C. App. at 734. "This test examines []the totality of the circumstances to determine whether the individual has sufficient

operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." *Id.* at 734-35.

"Factors commonly relied on by courts in determining the extent of an individual's operational control over employees include whether the individual: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Id.* at 735; s*ee Steelman v. Hirsch*, 473 F.3d 124, 128 (4th Cir. 2007) ("the 'economic reality' standard calls for pragmatic construction" of employment relationships and any judicial evaluation must examine "the circumstances of the whole activity" instead of "isolated factors").

Although the merits of Plaintiff's claim to unpaid wages are invalid, Beckley is correct that PAH is his employer under the NCWHA. Although they require some synthesis, Plaintiff's own allegations in the Complaint plainly indicate that Beckley knows that he was an employee of PAH, and reciprocally that PAG, D. Ellmer, and M. Ellmer were not his employers.

Specifically, Plaintiff asserts that he was "the General Manager of **Priority Huntersville**"; he was hired as the "General Manager of **Priority Huntersville**"; Plaintiff "accept[ed] employment as General manager of **Priority Huntersville**"; that he was recruited to "**Priority Huntersville**" and the terms and conditions of his employment were negotiated with "**Priority Huntersville**"; that he received an "offer of employment with **Priority Huntersville**"; D. Ellmer intended to sign with Plaintiff, "a deal of partnership with **Priority Honda Huntersville**"; Plaintiff's wife had concerns with the "**Priority Huntersville** General Manager Position"; "During Beckley's first year at **Priority Huntersville**"; Plaintiff was praised for "the results he achieved at **Priority Huntersville**." Compl. ¶¶ 15-17, 22, 32-34, 37-39 (emphasis added). Plaintiff's complaint continues to alternate between citing PAG or PAH as his employer,

or sometimes simply just presumably combining the two as "Priority." PAG was never Plaintiff's employer — Plaintiff was only ever an employee of PAH as evinced by an overwhelming number of references to working for PAH in his own Complaint, and as such, his claims under the NCWHA lie exclusively against PAH.

PAH was the entity that had the exclusive power to (1) hire and fire Plaintiff; (2) supervise or control Plaintiff's work schedules or Plaintiff's conditions of employment; (3) determine the rate and method of payment for Plaintiff; and (4) maintain Plaintiff's employment records. *See Powell*, 247 N.C. App. at 735. To the extent Plaintiff can state any claim under the NCWHA (which Defendants deny) it would be against his actual employer PAH — not PAG, D. Ellmer, or M. Ellmer. Nonetheless, Plaintiffs' claims against PAH under the NCWHA fail because the wages allegedly withheld from Plaintiff were proper under the NCWHA.

1.  **Wages allegedly withheld from Plaintiff were proper under NCWHA.**

Plaintiff asserts that he had a compensation agreement where he was guaranteed "$40,000 per month during the first 12 months of his employment." Compl. at ¶ 43. Plaintiff asserted that "[i]n **March 2020**, Priority Auto Group arbitrarily reduced the amount of [Plaintiff's pay] to $30,000 per month, in breach of Plaintiff's compensation contract." *Id*. (emphasis added). Plaintiff complains of this reduction, but just paragraphs before in the Complaint, Plaintiff boasts about his increased benefits in the same month to cite his alleged excellent performance, specifically that "[i]n or about March 2020, Priority Auto Group **began paying the full cost of Plaintiff's *family* health insurance** premiums." *Id.* at ¶ 40 (emphasis added).

The NCWHA sets forth scenarios where an employer withholding wages is proper. *See* N.C. Gen. Stat. § 95-25.8. Specifically, the NCWHA provides that "an employer may withhold or divert a portion of an employee's wages for cash shortages, inventory shortages, or loss or

8

damage to an employer's property after giving the employee written notice of the amount to be deducted seven days prior to the payday on which the deduction is to be made." N.C. Gen. Stat. § 95-25.8(c). Plaintiff fails to plausibly allege that the wages were improperly withheld. Instead, Plaintiff simply propounds conclusory allegations regarding the wages in question without any evidence or support that such wages were withheld improperly. Plaintiff had full knowledge that all employees of PAH were foregoing a portion of their wages beginning in March 2020, as a result of the COVID-19 pandemic. As GM of PAH, Plaintiff personally signed several wage change orders in response to the COVID-19 pandemic for his employees at PAH. For these reasons, Plaintiff has failed to allege a claim against PAH under the NCWHA.

