## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

JAMES BECKLEY,

      Plaintiff,

v.                                                                    **Case No. 3:21-cv-00072-RJC-DSC**

PRIORITY AUTO GROUP, INC.,

PRIORITY AUTOMOTIVE
HUNTERSVILLE, INC.,

DENNIS ELLMER and

MATTHEW ELLMER

      Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTIONS TO DISMISS

Defendants Priority Auto Group, Inc. ("PAG"), Priority Automotive Huntersville, Inc. ("PAH"), Dennis Ellmer ("D. Ellmer") and Matthew Ellmer ("M. Ellmer"), (together, "Defendants"), submit this Brief in support of their Motions to Dismiss the First Amended Complaint (ECF No. 11) ("FAC") filed by Plaintiff James Beckley ("Plaintiff").[1]

PAG, D. Ellmer and M. Ellmer (together, "Add-On Defendants") move to dismiss all of Plaintiff's claims against them in the FAC for: (1) lack of personal jurisdiction pursuant to Rule 12(b)(2); or (2) failure to state a claim pursuant to Rule 12(b)(6). In the alternative, Add-On Defendants move to transfer this case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a).

---

[1] Instead of submitting separate Briefs of up to 25 pages with each of their Motions to Dismiss pursuant to Local Rules 7.1(c) and (d), in the interests of efficiency and due to the overlapping nature of certain arguments, Defendants submit this combined Brief addressing all of their Motions to Dismiss.

PAH moves to dismiss Plaintiff's FAC in its entirety for failure to state a claim pursuant to Rule 12(b)(6).  PAH also joins in and supports Add-On Defendants' alternative motion to transfer this case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a).

## I.      INTRODUCTION.

Plaintiff has now had two bites at the apple and *still* cannot establish personal jurisdiction over Add-On Defendants or state claims against anyone for violation of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat §§ 95-25.1 (Count 1), breach of contract (Count 2), fraudulent inducement and misrepresentation, or negligent misrepresentation (Count 4).

Add-On Defendants should be dismissed pursuant to Rule 12(b)(2) because Plaintiff cannot show that the Court has personal jurisdiction over them.  Add-On Defendants are not subject to general personal jurisdiction in North Carolina.  As Plaintiff acknowledges (FAC ¶¶ 2, 4-5), PAG is incorporated in and has its principal place of business in Virginia.  D. Ellmer and M. Ellmer are Virginia citizens and residents who live and work in Virginia.  Add-On Defendants do not have contacts with North Carolina that would render them "at home" there.  Add-On Defendants likewise are not subject to specific personal jurisdiction in North Carolina.  Add-On Defendants have not purposefully availed themselves of the privilege of conducting activities in North Carolina out of which Plaintiff says his claims arise, and the exercise of specific personal jurisdiction over Add-On Defendants in North Carolina would not be constitutionally reasonable. As set forth in the Declarations of PAG's Vice President and Treasurer Stacy Cummings ("Cummings"), D. Ellmer and M. Ellmer attached hereto as **<u>Exhibits 1-3</u>**, the alleged acts and omissions giving rise to this action occurred in Virginia.  Plaintiff's purported claims do not arise out of or relate to any conduct by PAG or D. Ellmer or M. Ellmer personally in North Carolina.

2

Plaintiff's claims against Add-On Defendants also should be dismissed pursuant to Rule 12(b)(6) because they were not Plaintiff's employer and Plaintiff has failed to allege that they had any agreements with or made any actionable false representations to Plaintiff related to not selling the dealership, his employment, compensation, equity interest or otherwise.

Plaintiff likewise fails to state a claim against his actual former employer PAH because: (1) PAH's partial and temporary compensation reduction for all of its employees in March 2020 necessitated by the COVID-19 global pandemic was proper negating Count 1; (2) the alleged oral contract(s) are non-existent, missing essential terms and conditions, and at most an unenforceable "agreement to agree" negating Count 2; and (3) Plaintiff has not alleged any actionable false representations relating to not selling the dealership, his employment, compensation, equity interest or otherwise or PAH's fraudulent intent or his justifiable reliance negating Count 3 and 4.

The unsigned "Pay Plan" that Plaintiff attaches as Exhibit 1 to his FAC and claims to be an enforceable contract ("Pay Plan") refutes his claims and confirms that: (1) Add-On Defendants are not parties to the Pay Plan, they have no obligations to Plaintiff, and they are not his employer (FAC Ex. 1); (2) there was no "promise not to sell Priority Huntersville" or "promise of equity ownership in Priority Huntersville after 9 months" and thus no oral contract or false representations (Compare FAC Ex. 1 with ¶¶ 67, 91-103); and (3) even if Plaintiff could state a claim against PAH for his COVID-19 compensation reduction (which he cannot), he *still* would not be entitled to any additional payments because he already has received Compensation and Commission under the Pay Plan in the total amount of **$643,160.29** for July 2019 through July 2020, which greatly exceeds (by over $163,000) the "One Year Guarantee: A minimum compensation of $40,000 Per month" totaling $480,000 (FAC Ex. 1). Plaintiff's lawsuit is a sham because he already has received more than the Guarantee under the Pay Plan. Cummings Dec. ¶¶ 26-31, Ex. 1 (**Ex. 1**).

Finally, in the alternative, this case should be transferred to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a), because Virginia is substantially more convenient for the majority of the parties and witnesses - everyone other than Plaintiff.

## II.     FACTUAL BACKGROUND.

### A.     All Acts and Omissions Involved PAH Only And Occurred in Virginia.

Plaintiff formerly was employed by PAH as General Manager of the Honda dealership in Huntersville, North Carolina from July 19, 2019, until it was sold to MileOne AutoGroup ("MileOne") on October 11, 2020.  FAC ¶ 44 ; Cummings Dec. ¶¶ 9-10 (**Ex. 1**).

Plaintiff was employed by PAH as General Manager of the Honda dealership in Huntersville, North Carolina, but PAH interviewed, offered and hired Plaintiff in Virginia.  All of the alleged acts and omissions giving rise to this action occurred in Virginia.  PAH interviewed, offered and hired Plaintiff in Virginia.  The terms and conditions of Plaintiff's employment with PAH were negotiated, offered and accepted in Virginia.  Cummings Dec. ¶¶ 10-11.

As Plaintiff acknowledges (FAC ¶¶ 59-60), he traveled to Virginia for his job interview on July 8-9, 2019, and PAH offered and hired him in Virginia.  Plaintiff accepted the job offer and PAH hired him in Virginia on July 10, 2019.  Plaintiff began his employment with PAH on July 19, 2019.  Any alleged negotiations, agreements, promises or representations were by PAH only and were made and entered into in Virginia.  Cummings Dec. ¶ 12.

### B.     Plaintiff Was An Employee of PAH - Not Add-On Defendants

Plaintiff was an employee of PAH – not Add-On Defendants.  Cummings Dec. ¶ 22.  The Pay Plan that Plaintiff attaches as Exhibit 1 to his FAC and claims to be an enforceable contract between Plaintiff and PAH on its face confirms:  (1) PAH was Plaintiff's employer; and (2) Plaintiff has no claims against Add-On Defendants (PAG, D. Ellmer or M. Ellmer).  FAC Ex. 1.

