DocuSign Envelope ID: 3723CFA7-04CB-4B84-BB54-452DD68D88DB

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH
CAROLINACHARLOTTE DIVISION
Case No. 3:21-cv-00072-RJC-DSC**

| | |
|---|---|
| **JAMES BECKLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **PRIORITY AUTO GROUP, INC.,** | ) |
| **PRIORITY AUTOMOTIVE** | ) |
| **HUNTERSVILLE, INC.,** | ) |
| **DENNIS ELLMER and** | ) |
| **MATTHEW ELLMER** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |

**DECLARATION OF PLAINTIFF JAMES BECKLEY**

I, James Beckley, declare under penalty of perjury pursuant to 29 U.S.C. § 1746 that the following statements are true and correct:

1.      I have personal knowledge of the things and matters set forth herein, and if called as a witness could testify competently thereto.

2.      I am the Plaintiff in this lawsuit brought against Priority Auto Group, Inc. ("PAG"), Priority Automotive Huntersville, Inc. ("PAH"), Dennis Ellmer, and Matthew Ellmer.  I am a resident of North Carolina.

3.      I have worked in the automobile sales industry for approximately 24 years.

4.      I moved to the Charlotte, North Carolina area in 2013 and have become well-known and admired for producing high sales numbers and increasing employee morale as the General Manager ("GM") of several Charlotte, North Carolina automobile dealerships.

5.      As of June 2019, I was employed as GM of Keffer Mazda, a Charlotte based automobile dealership, and I was on track to become an equity shareholder or "partner" of Keffer Mazda. I was scheduled to become an equity shareholder within the next 12 months.

6.      On or about June 14, 2019, Mathew Pennell, a PAG executive in the position of Digital Performance & Marketing Director, began recruiting me to become GM of PAH. Attached to this Declaration as Exhibit 1 is a true and accurate copy of Mathew Pennell's LinkedIn profile. During the period of June 14, 2019 through July 2020, I communicated with Pennell via text message and telephone regarding the PAH GM position. During these discussions, I informed Pennell that I was on track to become an equity shareholder of Keffer Mazda and that a similar agreement would be necessary to lure me away to PAH. I also asked Pennell whether PAG intended to hire me for the purpose of fixing problems at the dealership and maximizing PAH's value so PAG could sell it. Pennell assured me that PAG did not intend to sell PAH. Pennell also informed me that Dennis Ellmer "allows partners" and that Pennell believed that Dennis Ellmer would be "open" to the idea of me obtaining an equity stake in PAH. Attached to this Declaration as Exhibit 2 are true and accurate copies of some of the text communications between Mathew Pennell and myself that I retained.

7.      On July 2, 2019, Matthew Ellmer travelled from Virginia to Charlotte, North Carolina to discuss hiring me as GM of PAH. Matt is COO of both PAG and PAH. Matt performs his job duties for both positions from the same location in Virginia. We met at a restaurant in Huntersville, NC called "131 Main." During the meeting, we discussed my current employment with Keffer Mazda, including my future equity position in the dealership. Matt Ellmer told me that a similar equity arrangement could be provided to me if I accepted the GM position at PAH.

8.      Later that same day, Dennis Ellmer flew from Virginia to Charlotte on his private

plane to meet with Matt and me. Dennis is President of both PAG and PAH. Dennis performed his job duties for both positions from the same location in Virginia. We met in a private conference room at the Concord Airport in Concord, NC for approximately two hours. Dennis Ellmer discussed the employment opportunity of GM of PAH, which included a discussion about GM equity positions offered by PAG compared to my equity ownership track with Keffer Mazda. Dennis told me that the offer of employment as GM of PAH was "more substantial" than my current employment with Keffer Mazda. Dennis referred to my equity track at Keffer Mazda as one of "Keffer's ghost handshake partnerships."