### B.  Plaintiff Fails To State Breach Of Contract Claims (Count 2).

In his Complaint Plaintiff asserts two separate bases for breach of contract claims. First Plaintiff claims that all defendants "breached their contract with Plaintiff to pay Plaintiff a minimum of $40,000 per month during the first 12 months of his employment." Compl. ¶ 51. Second, Plaintiff claims that "Defendants breached their contact [sic] with Plaintiff to permit Plaintiff to become an equity shareholder of Priority Huntersville after 9 months of employment." *Id.* at ¶ 52. First and foremost, the only plausible entity that Plaintiff could have had a contract with was PAH, his employer, and as such the alleged breach of contract claims are only properly pointed at PAH.

Plaintiff fails to allege or identify any facts showing how or why PAH had a duty to (1) pay him anything or (2) permit him to acquire equity in a dealership owned by another entity PAH. Plaintiff fails to allege or identify any compensation agreement or any promise to pay him anything (much less a $40K per month minimum) made at any time before, during or after his employment with PAH. Plaintiff also fails to allege or identify any of the essential terms of the alleged oral

9

contract to permit him to become an equity shareholder, including the amount of equity interest he would acquire and what he would have to do and pay for it. Plaintiff does not even allege or identify the equity interest he would acquire, much less any of the terms and conditions of his acquisition of it. Plaintiff has failed to plausibly allege any promise or agreement regarding (1) guaranteed wages and any alleged promise or agreement regarding (2) acquisition of an equity interest is an unenforceable "agreement to agree."

It is hornbook contract law in both North Carolina and Virginia that in order for there to be a mutual, valid, and enforceable contract, there must be a meeting of the minds of the parties with regard to the same set of terms and obligations. *Charlotte Motor Speedway, LLC v. County of* Cabarrus, 230 N.C. App. 1, 7 (2013); *see also* Crews *v. Sullivan*, 133 Va. 478 (1922); *Persinger & Co. v. Larrowe*, 254 Va. 404, 408 (Va. 1996) ("Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent, and, therefore, no contract"). Moreover, "[t]o be enforceable, the terms of a contract must be sufficiently definite and certain, and a contract that leav[es] material portions open for future agreement is nugatory and void for indefiniteness." *Miller v. Rose*, 138 N.C.App. 582, 587–88, (2000); *see also Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364 (Va. 1981).

The Supreme Courts of North Carolina and Virginia have definitively held that "agreements to agree" are unenforceable. "A contract to enter into a future contract must specify all its material and essential terms." *Boyce v. McMahan*, 285 N.C. 730, 734 (1974). "If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Id.*; *see also W.J. Schafer Assoc., Inc. v. Cordant, Inc.*, 254 Va. 514, 519 (1997).

Plaintiffs' breach of contract claim must be dismissed as a matter of law. The Court need look no further than the allegations Plaintiff makes regarding his alleged equity arrangement.

10

Plaintiff asserts that PAG's Digital Performance and Marketing Director, who obviously has no authority to negotiate an equity agreement, "**believed** that Dennis Ellmer would be **'open' to the idea** of Plaintiff obtaining an equity stake in Priority Huntersville." Compl. ¶ 26 (emphasis added). Plaintiff also asserts that "Matt Ellmer told Plaintiff that a[n] [] equity arrangement **could be** provided to Plaintiff if he accepted the General Manager position at Priority Huntersville." Compl. ¶ 27 (emphasis added). Plaintiff fails to identify or allege **any** concrete terms of the alleged equity arrangement because there was no such agreement. Talk of the possibility of an alleged partnership opportunity in the future is not an enforceable contract.

Plaintiff has failed to identify any material terms of the alleged contract. Plaintiff fails to allege any facts or information regarding: the cost required for Plaintiff to buy into PAH; the amount of equity Plaintiff was to receive for that unestablished purchase price in PAH; the class of shares Plaintiff would be permitted to purchase in PAH; the timing of such an equity purchase in PAH; what sales benchmarks would be required for Plaintiff to qualify to purchase equity in PAH; how the sale of such equity would occur in the future if Plaintiff wanted to leave PAH; and what portion of costs Plaintiff would share as an equity owner in PAH. The only detail that Plaintiff alleges is, at best, a condition precedent to the agreement to agree — the requirement that Plaintiff be employed by PAH for 9 months before he could *potentially* purchase equity in PAH. There simply was no agreement in place regarding Plaintiff's opportunity to become an equity holder in PAH. And the terms are so substantially uncertain that Plaintiff cannot provide a single term of the alleged equity agreement. This is fatal to Plaintiff's claim.