The Pay Plan is entitled "**Priority Automotive Huntersville, Inc. [PAH]** General Manager Compensation Plan," it only has signature blocks for PAH and Plaintiff, and it confirms Plaintiff's status as an employee and "**General Manager Priority Automotive Huntersville, Inc. [PAH]**." FAC Ex. 1 (emphasis added). Add-On Defendants are not parties to and have no obligations under the Pay Plan. Plaintiff has no claims for failure to pay amounts allegedly owed or guaranteed under the Pay Plan (whether characterized as violation of NCWHA, breach of contract, fraudulent inducement and misrepresentation, negligent misrepresentation or otherwise) and regardless any such claims would not be against Add-On Defendants. FAC Ex. 1; Cummings Dec. ¶¶ 24-25.

### C.     PAG Does Not Have Any North Carolina Contacts.

PAG is a Virginia corporation with its principal place of business in Chesapeake, Virginia. PAG provides legal, financial, accounting and payroll services to individual dealerships. PAG is comprised of the General Counsel's Office, Human Resources, Payroll and Accounting Comptrollers all of which operate exclusively out of Chesapeake and Suffolk, Virginia. PAG does not engage in any business in North Carolina. PAG does not have any property in North Carolina. PAG does not have any offices or bank accounts in North Carolina. PAG does not have any employees, operations or facilities in North Carolina. PAG has never operated or managed an automotive dealership in North Carolina, or any other state. PAG does not control, establish or approve the terms and conditions for recruiting, onboarding, compensating, disciplining or terminating employees who work at any Priority affiliated dealership. Each Priority affiliated dealership is independently owned and operated. Cummings Dec. ¶¶ 6-8.

5

PAG was not involved in any of the alleged acts or omissions giving rise to this action. Plaintiff was never an employee of PAG. PAG was not involved in PAH's interviewing, offering or hiring of Plaintiff. Plaintiff was not involved in the negotiating, offering or acceptance of the terms and conditions of Plaintiff's employment with PAH. All of these events occurred in Virginia and PAG had no involvement in any of them. Cummings Dec. ¶¶ 13-14.

In sum, Plaintiff's purported claims do not arise out of or relate to any conduct by PAG in North Carolina (or elsewhere). Plaintiff fails to identify a single event in North Carolina in which PAG participated. Cummings Dec. ¶¶ 32-33. Any trips to North Carolina by M. Ellmer or D. Ellmer were in their capacities as officers of PAH. They were not in their personal capacities or their capacities as officers of PAG. *Id.* ¶ 23.

Plaintiff identifies various business activities in North Carolina in which he claims PAG engages. FAC ¶¶ 7-11. Plaintiff's allegations are false and regardless these alleged activities are inconsequential and are not the basis for any of his purported claims. Cummings Dec. ¶¶ 15-23.

First, contrary to Plaintiff's allegations in Paragraph 7 of his FAC, PAG does not use or operate a "Used Vehicle System" ("UVS"). There is no such program. PAG is not involved in the transfer of vehicles between dealerships. PAG has never transported any "vehicle to Priority Huntersville for purchase and pickup," much less done so "on a regular and recurring basis" as Plaintiff falsely claims. Cummings Dec. ¶¶ 17, 19.

Second, Plaintiff's allegations in Paragraph 8 of his FAC regarding PAG's website are also false. While PAG operates a website, PAG is not involved in the sale of vehicles. If a customer wants to buy a car from a Priority affiliated dealership, the customer must purchase the vehicle from and negotiate financing with the dealership that owns the vehicle. Cummings Dec. ¶ 19.

Third, Plaintiff's allegations in Paragraph 9 of his FAC regarding PAG's advertising are also false. All incentives advertised to PAH's North Carolina customers were by and through PAH, not PAG. The oil changes, engine guarantees, parts, service and state inspections for North Carolina customers were provided by PAH — an independently owned and operated entity that ran the dealership where such service was provided. Cummings Dec. ¶ 20.

Fourth, Plaintiff's allegations in Paragraph 10-11 of his FAC regarding PAG's employees travel to North Carolina and visits to PAH are also false. While PAG employees on rare and infrequent occasions traveled to North Carolina and visited PAH in order to provide support services, the vast majority of these services were provided remotely at PAG's office in Chesapeake, Virginia. Any such visits were rare and infrequent in nature, and never "on a regular and recurring basis" as Plaintiff falsely claims. Cummings Dec. ¶ 21.

Finally, contrary to Plaintiff's allegation in Paragraph 10 of his FAC that PAG "acted as joint or single employer with PAH," PAG and PAH are independently owned and operated entities. PAG has its own employees and has never employed Plaintiff. Cummings Dec. ¶ 22.

### D.      D. Ellmer Does Not Have Any North Carolina Contacts.

D. Ellmer is a resident of Virginia Beach. His office is in Chesapeake, Virginia. He lives and works in Virginia. He personally does not engage in any business in North Carolina. He does not have any property, offices or bank accounts in North Carolina. D. Ellmer Dec. ¶¶ 2-5 (**Ex. 2**).

Plaintiff's purported claims do not arise out of or relate to any conduct by D. Ellmer personally in North Carolina. Plaintiff identifies two isolated events in North Carolina in which D. Ellmer participated as President of PAH: (a) an airport meeting on July 2, 2019; and (b) a conversation on September 9, 2020. Plaintiff mischaracterizes these events and regardless they are inconsequential and not the basis for any of his purported claims. D. Ellmer Dec. ¶¶ 11-13.

Plaintiff's allegations in Paragraphs 20 and 57 of his FAC regarding the airport meeting on July 2, 2019, are not only false but also irrelevant because the airport meeting was merely introductory and there was no discussion of any terms or conditions of Plaintiff's employment (much less any alleged equity or partnership which was never offered to Plaintiff). The airport meeting was preliminary and brief. D. Ellmer never left the airport. The meeting was much shorter than "two hours" and did not address the issues Plaintiff falsely claims. D. Ellmer Dec. ¶ 14.

Plaintiff's allegations in Paragraphs 24 and 83 of his FAC regarding the conversation on September 9, 2020, are likewise false and irrelevant because the conversation was merely to provide courtesy advance notice of the sale of the dealership to MileOne, and it occurred over 14 months after Plaintiff was hired in Virginia on July 10, 2019. D. Ellmer Dec. ¶ 15.

Plaintiff's allegations in Paragraph 22 of his FAC that D. Ellmer traveled to North Carolina on either August 3, 2019 or August 23, 2019 to meet with PAH employee Lolli Cornelius and spoke with Plaintiff are also false. D. Ellmer did not travel to or conduct business in North Carolina on either of those days. D. Ellmer Dec. ¶ 16. Indeed, from the introductory airport meeting on July 2, 2019, until the conversation on September 9, 2020, D. Ellmer did not visit PAH, step foot in the Honda dealership in in Huntersville, North Carolina or have any meetings, interactions or conversations with Plaintiff in North Carolina. *Id*. ¶ 17.

D. Ellmer's interactions with Plaintiff in North Carolina were in his capacity as the President of PAH and were preliminary (the introductory airport meeting on July 2, 2019) or after the fact (the conversation on September 9, 2020) and irrelevant. Plaintiff's other allegations relate to events in Virginia. D. Ellmer Dec. ¶ 18; see also Cummings Dec. ¶ 23 ("Any trips to North Carolina by M. Ellmer or D. Ellmer were in their capacities as officers of PAH. They were not in their personal capacities or their capacities as officers of PAG.").