9. During the same meeting, I told Dennis and Matt that I was aware of rumors that PAH was for sale and that I was "not interested in fixing a dealership to be sold." Dennis assured me that PAG intended to remain in the Charlotte market and that PAH would not be sold. Dennis invited me to travel to Virginia so that I could me some of PAG's GMs who held equity positions in their respective dealerships ("Managing Partners"). Dennis emphasized that many of these GMs had been with PAG for more than 20 years.

10. On July 8, 2019, I travelled to Virginia to meet with Robert Chen, PAG's Managing Partner of Chesapeake Honda, and Nick Moonjohn, PAG's Managing Partner of Chesapeake Toyota. I met individually with Robert and Nick. Each provided me a tour of his respective dealership. Robert and Nick each described his equity arrangement with PAG and discussed the benefits of being a PAG equity partner.

11. After meeting with Robert and Nick, I attended PAG's monthly GM dinner. The following morning, on July 9, I attended PAG's GM monthly status meeting. Following the status meeting, I met with Dennis and Matt. Dennis assured me that PAH would not be sold. Dennis told me that if he wanted to sell PAH he would have done so already, as he rejected an offer of

"$15 million dollars from the AMSI group." Dennis told me "Give me a 9-month commitment and I'll go myself to the bank with you in Charlotte and co-sign the deal of partnership with PAH." I told Dennis and Matt that I needed to discuss the opportunity with my wife and make the best decision for my family. Neither Dennis nor Matt made me a job offer while I was in Virginia. The purpose of the Virginia trip was for me to meet with PAG's equity partners Robert and Nick to learn about the benefit of being a PAG equity partner and to attend the PAG's monthly GM dinner and GM meeting.

12. Later that day, on July 9, after I returned home to NC, Matt sent me a text message stating "Thanks for the time today. Talked with my father just now and we are putting together an offer for you which I will send your way tomorrow. We are going to be aggressive . . . you will not be able to turn it down brother. We want you and we are coming after you. Tomorrow the proof will be in the pudding!" Attached to this Declaration as Exhibit 3 is a true and accurate copy of the text message sent by Matthew Ellmer on July 9, 2019.

13. On July 10, 2019, Matt emailed me an offer of employment as GM of PAH. Attached to this Declaration as Exhibit 4 is a true and accurate copy of the email Matthew Ellmer sent me on July 10, 2019. I was in NC when I received Matt's offer. Attached to the email was a "Pay Plan" that guaranteed me minimum compensation of $40,000 per month during the first year of my employment. Attached to this Declaration as Exhibit 5 is a true and accurate copy of the offer of employment that I received from Matthew Ellmer on July 10, 2019. The email from Matt Ellmer was sent from his "@priorityauto.com" email address.

14. On or about July 15, 2019, I telephoned Matt and verbally accepted the job offer. I was physically in NC when I accepted the job offer. I, however, told Matt that my wife still had concerns about the PAH GM position. On July 18, 2019, Matt traveled to Charlotte to meet for

dinner with my wife and me.  Matt met us for dinner in North Carolina.  During dinner, Matt reassured my wife that PAG was making a long-term commitment to me and PAH.

15.     I accepted and signed the "Pay Plan" on July 19, 2019, in NC.  I was not provided a fully executed copy of the Pay Plan.

16.     I believe that Matt and Dennis knew and intended at all times that PAH would be sold in the near future and that I would not be offered equity ownership prior to the sale.  I also believe Matt and Dennis began making preparations to sell PAH prior to hiring me, and continued with their plans to sell PAH while negotiating with me and during my employment as GM of PAH. Matt and Dennis made negligent or fraudulent representations and promises regarding their intent and plans to not sell PAH and to provide me with an equity stake in PAH for the purposes of inducing me to accept the GM position at an underperforming and failing dealership.  I base my belief on the fact that almost immediately after accepting employment as GM of PAH, I heard from several industry sources that PAG was continuing to search for a buyer for PAH.  I estimate that between the period of August 2019 and April 2020, I was told by at least four different individuals that PAH was being sold. In April 2020, after speaking with a very reliable source, I learned that PAG found a buyer for PAH.