The Supreme Court of North Carolina's analysis in *Boyce* is directly controlling on this issue. "A contract to enter into a future contract must specify all its material and essential terms… [i]f **any** portion of the proposed terms is not settled, or no mode agreed on by which they may be

11

settled, there is no agreement." *Boyce*, 285 N.C. at 734 (emphasis added). Here, it is not just some aspects of the alleged oral contract that are uncertain: it is all of them.

### C. Plaintiff Fails To State A Fraudulent Inducement Claim (Count 3).

In North Carolina, "the essential elements of fraud in the inducement are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *TradeWinds Airlines, Inc. v. C-S Aviation Servs.*, 222 N.C. App. 834, 733 S.E.2d 162, 168 (N.C. Ct. App. 2012) . In order for the defendants failure to carry out its contractual promise to constitute fraudulent inducement of the contract, defendant's promise "must have been made (1) with the present intent not to carry it out and (2) with the purpose to induce the plaintiff to carry out its promises while the defendant did not intend to fulfill its promises." *Hoyle v. Bagby*, 253 N.C. 778, 117 S.E.2d 760, 762 (N.C. 1961).

North Carolina recognizes the narrow scope of fraudulent inducement claims. *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 594 (M.D.N.C. 2003). The mere failure to carry out a promise in contract does not support a tort action for fraud. *Id*. A failure to perform a promise can be a basis for fraud only where there is evidence the promissor had a "specific intent" not to perform at the time a promise was made. *Id*. "Mere generalities and conclusory allegations of fraud will not suffice to sustain a fraud claim." *Id*. Thus, where, as here, the Defendants did "nothing more than assert that a promissor never intended to honor its obligations under an agreement, dismissal as a matter of law is appropriate." *Id*.

In *Norman*, the court granted a Rule 12(b)(6) motion to dismiss and held that a plaintiff-employee failed to allege with the requisite particularity that the defendant-employer never

intended to follow, or knew that it would not follow, the policies outlined in its handbook. *Id*. at 595. The employee alleged that the employer:

> [N]ever intended to comply with the Progressive Discipline Policy as evidenced by their reckless procedure in the termination of [employee]. [Employer] never intended to comply with the handbook used as bait for prospective pilots as evidenced by its reckless disregard of the promises of the handbook. . . . [Employer's] actual performance demonstrates that they never intended to be bound by the things that they held out to recruit Plaintiff's employment.

*Id*. The court in *Norman* held that such a general and conclusory allegation was insufficient because it missed "the crucial point." *Id*. "[T]o be liable for fraud, the promissor must do something *more* than just disregard or break its promises." *Id*. The Court found the employer's disregard of the outlined policies was not evidence that the employer never intended to follow policies. Rather, "it is only evidence that they did, in fact, ultimately disregard the promise." *Id*.

In the case at hand, Plaintiff simply alleges that:

> Defendants intentionally induced Plaintiff to accept employment as General Manager of Priority Huntersville through knowingly false representations of fact and current intent regarding the sale of Priority Huntersville and the promise of equity partnership after 9 months of employment; [and]
> …
> Defendants made false representations and/or concealed material facts regarding the sale of Priority Huntersville and the promise of equity partnership after 9 months of employment

Compl. ¶¶ 55-56.

Plaintiff fails to demonstrate with any specificity that PAH, or D. Ellmer or M. Ellmer as officers of PAH, ever had any fraudulent intent to induce him to accept employment as GM of PAH by making false factual statements regarding [1] the sale of Priority Huntersville and [2] the promise of equity partnership after 9 months of employment. *Id.* ¶ 55. Plaintiff has failed to plausibly allege that these statements were "(1) false representation[s] or concealment of a material fact[s], (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in

13

fact deceive, (5) resulting in damage to [Plaintiff]." *TradeWinds*, 222 N.C.App. at 839. Refuting Plaintiff's assertion that (1) PAH misrepresented prior to July 19, 2019, its then "current intent regarding the sale of Priority Huntersville," Priority Huntersville was not sold until 15 months later on October 11, 2020. Refuting Plaintiff's assertion that (2) PAH misrepresented his eligibility for some unknown equity interest in Priority Huntersville as of April 19, 2020, he continued to work for PAH through October 11, 2020 without raising any issues. Plaintiff fails to plausibly allege that these statements were anything other than true at the time they were made.