8

### E.      M. Ellmer Does Not Have Any North Carolina Contacts.

M. Ellmer is a resident of Virginia Beach.  His office is in Chesapeake, Virginia.  He lives and works in Virginia.  He personally does not engage in any business in North Carolina.  He does not have any property, offices or bank accounts in North Carolina.  M. Ellmer Dec. ¶¶ 2-5 (**Ex. 3**).

Plaintiff's purported claims do not arise out of or relate to any conduct by M. Ellmer personally in North Carolina.  Plaintiff identifies three isolated events in North Carolina in which M. Ellmer participated as COO of PAH:  (a) a meeting on July 2, 2019; (b) a dinner on July 18, 2019; and (a) a conversation on September 9, 2020.  Plaintiff mischaracterizes these events and regardless they are inconsequential and not the basis for any of his purported claims.  M. Ellmer Dec. ¶¶ 11-13.

Plaintiff's allegations in Paragraphs 14 and 56 of his FAC regarding the meeting on July 2, 2019, are not only false but also irrelevant because the meeting was merely introductory and there was no discussion of any terms or conditions of Plaintiff employment (much less any alleged equity or partnership which was never offered to Plaintiff).  M. Ellmer Dec. ¶ 14.

Plaintiff's allegations in Paragraphs 18 and 66 of his FAC regarding the dinner on July 18, 2019, are likewise false and irrelevant because the dinner was merely celebratory, no concerns were expressed or assurances given, and it occurred over a week after Plaintiff was hired in Virginia on July 10, 2019.  M. Ellmer Dec. ¶ 15.

Plaintiff's allegations in Paragraphs 19 and 83 of his FAC regarding the conversation on September 9, 2020, are likewise false and irrelevant because the conversation was merely to provide courtesy advance notice of the sale of the dealership to MileOne, and it occurred over 14 months after Plaintiff was hired in Virginia on July 10, 2019.  M. Ellmer Dec. ¶ 16.

9

Beckley's allegations in Paragraph 12 of his First Amended Complaint that M. Ellmer conducted business in North Carolina on August 3, 2019, August 21, 2019, September 6, 2019, and April 21, 2020 are also false. M. Ellmer did not travel to or conduct business in North Carolina on any of those days. M. Ellmer Dec. ¶ 17.

M. Ellmer's interactions with Plaintiff in North Carolina were in his capacity as the COO of PAH and were preliminary (the introductory meeting on July 2, 2019) or after the fact (the dinner on July 19, 2019 and the conversation on September 9, 2020) and irrelevant. Plaintiff's other allegations relate to events in Virginia. M. Ellmer Dec. ¶ 18; see also Cummings Dec. ¶ 23 ("Any trips to North Carolina by M. Ellmer or D. Ellmer were in their capacities as officers of PAH. They were not in their personal capacities or their capacities as officers of PAG.").

### F. PAH No Longer Has Any North Carolina Contacts.

PAH is a Virginia corporation with its principal place of business in Chesapeake, Virginia. Although PAH operated a Honda dealership in North Carolina until October 11, 2020, PAH no longer engages in any business in North Carolina. Cummings Dec. ¶¶ 9-10.

### G. Plaintiff's Own Factual Allegations and Pay Plan Refute His Claims.

On July 8, 2019, Plaintiff traveled to Virginia for his job interview with PAH. FAC ¶ 59. Plaintiff met with the General Managers Robert Chen ("Chen") of Priority Honda Chesapeake and Nick Mumejain of Priority Toyota Chesapeake in Virginia, and received short tours of their dealerships in Virginia. *Id.* These dealerships are separate individual corporations not under PAG or PAH. *Id.*

On July 9, 2019, Plaintiff met with D. Ellmer and M. Ellmer in Virginia. Plaintiff claims that D. Ellmer and M. Ellmer made assurances to him in Virginia. FAC ¶ 60. PAH offered and hired Plaintiff in Virginia. Plaintiff accepted the job offer and PAH hired him in Virginia on July 10, 2019. Plaintiff began his employment with PAH on July 19, 2019. *Id.* ¶ 64.

10

Plaintiff received the Pay Plan from PAH in Virginia on July 10, 2019, and claims to have accepted and signed the Pay Plan on July 19, 2019. FAC ¶ 64. The Pay Plan on its face confirms: (1) PAH – not Add-On Defendants – was Plaintiff's employer; and (2) Plaintiff has no claims against Add-On Defendants (PAG, D. Ellmer or M. Ellmer). FAC Ex. 1. The Pay Plan is entitled "**Priority Automotive Huntersville, Inc. [PAH]** General Manager Compensation Plan," it only has signature blocks for PAH and Plaintiff, and it confirms Plaintiff's status as an employee and "**General Manager Priority Automotive Huntersville, Inc. [PAH]**." FAC Ex. 1 (emphasis added). Add-On Defendants are not parties to and have no obligations under the Pay Plan. Plaintiff has no claims for failure to pay amounts allegedly owed or guaranteed under the Pay Plan (whether characterized as violation of NCWHA, breach of contract, fraudulent inducement and misrepresentation, negligent misrepresentation or otherwise) and regardless any such claims would not be against Add-On Defendants. FAC Ex. 1; Cummings Dec. ¶¶ 24-25.

On September 9, 2020, D. Ellmer and M. Ellmer met with Plaintiff and informed him that the Honda dealership in Huntersville, North Carolina would be sold to MileOne on October 11, 2020. FAC ¶ 83. On October 11, 2020, PAH sold the Honda dealership to MileOne. *Id.*

Plaintiff was employed by PAH as General Manager of the Honda dealership in Huntersville, North Carolina from July 19, 2019, until it was sold to MileOne on October 11, 2020. FAC ¶ 44. Following the sales of the Honda dealership, Plaintiff was employed with MileOne as General Manager of the Honda dealership for several weeks until October 23, 2020. *Id.* ¶ 84. MileOne terminated Plaintiff's employment on October 23, 2020.[2]

---

[2] As part of the sale, MileOne specifically contracted for the retention of employees and that PAH could not take certain employees from the dealership including Plaintiff. PAH has learned that MileOne apparently terminated Plaintiff's employment for misbehavior and malfeasance and being insubordinate to one of their managers. PAH had no involvement in that decision or process.

Plaintiff claims to have accepted the General Manager position at PAH "based on the representations and promises made by Dennis Ellmer and Matt Ellmer regarding their promise not to sell Priority Huntersville and Dennis Ellmer's promise of equity ownership in Priority Huntersville after 9 months." FAC ¶ 67. Plaintiff claims he "entered into a binding oral contract to permit [him] to become an equity partner in Priority Huntersville after 9 months of employment." *Id.* ¶ 17. Plaintiff claims breach of contract for "failing to offer him an equity position in Priority Huntersville when [he] reached 9 months of employment." *Id.* ¶ 79.

Plaintiff also claims that under the Pay Plan (which he also refers to as his "compensation agreement" or "compensation contract") he was contractually entitled to receive "a minimum of $40,000 per month during the first 12 months of his employment" and in March 2020 (coinciding with the widespread arrival of the COVID-19 global pandemic in the United States) the amount of this guarantee was "arbitrarily" reduced "to $30,000 per month, in breach of [his] compensation contract" and he is owed "$50,000 (March 2020 — July 2020) because of this breach." FAC ¶ 80.