17.     Matt and Dennis knew that I would not accept an offer of employment as GM of PAH without a promise of equity ownership or if Matt and Dennis intended to sell PAH because I was gainfully employed at Keffer Mazda as GM and would soon be made equity partner in that dealership.  Despite having not intention to follow through with their promises, Matt and Dennis told me what I needed to hear to secure my acceptance of their job offer.

18.     I began my employment as GM of PAH on July 19, 2019.  My immediate concerns were securing financing for "money on the street," cleaning and organizing the dealership, and

dealing with a rat infestation that was damaging vehicles. I installed a new sales and management team and worked with existing PAH staff to improve morale and sales skills. During my first year as GM of PAH, Dennis and Matt consistently praised and recognized my job performance and the results I achieved at PAH. I was responsible for increasing sales volume and marker share for PAH and during my tenure, PAH set all-time records for sales.

19. On April 3, 2020, I sent Matt a text message that said, "We're not being sold out are we? Priority Honda." Matt responded "No why would u say that." I replied, "Rumors right?" Matt responded "Definitely rumors. Call you later my Brother." Attached to this Declaration as Exhibit 6 is a true and accurate copy of the text message exchange between Matthew Ellmer and myself.

20. I was not offered an equity stake in PAH after 9 months of employment as GM. In or about June or July 2020, I contacted Matt to inquire about the status of my opportunity to become an equity shareholder in PAH. Matt responded that I needed to speak with Dennis. I expected to speak with Dennis at PAG's monthly meeting in Virginia, but each month the meeting was cancelled due to the COVID-19 pandemic.

21. My compensation agreement stated that I would be paid a $5,000 monthly salary, plus "10% of Net Profit each month." I was "guaranteed" I would be paid a minimum of $40,000 per month during the first year of my employment if my salary and "10% of Net Sales" did not equal $40,000. Additionally, I was entitled to earn other monthly performance-based bonuses. In March 2020, PAG arbitrarily reduced my guarantee from $40,000 per month to $30,000 per month. I am owed $50,000 for the period of February 2020 to July 2020 because I was not paid the $40,000 minimum during each of these months. Dennis called me on the telephone to verbally communicate the reduction in my pay. The pay reduction included my February 2020 wages,

which I already had earned at the time Dennis called me. I was physically located in NC when Dennis told me about the reduction. I was not provided 24-hours written notice of a pay reduction.

22. On or about September 9, 2020, Dennis and Matt arrived at PAH and requested a private meeting with me. Dennis told me that PAG entered into an agreement to sell PAH to a large automotive dealership called "MileOne" and that the sale would close on October 11, 2020. Dennis told me that MileOne had agreed to retain me as GM and not change my salary "because of the success" of the dealership. Matt said to me, 'I know this is not what you want to hear – I know you had that other opportunity." Matt also told me that pursuant to the sale agreement with MileOne, PAG could not employ me for two years. Attached to this Declaration as Exhibit 7 is a true and accurate copy of the press release issued by The Presidio Group, LLC, the investment bank PAG retained to advise PAG on the sale of PAH.

23. As a GM, I along with other PAG GMs for PAG's family of dealerships attended monthly GM meetings and dinners held by PAG. Attached to this Declaration as Exhibit 8 is a true and accurate copy of the agenda provided for the September 19, 2019 PAG GM's Meeting.

24. All employees who are employed at a PAG dealership, or by PAG, are issued an email address ending in "@priorityauto.com," including employees who work at PAH. Individual PAG dealerships do not utilize email addresses that reflect the individual dealership. Instead, all communications to and from PAG and its individual dealerships are sent under the single email URL "@priorityauto.com."

25. PAG utilizes a single centralized time keeping system for all hourly employees who work at PAG's family of dealerships in North Carolina, Virginia, and Maryland, including PAH. Attached to this Declaration as Exhibit 9 is a true and accurate copy of the Priority Automotive Group Employee Registration form and accompanying instructions on how to register to ADP's

Workforce Now.