Plaintiff explains that he was hired by PAH on July 19, 2019 (Compl. ¶ 15.) and the dealership owned by PAH was sold on October 11, 2020 (Compl. ¶ 13). Between July, 2019 and October, 2020, nearly fifteen months had passed, and the COVID-19 global pandemic changed the world. Change of circumstances does not constitute fraud. Plaintiff has done "nothing more than assert that [the defendants] never intended to honor its obligations under an [alleged] agreement, [so] dismissal as a matter of law is appropriate." *Tradewinds*, 286 F. Supp. 2d at 594.

### D. Plaintiff Fails To State A Negligent Misrepresentation Claim (Count 4).

Plaintiff asserts that he relied on the defendants' representations regarding the sale of PAH and his ability to purchase equity. Compl. at ¶ 61. "The tort of negligent misrepresentation occurs when [1] a party justifiably relies [2] to his detriment [3] on information prepared [4] without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988); *see also Simms v. Prudential Life Ins. Co. of America*, 140 N.C. App. 529, 532 (2000).

Similar to his fraudulent inducement and misrepresentation claim, Plaintiff's negligent misrepresentation claim fails because he has not alleged that PAH or its officers made any false representations or his justifiable reliance *Id.* Plaintiff does not allege that PAH furnished him any

14

information without a reasonable duty of care, let alone in regard to the sale of the dealership, his alleged equity agreement, or his wages. *Id.*

Plaintiff fails to allege or identify any false factual statements about (1) the sale of Priority Huntersville, (2) equity partnership or (3) compensation made at any time before, during or after his employment with PAH. Refuting Plaintiff's assertions: (1) Priority Huntersville was not sold until 15 months later on October 11, 2020; and Plaintiff continued to work for PAH through October 11, 2020, without raising any issues concerning his alleged partnership interest eligibility as of April 19, 2020 or his compensation reduction due to the COVID-19 pandemic along with all other PAH employees in March 2020.

### IV. PAH JOINS AND SUPPORTS PAG, D. ELLMER, AND M. ELLMER'S MOTION TO TRANSFER THIS CASE TO THE EASTERN DISTRICT OF VIRGINIA PURSUANT TO 28 U.S.C. § 1404(a).

While PAH is not specifically moving this court to do so, if this Court finds personal jurisdiction over PAG, D. Ellmer, or M. Ellmer, and declines to dismiss the Complaint, the Court PAH supports the motion transfer the case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a) that is before this court. For the reasons set forth in the Brief in Support offered by PAG, D. Ellmer, and M. Ellmer, Virginia is substantially more convenient for the majority of the parties and witnesses - everyone other than Plaintiff. Similarly, as mentioned herein, litigating this case in Virginia is substantially more convenient for PAH because after PAH sold the dealership in October, 2020, PAH no longer has any offices, property, employees, officers, directors, or significant contacts whatsoever in North Carolina.

### V. CONCLUSION

For the foregoing reasons, PAH respectfully requests that the Court grant its Motion to Dismiss for (1) lack of personal jurisdiction or (2) failure to state a claim upon which relief may

be granted pursuant to Rule 12(b)(6) or alternatively transfer the case to the Eastern District of Virginia, Norfolk Division in response to PAG, D. Ellmer, and M. Ellmer's Motion pursuant to 28 U.S.C. § 1404(a).

Dated: February 24, 2021

Respectfully submitted,

**PRIORITY AUTO GROUP, INC.,
DENNIS ELLMER and MATTHEW ELLMER**

By  /s/  Joshua F. P. Long

Joshua F. P. Long (N.C. Bar No. 26497)
WOODS ROGERS PLC
Wells Fargo Tower, Suite 1800
10 S. Jefferson Street
Roanoke, Virginia  24011
Telephone: (540) 983-7725
Facsimile: (540) 983-7711
jlong@woodsrogers.com

*Counsel for Defendants Priority Auto Group, Inc., Dennis Ellmer and Matthew Ellmer*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to all counsel of record.

/s/  Joshua F. P. Long