For "Count 1 – Violation of NCWHA," Plaintiff claims that "Defendants violated N.C. Gen. Stat. §§ 95-25.6 and 95-25.7 by failing to pay [him] all promised and earned wages on his regularly paydays." FAC ¶ 86. Plaintiff also asserts that Defendants violated N.C. Gen Stat § 95-25.13 and 95-25.8 by allegedly (1) failing to provide Plaintiff with written notice at least 24 hours prior to any change in his promised wages, and (2) unlawfully withholding earned wages from his paycheck. *Id.* ¶ 88-89. However, Plaintiff fails to allege any facts showing that Add-On Defendants (who were not his employers) had a duty to pay him any wages, much less the exorbitant wages he claims to have "earned," or that the alleged wage withholding was improper. Plaintiff also fails to inform the Court that the payments he received from PAH his first year ($643,160) greatly exceeded his $40,000 per month Guarantee. Cummings Dec. ¶¶ 26-31, Ex. 1.

12

For "Count 2 – Breach of Contract," Plaintiff claims that Defendants breached oral contract(s): (1) "to pay [him] a minimum of $40,000 per month during the first 12 months of his employment;" and (2) "to permit [him] to become an equity shareholder of Priority Huntersville after 9 months of employment." FAC ¶¶ 92-93. However, Plaintiff fails to allege any facts showing that Add-On Defendants promised or had a duty to pay him anything or permit him to acquire some unknown equity interest in a dealership operated by another entity, PAH.

Plaintiff fails to allege any of the essential terms of the alleged oral contract to permit him to become an equity shareholder, including the amount of equity interest he would acquire and what he would have to do and pay for it. Plaintiff does not even identify the equity interest he would acquire, much less any of the terms and conditions of his acquisition of it. Refuting Plaintiff's claim that he was allegedly promised some unknown equity interest in Priority Huntersville on unknown terms "after 9 months of employment" on April 19, 2020, he continued to work for PAH through October 11, 2020, and did not raise this issue until he filed his Complaint on January 6, 2021. See FAC generally.

For "Count 3 – Fraudulent Inducement and Misrepresentation," Plaintiff claims that he was intentionally induced "to accept employment as General Manager of Priority Huntersville through knowingly false representations of fact and current intent regarding the sale of Priority Huntersville and the promise of equity partnership after 9 months of employment." FAC ¶ 96. According to Plaintiff, these "false representations and/or concealed material facts were reasonably calculated and intended to deceive [Plaintiff] into leaving employment with Keffer Automotive and accepting employment with Defendants." *Id*. ¶ 98. However, Plaintiff fails to allege any facts showing that Defendants made any **false** representations or acted with fraudulent intent. Plaintiff cannot plausibly allege that any such representations were untruthful at the time they were made.

13

Plaintiff fails to allege or identify any false factual statements about the sale of the dealership or equity partnership made at any time before, during or after his employment with PAH. Refuting Plaintiff's assertion that PAH misrepresented prior to July 19, 2019, its then "current intent regarding the sale of Priority Huntersville," the dealership was not sold until 15 months later on October 11, 2020. Refuting Plaintiff's assertion that PAH misrepresented his eligibility for some unknown equity interest in the dealership as of April 19, 2020, he continued to work for PAH for six more months, through October 11, 2020, without raising any issues.

For "Count 4 – Negligent Misrepresentation," Plaintiff claims that he "justifiably relied, to his detriment, on Defendants' representations regarding the sale of Priority Huntersville, the offer of an equity partnership in Priority Huntersville after 9 months of employment, and the compensation that would be paid to Plaintiff. See FAC generally ¶ 102. However, Plaintiff fails to allege any facts showing that Defendants made any negligent misrepresentations or his justifiable reliance. Plaintiff cannot plausibly allege that any representations related to not selling the dealership, equity or compensation were untruthful when made.

Plaintiff fails to allege any false factual statements about the sale of the dealership, equity partnership or compensation made at any time before, during or after his employment with PAH. Refuting Plaintiff's assertion that PAH misrepresented he would receive "guaranteed compensation during the first 12 months of his employment" through July 19, 2020, after his compensation was reduced in March 2020 (as a result of the COVID-19 pandemic), he continued to work for PAH through October 11, 2020, without raising this issue. See FAC generally.

Finally, the Pay Plan refutes Plaintiff's claims by confirming that: (1) Add-On Defendants are not parties to the Pay Plan, they have no obligations to Plaintiff, and they are not his employer (FAC Ex. 1); (2) there was no "promise not to sell Priority Huntersville" or "promise of equity

ownership in Priority Huntersville after 9 months" and thus no oral contract or false representations (Compare FAC Ex. 1 with ¶¶ 67, 91-103); and (3) even if Plaintiff could state a claim against PAH for his COVID-19 compensation reduction (which he cannot), he *still* would not be entitled to any additional payments because he already has received Compensation and Commission under the Pay Plan in the total amount of **$643,160.29** for July 2019 through July 2020, which greatly exceeds (by over $163,000) the "One Year Guarantee: A minimum compensation of $40,000 Per month" totaling $480,000 (FAC Ex. 1). Cummings Dec. ¶¶ 26-31, Ex. 1.

## III. LEGAL ARGUMENT

### A. There Is No Basis For Personal Jurisdiction Over Add-On Defendants.

Plaintiff cannot meet his burden of establishing personal jurisdiction over Add-On Defendants. *UMG Recordings, Inc. v. Kurbanov*, 2020 WL 34769936 *3 (4th Cir. 2020). When evaluating specific personal jurisdiction,[3] courts "consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 712 (4th Cir. 2002). Plaintiff cannot establish that: (1) Add-On Defendants "purposefully availed" themselves of the privilege of conducting activities in North Carolina or (2) Plaintiff's claims arise out of such activities and regardless (3) the exercise of personal jurisdiction over them would not be constitutionally reasonable. See Cummings Dec.; D. Ellmer Dec. and M. Ellmer Dec. (**Ex. 1-3**).

---

[3] There is no conceivable basis for Plaintiff to assert general jurisdiction over PAG, D. Ellmer, or M. Ellmer. PAG, D. Ellmer, or M. Ellmer cannot be "fairly regarded as at home" in North Carolina. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

### 1. They did not purposefully avail themselves of NC.

Plaintiff cannot establish that Add-On Defendants "purposefully availed" themselves of the privilege of conducting activities in this forum. See *Consulting Eng'rs Corp.*, 561 F.3d at 280. As an initial matter, Plaintiff uses the generic term "Defendants" 37 times in his FAC without specifying who engaged in actions or in what capacity. "This method of 'group pleading' fails to provide any defendant with 'fair notice of what the … claim is and the grounds upon which it rests.'" *Adolphe v. Option One Mortg. Corp.*, 2012 WL 5873308, at *5 (W.D.N.C. 2012).

In any event Plaintiff's intentionally conflated "group" allegations cannot conceal the insufficiency of his jurisdictional claims. Add-On Defendants have not purposefully availed themselves of this forum. For D. Ellmer and M. Ellmer, Plaintiff relies solely on a few preliminary or after-the-fact interactions in their capacities as officers of PAH that are isolated and irrelevant. D. Ellmer Dec. ¶¶ 11-18; M. Ellmer Dec. ¶¶ 11-18. Plaintiff overstates and misrepresents these limited interactions and regardless they do not give rise to this action. *Id.* Indeed, from the introductory airport meeting on July 2, 2019, until the conversation on September 9, 2020, D. Ellmer did not visit PAH, step foot in the Honda dealership in in Huntersville, North Carolina or have any meetings, interactions or conversations with Plaintiff in North Carolina. D. Ellmer Dec. ¶¶ 16-17.