26.     PAG performed human resources, payroll, marketing, accounting, legal, and financial services for PAH's 95-100 North Carolina employees, including for Beckley.

27.     PAG controls and approves the terms and conditions for recruiting, onboarding, compensating, disciplining, and terminating employees who work at PAG's family of dealerships in North Carolina, Virginia, and Maryland, including PAH.  PAG Human Resources employees travelled to North Carolina on a regular and recurring basis to attend to the Human Resources needs of employees who worked at PAH.   Examples include investigating claims of discrimination, employee benefits issues, and employee theft issues.

28.     PAG dictates and controls centralized policies and procedures that PAG's family of dealerships in North Carolina, Virginia, and Maryland must utilize to provide financing to new and used car customers, including PAH's customers.

29.     PAG purchases centralized insurance policies to provide liability coverage for PAG's family of dealerships in North Carolina, Virginia, and Maryland, including PAH.

30.     PAG dictates and controls centralized policies and procedures that PAG's family of dealerships in North Carolina, Virginia, and Maryland must utilize to marker the dealership's services in digital, print, and billboard formats, including PAH.

31.     As a term and condition of PAG's sale of PAH to MileOne, PAG entered into an agreement with MileOne to not employ me at any of PAG's dealerships for a 2-years period.

32.     PAG owns and operates an Internet website with the URL www.priority.com by which it marketed new and used vehicles to residents of North Carolina.  The PAG website permitted North Carolina residents to search and shop any of PAG's new Honda inventory from its four Honda dealerships in North Carolina and Virginia or any used vehicle in PAG's inventory

from its entire family of dealerships located in North Carolina, Virginia, and Maryland. Attached to this Declaration as Exhibit 10 is a true and accurate copy of a screenshot of PAG's website that shows all of the used cars in the PAG family of dealership's inventory. The number listed next to the name of the individual dealerships is the number of used cars located at that dealership. Potential customers can view and shop for any of these vehicles on PAG's website.

33. PAG regularly interchanged its used car inventory amongst PAG's family of dealerships in North Carolina, Virginia, and Maryland, including PAH. When a North Carolina resident chose to purchase a vehicle from one of PAG's Virginia or Maryland dealerships utilizing the PAG website, PAG transported the vehicle to Priority PAH for purchase and pickup. Attached to this Declaration as Exhibit 11 is a true and accurate copy of PAG's Used Vehicle System that sets forth PAG's policies and procedures for interchange of used car inventory amongst its family of dealerships.

34. PAG advertised and provided North Carolina residents its "Priorities for Life Best Deal Guarantee" through which a "Priority Automotive badge and license plate" is installed on a customer's car and PAG provided free oil changes, an engine guarantee, parts & service, and free state inspections for its North Carolina customers, purportedly "for life." PAG customers who purchased a vehicle from a PAG dealership in Virginia or Maryland were permitted to utilize their "Priorities for Life Best Deal Guarantee" in North Carolina at PAH, which occurred on a regular and recurring basis. Attached to this Declaration as Exhibit 12 is a true and accurate copy of PAG's policies and procedures for its Priorities for Life Program.

35. My wife, Tanisha Beckley, is a resident of North Carolina and is a witness in this lawsuit because she attended the dinner meeting with Matt and I where Matt made promises and representations regarding my employment.

36.     Lolli Cornelius is a resident of North Carolina resident.  Lolli was the Service Director for PAH and is also a witness in this lawsuit because Lolli was present with Dennis when Dennis came to North Carolina in August 2019 and discussed my entitlement to an equity ownership position in PAH.

37.     All other individual who I may call as witnesses including individuals affiliated with Keffer Mazda are residents of North Carolina and are located in North Carolina.  These individuals are likely to testify and may present evidence concerning the financial rewards I would have enjoyed as an equity shareholder of Keffer Mazda.

I declare under penalty of perjury that the foregoing is true and correct.

Executed April 26, 2021.

DocuSigned by:

340A85293C2F43C...

James Beckley