Plaintiff likewise fails to identify a single event in North Carolina in which PAG participated confirming that his claims do not arise out of or relate to any conduct by PAG in North Carolina (or elsewhere). Cummings Dec. ¶¶ 32-33. Plaintiff therefore cannot make a prima facie showing of purposeful availment against any Add-On Defendants. See *Walden*, 571 U.S. at 284 (holding that minimum contacts "must arise out of contacts that the defendant *himself* creates with the forum State").

### 2. Plaintiff's claims do not arise out of their NC activities.

Plaintiff also fails to satisfy the "arising out of" prong. This prong requires a connection between the activities to which Plaintiff points for jurisdictional purposes and the activities that underlie his claims. *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 139 (4th Cir. 2020). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id*. Plaintiff's claims arise out of the interviewing, offering and hiring process and the negotiation, offer and acceptance of the terms and conditions of his employment – not his subsequent job performance as General Manager of PAH in North Carolina.

The relevant events involved PAH only – not Add-On Defendants – and occurred in Virginia. PAH interviewed, offered and hired Plaintiff in Virginia. The terms and conditions of Plaintiff's employment with PAH were negotiated, offered and accepted in Virginia. Cummings Dec. ¶¶ 11-12. As Plaintiff acknowledges (FAC ¶¶ 59-60), he traveled to Virginia for his job interview on July 8-9, 2019, and PAH offered and hired him in Virginia on July 10, 2019. Any alleged agreements, promises or representations were by PAH in Virginia. Cummings Dec. ¶ 12.

The fact that Plaintiff ultimately worked for PAH in North Carolina is irrelevant. What matters for jurisdiction purposes is where the alleged agreements, promises and representations that Plaintiff now contends are breached or false were entered into or made: Virginia (*Id.*); not where Plaintiff alleged worked, "cleaned and organized" "the interior and exterior of Priority Huntersville," "installed a new sales and management team" "improve[d] morale and sales skills," "began a [unsanctioned] community outreach program," was "consistently praises and recognized" for his "job performance and the results he achieved," or "set all-time records for sales." FAC ¶¶ 73-76. Plaintiff's failure to connect these extraneous activities that purportedly support jurisdiction and those that underlie the claim is dispositive of the second prong.

17

Plaintiff's alleged employment activities in North Carolina are irrelevant to the allegations from which his claims arise: the negotiation, offering and acceptance of the terms and conditions of his employment with PAH – all of which occurred in Virginia. Cummings Dec. ¶¶ 10-12. Plaintiff seeks to subject Add-On Defendants to jurisdiction not by pointing to any conduct that they allegedly committed in North Carolina, but instead by pointing to his own North Carolina activities. This is an improper "attempt[] to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284.

### 3. Personal jurisdiction does not comport with due process.

Even if the Court finds that Plaintiff satisfies both (1) the purposeful availment and (2) the arising out of requirements for personal jurisdiction (which it should not), (3) the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." *ALS Scan*, 293 F.3d at 712. Plaintiff's attempt to force Add-On Defendants – Virginia persons and entities that have no contacts with North Carolina – to defend themselves here would be unjust.

Because Plaintiff has not sufficiently alleged that Add-On Defendants have directed any activities toward North Carolina, and Plaintiff's claims do not arise from such activities, the exercise of jurisdiction over Add-On Defendants would impose unreasonable burdens and expenses on them and would be constitutionally unreasonable. *See Consulting Eng'rs*, 561 F.3d at 278. Moreover, Plaintiff has another avenue for relief by asserting his claims against Add-On Defendants in Virginia where the existence of personal jurisdiction and the propriety of venue is undisputed. The most efficient use of the judicial economy would be for Plaintiff to assert any such claims in Virginia.

**B.      Plaintiff's FAC Should Be Dismissed For Failure to State a Claim.**

**1.      Plaintiff fails to state a NCWHA violation (Count 1).**

Plaintiffs' claims against Add-On Defendants under the NCWHA fail for multiple reasons. First, Add-on Defendants were not Plaintiff's "employer" under the NCWHA.  As Plaintiff's own factual allegations and the Pay Plan confirm, PAH was Plaintiff's employer.  FAC ¶ 44, Ex. 1. Second, PAH's partial and temporary compensation reduction for all of its employees in March 2020 necessitated by the COVID-19 global pandemic was proper.

**a.      Add-On Defendants are not employers under NCWHA.**

"[T]he NCWHA makes an '**employer**' liable for unpaid wages, liquidated damages, costs, and reasonable attorneys' fees." *Powell v. P2Enterprises, LLC*, 247 N.C. App. 731, 734 (2016) (citing N.C. Gen. Stat. § 95–25.22) (emphasis added). The NCWHA explains that an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." N.C. Gen. Stat. § 95-25.2.  "To decide whether an individual is an 'employer' for purposes of NCWHA and FLSA liability, courts apply an 'economic reality' test." *Powell*, 247 N.C. App. at 734. "This test examines []the totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." *Id.* at 734-35.

"Factors commonly relied on by courts in determining the extent of an individual's operational control over employees include whether the individual: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Id.* at 735; s*ee Steelman v. Hirsch*, 473 F.3d 124, 128 (4th Cir. 2007) (any judicial evaluation must examine "the circumstances of the whole activity" instead of "isolated factors").

19

In *Powell*, the court held that a limited liability company and its sole member were **not** employers of the LLC's manager, as relevant to manager's claim for unpaid wages against LLC and member under Wage and Hour Act because the manager directly hired and fired staff, the manager was responsible for setting employee and management schedules, including his own, and the manager ultimately failed to submit information regarding hours he had worked, resulting in the non-payment of his wages. *Powell*, 247 N.C.App. at 735-37.

Similarly, Plaintiff was the General Manager of PAH who allegedly hired and "installed a new sales and management team" and the dealership was reorganized under his "supervision and leadership." FAC ¶ 73-76. Plaintiff had the power to, among other things, relocate employees at PAH, demote employees, make personnel changes, control PAH employees' job duties, resolve financial and infrastructure issues with the dealership, manage PAH's finances, evaluate personnel, contract for a new storage facility for PAH's inventory of new vehicles, order cleaning of the dealership, instruct employees to collect and inventory supplies, and make physical changes to the showroom and dealership. *Id.* For the purposes of the NCWHA, Plaintiff was the employer. *See Powell*, 247 N.C.App. at 735-37.

Plaintiff's allegations that PAG, D. Ellmer, and M. Ellmer were his employers are bare legal conclusions that are contradicted by his own factual allegations and the Pay Plan. Neither, PAG, D. Ellmer, or M. Ellmer controlled any aspect of the day-to-day operations or management of PAH's dealings — Plaintiff was in charge of such operational and managerial activities as the General Manager of PAH and claims responsibilities for its successes. FAC ¶ 73-76. Moreover, the Pay Plan on its face confirms: (1) PAH – not Add-On Defendants – was Plaintiff's employer; and (2) Plaintiff has no claims against Add-On Defendants (PAG, D. Ellmer or M. Ellmer). FAC Ex. 1. The Pay Plan is entitled "**Priority Automotive Huntersville, Inc. [PAH]** General Manager

20

Compensation Plan," it only has signature blocks for PAH and Plaintiff, and it confirms Plaintiff's status as an employee and "**General Manager Priority Automotive Huntersville, Inc. [PAH]**." *Id.* (emphasis added).

Plaintiff does not allege, and PAG did not: (1) have the power to hire and fire the employees of PAH; (2) supervise or control employee work schedules or conditions of employment for employees of PAH; or (3) determine the rate and method of payment for employees of PAH; or (4) maintain employment records for employees of PAH. *See Powell*, 247 N.C. App. at 734. Only PAH had the authority required to be considered an "employer" under the NCWHA. As such, Plaintiff fails to allege that PAG was his employer under the NCWHA, and Plaintiff's claims against PAG under the NCWHA must be dismissed as a matter of law.

Although Plaintiff alleges that D. Ellmer and M. Ellmer were the President and COO of PAH (FAC ¶ 4), Plaintiff does not allege that they issued payment to him, supervised him, controlled his work schedule, maintained his employment records, or terminated him. Only PAH had the authority required to be considered an "employer" under the NCWHA. PAH was the entity that had the exclusive power to (1) hire and fire Plaintiff; (2) determine the rate and method of payment for Plaintiff; and (3) maintain Plaintiff's employment records. *See Powell*, 247 N.C. App. 735.

### b. Wages allegedly withheld from Plaintiff were proper.

Plaintiff asserted that "[i]n **March 2020**, Priority Auto Group arbitrarily reduced the amount of [Plaintiff's pay] to $30,000 per month, in breach of Plaintiff's compensation contract." FAC ¶ 80. (emphasis added). Plaintiff complains of this reduction, but just paragraphs before, Plaintiff boasts about his increased benefits in the same month to cite his alleged excellent

performance, specifically that "[i]n or about March 2020, Priority Auto Group **began paying the full cost of Plaintiff's** *family* **health insurance** premiums." *Id.* ¶ 77 (emphasis added).

The NCWHA sets forth scenarios where an employer withholding wages is proper. *See* N.C. Gen. Stat. § 95-25.8. Specifically, the NCWHA provides that "an employer may withhold or divert a portion of an employee's wages for cash shortages, inventory shortages, or loss or damage to an employer's property after giving the employee written notice of the amount to be deducted seven days prior to the payday on which the deduction is to be made." N.C. Gen. Stat. § 95-25.8(c). Plaintiff fails to plausibly allege that the wages were improperly withheld. Instead, Plaintiff simply propounds conclusory allegations regarding the wages in question without any evidence or support that such wages were withheld improperly. Plaintiff had full knowledge in March 2020 that all employees of PAH were foregoing a portion of their wages as a result of the COVID-19 pandemic. As the General Manager of PAH, Plaintiff personally signed several wage change orders to reduce the wages of his subordinates in response to the COVID-19 pandemic for his employees at PAH. Cummings Declaration ¶ 28. For these reasons, Plaintiff has failed to allege a claim against any Defendants under the NCWHA.

## 2.     Plaintiff fails to state a breach of contract claim (Count 2).

Plaintiff asserts two separate bases for breach of contract claims. First, Plaintiff claims that Defendants "breached their contract with [Plaintiff] to pay [Plaintiff] a minimum of $40,000 per month during the first 12 months of his employment." FAC ¶ 92. Second, Plaintiff claims that "Defendants breached their contact [sic] with [Plaintiff] to permit [Plaintiff] to become an equity shareholder of Priority Huntersville after 9 months of employment." *Id.* ¶ 93. Any alleged breach of contract claims should be directed to Plaintiff's employer PAH — **the only party with which**

22

**Plaintiff had an employment relationship or alleged contract.** FAC at Ex. 1. Add-on Defendants are not parties to the Pay Plan and have no duty to pay anything to Plaintiff.

### a. Plaintiff's Pay Plan was not breached.

The Pay Plan refutes Plaintiff's breach of contract claim (Count 2) by confirming that: (1) Add-On Defendants are not parties to this purported contract and have no payment obligations; (2) there was no "promise not to sell Priority Huntersville" or "promise of equity ownership in Priority Huntersville after 9 months" and thus no alleged oral contract(s); and (3) even if Plaintiff could theoretically state a claim against PAH for its COVID-19 compensation reduction (which he cannot), he *still* would not be entitled to any additional payments under the "Pay Plan" because he already has received Compensation and Commission in the total amount of **$643,160.29** for July 2019 through July 2020, which greatly exceeds (by over $163,000) the "One Year Guarantee: A minimum compensation of $40,000 Per month" totaling $480,000. Compare FAC Ex. 1 with ¶¶ 67, 91-103; See Cummings Dec. ¶¶ 26-31, Ex. 1.

### b. The Pay Plan supersedes any prior oral agreement or representation alleged by Plaintiff.

As an initial matter, the Pay Plan (which Plaintiff contends to be a valid and enforceable contract) precludes any prior oral contract relating to employment compensation, including any alleged promises or representations regarding payments or equity interests. "The parol evidence rule excludes prior or contemporaneous oral agreements which are inconsistent with a written contract if the written contract contains the complete agreement of the parties." *Cable TV, Inc. v. Theatre Supply Co.*, 62 N.C.App. 61, 64–65 (1983) . The parol evidence rule is designed to prohibit admission evidence of "prior oral agreements 'to vary, add to, or contradict [the terms of] a written instrument intended to be the final integration of the transaction.'" *Godfrey v. Res-Care, Inc.*, 165 N.C.App. 68, 76 (2004) (*quoting Hall v. Hotel L'Europe, Inc.*, 69 N.C.App. 664, 666 (1984); N.C.

Gen. Stat. § 25–2–202 (2003)). Here, the Pay Plan necessarily superseded any vague and amorphous promise or representation that Plaintiff would receive guaranteed compensation or an equity interest in the dealership. *Id.* The Pay Plan specifically addressed compensation and did not provide for any equity interest. FAC Ex. 1.

The terms of the Pay Plan make it clear that Plaintiff was not, and could not be, entitled any additional compensation because the Pay Plan set forth (1) Plaintiff's monthly salary, (2) Plaintiff's generous commission calculation, (3) Plaintiff's one-year $480,000 minimum guarantee, and (4) a generous performance bonus structure that could be achieved if Plaintiff met or surpassed certain metrics. Assuming that Plaintiff actually presumed that he could achieve certain milestones to earn equity in PAH as he has asserted, that milestone would have been necessarily set forth in the Pay Plan as such a major component of his compensation. Surely a merit-based equity opportunity would have "ordinarily be[en] expected to be embodied in the writing", and specifically, in the Pay Plan that fully set forth all of Plaintiff's compensation and potential bonuses based on time and merit. *High Knob, Inc. v. Allen*, 205 Va. at 506-07 (1964). Plaintiff cannot introduce parol evidence to explain additional, unwritten terms regarding his compensation which he otherwise claims to be specified in the Pay Plan. *Mayo v. North Carolina State University*, 168 N.C.App. 503 (2005). Any potential to earn or purchase equity based on performance would have clearly fallen squarely within the four corners of the Pay Plan. Because no such provision was included in the Pay Plan, Plaintiff's suggestion that he had an oral agreement to earn guaranteed compensation or equity is impermissible parol evidence. *Id.*

### c. Plaintiff's alleged agreement regarding equity is an unenforceable "agreement to agree."

Plaintiff's breach of contract claim likewise fails because (1) Plaintiff fails to allege how he was underpaid under the Pay Plan (when the reduction was necessitated by COVID-19 and he,

in fact, received substantially more than the alleged Guarantee); and (2) Plaintiff fails to allege or identify any of the essential terms of the alleged oral contract to permit him to become an equity shareholder, including the amount of equity interest he would acquire and what he would have to do and pay for it. Plaintiff does not even allege or identify the equity interest he would acquire, much less any of the terms and conditions of his acquisition of it. In addition to being refuted by the Pay Plan, Plaintiff's alleged generic promise or agreement regarding acquisition of an equity interest is at most an unenforceable "agreement to agree."

It is hornbook contract law in both North Carolina and Virginia that in order for there to be a mutual, valid, and enforceable contract, there must be a meeting of the minds of the parties with regard to the same set of terms and obligations. *Charlotte Motor Speedway, LLC v. County of Cabarrus*, 230 N.C. App. 1, 7 (2013); *see also* Crews v. Sullivan, 133 Va. 478 (1922); *Persinger & Co. v. Larrowe*, 254 Va. 404, 408 (Va. 1996) ("Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent, and, therefore, no contract"). Moreover, "[t]o be enforceable, the terms of a contract must be sufficiently definite and certain, and a contract that leav[es] material portions open for future agreement is nugatory and void for indefiniteness." *Miller v. Rose*, 138 N.C.App. 582, 587–88, (2000); *see also Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364 (Va. 1981).

The Supreme Courts of North Carolina and Virginia have definitively held that "agreements to agree" are unenforceable. "A contract to enter into a future contract must specify all its material and essential terms." *Boyce v. McMahan*, 285 N.C. 730, 734 (1974). "If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Id.*; *see also W.J. Schafer Assoc., Inc. v. Cordant, Inc.*, 254 Va. 514, 519 (1997).

Plaintiffs' breach of contract claim must be dismissed as a matter of law. The Court need look no further than the allegations Plaintiff makes regarding his alleged equity arrangement. Plaintiff asserts that PAG's Digital Performance and Marketing Director, who obviously has no authority to negotiate an equity agreement, "**believed** that Dennis Ellmer would be **'open' to the idea** of Plaintiff obtaining an equity stake in Priority Huntersville." FAC ¶ 55 (emphasis added). Plaintiff also asserts that "Matt Ellmer told Plaintiff that a[n] [] equity arrangement **could be** provided to Plaintiff if he accepted the General Manager position at Priority Huntersville." FAC ¶ 56 (emphasis added). Plaintiff yet again fails to identify or allege **any** concrete terms of the alleged equity arrangement because there was no such agreement. Talk of the possibility of an alleged partnership opportunity in the future is not an enforceable contract. Nor is Plaintiff's wishful thinking. FAC ¶ 20 (claiming to have "reasonably understood Dennis Ellmer's promise of 'a long-term relationship' to mean an equity partnership").

Plaintiff has failed to identify any material terms of the alleged contract. Plaintiff fails to allege any facts or information regarding: the cost required for Plaintiff to buy into PAH; the amount of equity Plaintiff was to receive for that unestablished purchase price in PAH; the class of shares Plaintiff would be permitted to purchase in PAH; the timing of such an equity purchase in PAH; what sales benchmarks would be required for Plaintiff to qualify to purchase equity in PAH; how the sale of such equity would occur in the future if Plaintiff wanted to leave PAH; and what portion of costs Plaintiff would share as an equity owner in PAH. The only detail that Plaintiff alleges is, at best, a condition precedent to the agreement to agree — the requirement that Plaintiff be employed by PAH for 9 months before he could *potentially* purchase equity in PAH. There simply was no agreement in place regarding Plaintiff's opportunity to become an equity holder in

PAH. And the terms are so substantially uncertain that Plaintiff cannot provide a single term of the alleged equity agreement. This is fatal to Plaintiff's claim.

The Supreme Court of North Carolina's analysis in *Boyce* is directly controlling on this issue. "A contract to enter into a future contract must specify all its material and essential terms… [i]f **any** portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Boyce*, 285 N.C. at 734 (emphasis added). Here, it is not just some aspects of the alleged oral contract that are uncertain: it is all of them.

### 3. Plaintiff fails to state a fraudulent inducement claim (Count 3).

In North Carolina, "the essential elements of fraud in the inducement are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *TradeWinds Airlines, Inc. v. C-S Aviation Servs.*, 222 N.C. App. 834, 733 S.E.2d 162, 168 (N.C. Ct. App. 2012).

In order for the defendant's failure to carry out its contractual promise to constitute fraudulent inducement of the contract, defendant's promise "must have been made (1) with the present intent not to carry it out and (2) with the purpose to induce the plaintiff to carry out its promises while the defendant did not intend to fulfill its promises." *Hoyle v. Bagby*, 253 N.C. 778, 117 S.E.2d 760, 762 (N.C. 1961).

North Carolina recognizes the narrow scope of fraudulent inducement claims. *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 594 (M.D.N.C. 2003). The mere failure to carry out a promise in contract does not support a tort action for fraud. *Id*. A failure to perform a promise can be a basis for fraud only where there is evidence the promissor had a "specific intent" not to perform at the time a promise was made. *Id*. "Mere generalities and conclusory allegations of

fraud will not suffice to sustain a fraud claim." *Id.* Thus, where, as here, the Defendants did "nothing more than assert that a promissor never intended to honor its obligations under an agreement, dismissal as a matter of law is appropriate." *Id.*

In *Norman*, the court granted a Rule 12(b)(6) motion to dismiss and held that a plaintiff-employee failed to allege with the requisite particularity that the defendant-employer never intended to follow, or knew that it would not follow, the policies outlined in its handbook. *Id.* at 595. The employee alleged that the employer:

> [N]ever intended to comply with the Progressive Discipline Policy as evidenced by their reckless procedure in the termination of [employee]. [Employer] never intended to comply with the handbook used as bait for prospective pilots as evidenced by its reckless disregard of the promises of the handbook. . . . [Employer's] actual performance demonstrates that they never intended to be bound by the things that they held out to recruit Plaintiff's employment.

*Id.* The court in *Norman* held that such a general and conclusory allegation was insufficient because it missed "the crucial point." *Id.* "[T]o be liable for fraud, the promissor must do something *more* than just disregard or break its promises." *Id.* The Court found the employer's disregard of the outlined policies was not evidence that the employer never intended to follow policies. Rather, "it is only evidence that they did, in fact, ultimately disregard the promise." *Id.*

In the case at hand, Plaintiff simply alleges that:

> Defendants intentionally induced [Plaintiff] to accept employment as General Manager of Priority Huntersville through knowingly false representations of fact and current intent regarding the sale of Priority Huntersville and the promise of equity partnership after 9 months of employment; [and]
> …
> Defendants made false representations and/or concealed material facts regarding the sale of Priority Huntersville and the promise of equity partnership after 9 months of employment

FAC ¶¶ 96-97.

28

Plaintiff's only basis for fraudulent intent is based on his "information and belief" that Defendants were making preparations to sell the dealership when Plaintiff was hired. FAC ¶ 69. "Information and belief" that fraud occurred with nothing else to substantiate such a claim is not sufficient to survive the elevated pleading standard of a fraud claim. Plaintiff fails to demonstrate with any specificity that any of the Defendants ever had any fraudulent intent, or any motive for that matter, to induce him to accept employment as GM of PAH by making allegedly false factual statements regarding [1] the sale of Priority Huntersville and [2] the promise of equity partnership after 9 months of employment. *Id.* ¶ 55. Plaintiff has failed to plausibly allege that these statements were "(1) false representation[s] or concealment of a material fact[s], (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to [Plaintiff]." *TradeWinds*, 733 S.E.2d at 168. Refuting Plaintiff's assertion that (1) PAH misrepresented prior to July 19, 2019, its then "current intent regarding the sale of Priority Huntersville," Priority Huntersville was not sold until 15 months later on October 11, 2020, and Plaintiff continued his employ with the new owner of the dealership for some time thereafter. Refuting Plaintiff's assertion that (2) PAH misrepresented his eligibility for some unknown equity interest in Priority Huntersville as of April 19, 2020, he continued to work for PAH through October 11, 2020 without raising any issues. Plaintiff fails to plausibly allege that these statements were anything other than true at the time they were made.

Plaintiff explains that he was hired by PAH on July 19, 2019 (FAC ¶ 44) and the dealership operated by PAH was sold on October 11, 2020 (FAC ¶ 83). Between July, 2019 and October, 2020, nearly fifteen months had passed, and the COVID-19 global pandemic changed the world. Change of circumstances does not constitute fraud. Plaintiff has done "nothing more than assert

that [the Defendants] never intended to honor its obligations under an [alleged] agreement, [so] dismissal as a matter of law is appropriate." *Tradewinds*, 286 F. Supp. 2d at 594.

Finally, the Pay Plan refutes Plaintiff's fraudulent inducement claim (Count 3) by confirming that there was no "promise not to sell Priority Huntersville" or "promise of equity ownership in Priority Huntersville after 9 months" and thus no alleged false representations. Compare FAC Ex. 1 with ¶¶ 67, 91-103.

### 4. Plaintiff fails to state negligent misrepresentation (Count 4).

Plaintiff asserts that he relied on the Defendants' representations regarding the sale of PAH and his ability to purchase equity in PAG. FAC ¶ 102. "The tort of negligent misrepresentation occurs when [1] a party justifiably relies [2] to his detriment [3] on information prepared [4] without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988); *see also Simms v. Prudential Life Ins. Co. of America*, 140 N.C. App. 529, 532 (2000).

Similar to his fraudulent inducement and misrepresentation claim, Plaintiff's negligent misrepresentation claim fails because he has not alleged that Defendants made any false representations or that he justifiably relied on those false representations. *Id.* Plaintiff does not allege that Defendants furnished him any information without a reasonable duty of care, let alone in regard to the sale of the dealership, his alleged equity agreement, or his wages. *Id.*

Plaintiff fails to allege or identify any false factual statements about (1) the sale of Priority Huntersville, (2) equity partnership or (3) compensation made at any time before, during or after his employment with PAH. Refuting Plaintiff's assertions: (1) Priority Huntersville was not sold until 15 months after he was hired; and Plaintiff continued to work for PAH through October 11, 2020, without raising any issues concerning his alleged partnership interest eligibility as of April

30

19, 2020 or his compensation reduction due to the COVID-19 pandemic along with all other PAH employees in March 2020. Plaintiff admits that he did not ever bring the issue up to Dennis Ellmer because the monthly managers meetings in Virginia "were cancelled due to the COVID-19 Pandemic." FAC ¶ 78. If Plaintiff *truly* believed that he was entitled to an equity interest in the dealership, Plaintiff would have contacted D. Ellmer by phone or email in order to set up a time to discuss such an arrangement — quite simply, Plaintiff never did that because there never was an agreement for him to obtain equity in any priority-affiliated entity, and Plaintiff knew it.

Finally, the Pay Plan refutes Plaintiff's negligent misrepresentation claim (Count 3) by confirming that there was no "promise not to sell Priority Huntersville" or "promise of equity ownership in Priority Huntersville after 9 months" and thus no alleged false representations. Compare FAC Ex. 1 with ¶¶ 67, 91-103.

### C. Alternatively, The Court Should Transfer This Case to EDVA.

If the Court finds personal jurisdiction over Add-on Defendants and declines to dismiss the entire FAC, the Court should transfer the case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a). Virginia is substantially more convenient for the majority of the parties and witnesses - everyone other than Plaintiff.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The statute was drafted in accordance with the doctrine of forum non conveniens, which permits transfer to a more convenient forum. *See Van Dusen v. Barrack*, 376 U.S. 612, 634 n.30 (1964).

Factors courts consider include: the convenience of the parties and witnesses; accessibility of sources of proof; the applicability of each forum state's substantive law; the advantages of

having a local court determine questions of local law; judicial economy; obstacles to a fair trial; the public's interest in having local controversies adjudicated locally; and the plaintiff's original choice of forum. See *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997).

The relevant circumstances here support a transfer of this case to the Eastern District of Virginia. The convenience of the witnesses militates in favor of a transfer. Defendants do not employ anyone, or conduct any operations, in North Carolina. Rather, Defendants' business and its locations are based in Virginia. All documents and sources of proof are located in Virginia. This dispute also concerns alleged conduct of Defendants' employees and/or agents in Virginia, including not only Cummings, D. Ellmer and M. Ellmer, but also Matthew Pennell, Robert Chen and Nick Mumejain. Every other person and entity that Plaintiff names or mentions in his FAC is located in Virginia. A trial of the parties' claims will likely require testimony from many different witnesses, all but one of whom (Plaintiff) are based in Virginia. Thus, the location of the parties and witnesses outside this district raises serious concerns as to the expense of discovery, availability of witnesses, this Court's power to secure such witnesses and the adequacy of deposition testimony, among other things.

### IV.    CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court grant their Motions to Dismiss as follows:

1.    Grant PAG, D. Ellmer and M. Ellmer's Motion to Dismiss and dismiss all of Plaintiff's claims against them for: (1) lack of personal jurisdiction pursuant to Rule 12(b)(2); or (2) failure to state a claim pursuant to Rule 12(b)(6) or, alternatively, (3) transfer this case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a); and

2.      Grant PAH's Motion to Dismiss and dismiss Plaintiff's First Amended Complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6) because Plaintiff's allegations are insufficient, implausible and refuted by his own factual allegations and the Pay Plan.

Dated:  April 5, 2021          Respectfully submitted,

**PRIORITY AUTO GROUP, INC., PRIORITY
AUTOMOTIVE HUNTERSVILLE, INC.
DENNIS ELLMER and MATTHEW ELLMER**

By ____/s/  Joshua F. P. Long_____

Joshua F. P. Long (N.C. Bar No. 26497)
WOODS ROGERS PLC
Wells Fargo Tower, Suite 1800
10 S. Jefferson Street
Roanoke, Virginia  24011
Telephone: (540) 983-7725
Facsimile: (540) 983-7711
jlong@woodsrogers.com

Counsel for Defendants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 5, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to all counsel of record.

/s/    Joshua F. P. Long_____

33