|  |  |
|---|---|
| JAMES BECKLEY,<br><br>     Plaintiff,<br>v.<br><br>PRIORITY AUTO GROUP, INC.,<br><br>PRIORITY AUTOMOTIVE<br>HUNTERSVILLE, INC.,<br><br>DENNIS ELLMER and<br><br>MATTHEW ELLMER<br><br>     Defendants. | Case No. 3:21-cv-00072-RJC-DSC |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTIONS TO DISMISS

### I.     INTRODUCTION

Defendants Priority Auto Group, Inc. ("PAG"), Priority Automotive Huntersville, Inc. ("PAH"), Dennis Ellmer ("D. Ellmer") and Matthew Ellmer ("M. Ellmer"), (together, "Defendants"), submit this Reply in support of their Motions to Dismiss the First Amended Complaint (ECF No. 11) ("FAC") filed by Plaintiff James Beckley ("Plaintiff").

Defendants' Motions to Dismiss (ECF Nos. 17 & 18) should be granted because:  (1) this Court lacks personal jurisdiction over PAG, D. Ellmer and M. Ellmer (the "Add-On Defendants"); and (2) Plaintiff has abandoned his breach of contract claims (Count 2) (ECF No. 24 p. 8, n. 3) and likewise fails to state claims against Defendants for violation of the North Carolina Wage and Hour Act ("NCWHA") (Count 1), fraudulent inducement and misrepresentation (Count 3) or negligent misrepresentation (Count 4).  Alternatively, this case should be transferred to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a).

Plaintiff cannot meet his burden of a prima facie showing that the Court has personal jurisdiction over the Add-On Defendants. PAH is the only defendant that is arguably subject to personal jurisdiction in North Carolina based on its former employment of Plaintiff and operation of the Honda dealership in North Carolina until its sale on October 11, 2020. Unlike PAH, the Add-On Defendants never employed Plaintiff, operated the Honda dealership, or engaged in any business activities in North Carolina. As Plaintiff acknowledges, PAG is a Virginia corporation and D. Ellmer and M. Ellmer are Virginia residents. FAC ¶¶ 2-5. The Add-On Defendants exist, live, work and conduct business in Virginia. They do not have any contacts with North Carolina, much less any significant or meaningful ones that would render them "at home" there.

Plaintiff concedes - as he must - that there is no general jurisdiction over the Add-On Defendants. His specific jurisdiction arguments likewise fail. (ECF No. 23 p. 10-19). The Add-On Defendants have not purposefully availed themselves of the privilege of conducting activities in North Carolina out of which Plaintiff's purported claims arise, and the exercise of specific personal jurisdiction over the Add-On Defendants in North Carolina would not be constitutionally reasonable. Despite Plaintiff's unsubstantiated claims to the contrary, the Declarations of Stacy Cummings ("Cummings"), D. Ellmer and M. Ellmer (ECF No. 19-1, 19-2 & 19-3) demonstrate that any alleged acts and omissions giving rise to this action occurred in Virginia and were undertaken solely and exclusively by PAH.

Plaintiff's claims do not arise out of or relate to any conduct by PAG or D. Ellmer or M. Ellmer personally in North Carolina. Moreover, any actions by D. Ellmer or M. Ellmer were in their capacities as President and COO of PAH. Plaintiff offers no evidence to the contrary. Plaintiff's allegations that M. Ellmer traveled to and conducted business in North Carolina on several days in 2019 and 2020 are false. (ECF No. 19-3 ¶ 17). M. Ellmer merely attended an

2

introductory meeting where no employment terms were discussed on July 2, 2019, a celebratory dinner over a week after Plaintiff was hired on July 18, 2019, and 14 months later a conversation to provide Plaintiff courtesy advance notice of the sale of the dealership on September 9, 2020. (ECF No. 19-3 ¶¶ 12-18). From the introductory airport meeting on July 2, 2019, until the conversation on September 9, 2020, D. Ellmer did not visit PAH, step foot in the Honda dealership or have any meetings, interactions or conversations with Plaintiff in North Carolina. (ECF No. 19-2 ¶ 17). There is nothing to establish personal jurisdiction over the Add-On Defendants.

Plaintiff has abandoned his breach of contract claims (Count 2) (ECF No. 24 p. 8, n. 3) and likewise fails to state claims against Defendants for violation of the NCWHA (Count 1), fraudulent inducement and misrepresentation (Count 3) or negligent misrepresentation (Count 4). These claims are legally defective and factually deficient against PAH and outright frivolous against the Add-On Defendants. There is simply no legal basis to drag a separately owned and operated entity (PAG) or two individuals (D. Ellmer and M. Ellmer) into Plaintiff's employment dispute with his former employer PAH. As the **Priority Automotive Huntersville, Inc. General Manager Compensation Plan** (the "Pay Plan") that Plaintiff attaches to his FAC confirms (ECF No. 11-1), Plaintiff was the General Manager and an employee of PAH. Plaintiff was not an employee of any of the Add-On Defendants. This is exactly what the unsigned Pay Plan he is seeking to enforce says. As Plaintiff concedes, he did not have any contract with any of the Add-On Defendants, and none of them had any obligation to pay him anything even under his own misguided legal theory. The Pay Play refutes any claim against the Add-On Defendants.

Plaintiff's purported NCWHA claim (Count 1) fails because: (1) the Add-On Defendants were never Plaintiff's "employers" under the NCWHA; (2) the wages allegedly withheld were proper under the NCWHA; (3) Beckley was paid far in excess of any amount to which he was

3

entitled under his purported One Year Guarantee (ECF No. 11-1); and (4) the only amount that was reduced for Plaintiff was his "minimum guarantee," the actual amount Plaintiff was able to earn was never changed. Plaintiff's purported fraudulent inducement and misrepresentation claim (Count 3) fails because Plaintiff has not plausibly alleged: (1) a false representation; or (2) fraudulent intent. Plaintiff's purported negligent misrepresentation claim (Count 4) likewise fails because Plaintiff has not plausibly alleged: (1) a false representation; (2) justifiable reliance; or (3) reasonable inquiry. Finally, the economic loss rule bars Plaintiff's claims.

Alternatively, if the Court finds personal jurisdiction over the Add-On Defendants, and decides not to dismiss the FAC for failure to state a claim, the Court should transfer the case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a). The Add-On Defendants are all in Virginia with all of their witnesses and documents. PAH is no longer engaged in any business in North Carolina and all of its witnesses and documents are likewise in Virginia. Virginia is substantially more convenient for everyone other than Plaintiff.

## II. DISCUSSION

### A. Plaintiff fails to demonstrate that this Court has personal jurisdiction over the Add-On Defendants.

Plaintiff has the burden of pleading facts showing there is a prima facie basis for the Court to exercise personal jurisdiction over the Add-On Defendants. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). While a defendant "must affirmatively raise a personal jurisdiction challenge, . . . the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *UMG Recordings, Inc. v. Kurbanov*, 2020 WL 34769936 *3 (4th Cir. 2020). At that point, Plaintiff has the burden to ultimately "prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2012). Plaintiff has not met (and cannot meet) this burden.

4

**1.** **This Court lacks personal jurisdiction over Add-On Defendants for Plaintiff's fraudulent inducement and misrepresentation and negligent misrepresentation claims.**

It is not a novel concept that modern businessmen and businesswomen are often required to wear different hats as they work to serve multiple businesses. As Defendants explained in their Brief in Support of their Motion to Dismiss (ECF No. 19), this Court does not have personal jurisdiction over the Add-On Defendants. Nothing that Plaintiff offers in his Opposition is sufficient to establish personal jurisdiction over the Add-On Defendants. (ECF Nos. 23-24). Defendants recognize that in determining whether personal jurisdiction exists, the court may draw reasonable inferences in favor of jurisdiction, but not unreasonable or speculative ones. As the undisputed evidence confirms, Plaintiff's fraudulent inducement and negligent misrepresentation claims do not arise out of or relate to any conduct by PAG or D. Ellmer or M. Ellmer personally in North Carolina. Moreover, any actions by D. Ellmer or M. Ellmer were in their capacities as President and COO of PAH. (ECF No. 19-2 ¶¶ 11-22; ECF No. 19-3 ¶¶ 11-22).

Just like he overstates D. Ellmer's and M. Ellmer's activities and fabricates their trips to North Carolina, Plaintiff misconstrues the role of PAG and its relationship with PAH and other dealerships. PAG is a Virginia corporation with its principal place of business in Chesapeake, Virginia. PAG provides legal, financial, accounting and payroll services to individual car dealerships. PAG is comprised of the General Counsel's Office, Human Resources, Payroll and Accounting Comptrollers all of which operate exclusively out of Chesapeake and Suffolk, Virginia. PAG does not and never has engaged in any business in North Carolina. PAG does not have any property in North Carolina. PAG does not have any offices or bank accounts in North Carolina. PAG does not have any employees, operations or facilities in North Carolina. PAG exclusively provides administrative support services to dealerships, and PAG does not hire general

5

managers for those dealerships. *Id.* Any hiring of employees, including general managers, is left to the discretion of the owners of each individual dealership. PAG has never operated a "Used Vehicle System" or "UVS" as Plaintiff has falsely alleged. Plaintiff's allegations regarding PAG's operation of a website are also false. (ECF No. 19-1 ¶¶ 6-8, 15-23, 32-34).

Nevertheless, Plaintiff attempts to cobble together a personal jurisdiction argument by suggesting that the Add-On Defendants "committed the intentional tort of fraudulent inducement"; "Beckley felt the brunt of harm in [North Carolina]"; and "Defendants 'expressly aimed [their] tortious conduct' at North Carolina by having PAG executive Matt Pennell recruit Beckley and having Dennis Ellmer and Matt Ellmer travel to North Carolina to make the fraudulent representations and promises at issue in this case." (ECF No. 23 p. 13). Plaintiff attempts to cloud the facts by continually asserting that "Dennis Ellmer and Matt Ellmer, both in their individual capacity and as officers of PAG, traveled to North Carolina for the express purpose of soliciting services to be performed by Beckley in North Carolina." (ECF No. 23 p. 16). Without any factual basis for doing so, Plaintiff attempts to conflate the different parties and their roles in the FAC by alleging: "Matt Ellmer conducted business in North Carolina on behalf of [PAG] **and/or** [PAH]"; "Dennis Ellmer committed these torts against Beckley in Dennis Ellmer's individual capacity and in his capacity as an officer of [PAG] and [PAH]"; "Dennis Ellmer conducted business in North Carolina on behalf of [PAG] **and/or** [PAH]". FAC at ¶¶ 12, 13, 20. This alternative "and/or" speculation is woefully insufficient to establish personal jurisdiction, especially in the face of Declarations from PAG's VP and Treasurer Cummings, D. Ellmer and M. Ellmer (ECF No. 19-1, 19-2 & 19-3). As these Declarations make clear, PAG had nothing to do with it and to the extent D. Ellmer and M. Ellmer had any role or involvement in the recruitment, interviewing or hiring of Plaintiff it all occurred in Virginia and in their capacities as President and COO of PAH. *Id.*

6

Despite Plaintiff's confusion regarding a litany of other matters in this case, Plaintiff knows and concedes which entity hired him as General Manager: PAH. Plaintiff repeatedly alleges in his FAC that he was recruited for, interviewed for, or served in the position as General Manager of PAH at least **twenty-five (25) separate times**. (ECF No. 11). Just like his fabricated claims about D. Ellmer's and M. Ellmer's activities and the capacities in which they were acting, Plaintiff's mischaracterization of the relationship between PAG and PAH does not give rise to personal jurisdiction.

Plaintiff does not identify any specific representations that were made to him and regardless any such representations would have been made by officers of PAH (not PAG) as they recruited Plaintiff as the General Manager of PAH. (Beckley Declaration ECF No. 23-1 ¶¶ 13-14, 16-18). The officers of PAH were the only individuals with authority to hire a general manager for PAH or to set his compensation or the terms and conditions of his employment. (ECF No. 19-1, 19-2 & 19-3). No officer or employee of PAG hired Plaintiff or could have done so. PAH is the only entity over which the Court could plausibly exercise personal jurisdiction. PAH recruited, interviewed, hired and paid Plaintiff. While most of these events occurred in Virginia where PAH is incorporated and headquartered, all of them were performed solely and exclusively by PAH. There is simply no basis for personal jurisdiction over the Add-On Defendants.

> **2.** **This Court lacks personal jurisdiction over Add-On Defendants for Plaintiff's NCWHA claim.**

Plaintiff's arguments for personal jurisdiction over the Add-On Defendants for his NCWHA claim are self-contradictory. Plaintiff offers the Pay Plan showing that PAH is his employer and any alleged payment obligation belongs solely to PAH – not the Add On Defendants. (ECF No. 11-1). Plaintiff attempts to aggregate and conflate the Add-On Defendants as additional "employers" under the NCWHA when Plaintiff had one true employer, PAH. FAC at ¶¶ 26-29;

7

ECF No. 23 pp. 16-19; ECF No. 24 pp. 11-15. Plaintiff's assertion that his "NCWHA claims arise from Defendants' promises regarding the compensation [Plaintiff] would be paid as GM of PAH for his services in North Carolina" (ECF No. 23 p. 18) is refuted by his own Pay Plan which confirms PAH was his sole employer with the sole alleged payment obligation. (ECF No. 11-1).

Plaintiff is correct that in certain limited circumstances, an individual can be deemed an employer under the NCWHA. But those circumstances are not alleged here. *See Garcia v. Frog Island Seafood, Inc.*, 644 F.Supp.2d 696, 707 (E.D.N.C. 2009) (dismissing president and sole shareholder as an "employer" under the NCWHA when they lacked sufficient control over the business to be held individually liable). It is also true that, in his capacity as the COO of PAH, M. Ellmer outranked Plaintiff and theoretically could have exercised control over Plaintiff's employment as the General Manager of PAH. Any such control, however, would have been solely as an officer of PAH, and not in any other capacity. M. Ellmer nor D. Ellmer merely had control over Plaintiff in their capacities as President and COO of PAH – not in their personal capacities or as officers of PAG. As a result, Plaintiff's NCWHA claim against the Add-On Defendants tumbles like a house of cards. Any exercise of personal jurisdiction over the Add-On Defendants related to the NCWHA would be improper under North Carolina's Long-Arm Statute, and would be constitutionally unreasonable. The Add-On Defendants did not make any promises to Plaintiff "to pay for services to be performed in this State by the plaintiff." N.C. Gen. Stat. § 1-75.4(5)(a). Only Plaintiff's employer, PAH, allegedly made any such promises. Moreover, Plaintiff did not work or perform any services for the Add-On Defendants. Plaintiff only worked and performed services for PAH, and as a result, the North Carolina Long-Arm Statute does not reach the Add-On Defendants. *Id.* As the Pay Plan confirms (ECF No. 11-1), any alleged adjustments to Plaintiff's pay were made exclusively by PAH, not the Add-On Defendants.

8

As explained above, Plaintiff fails to demonstrate that the Add-On Defendants purposefully availed themselves of the privilege of conducting activities in North Carolina. Plaintiff also fails to demonstrate that the Add-On Defendants have any minimum contacts with North Carolina. The Add-On Defendants did not contract or communicate with Plaintiff or recruit, interview or hire Plaintiff as the General Manager of PAH. This was done by PAH in Virginia. Plaintiff's claims do not relate to actions taken by the Add-On Defendants. They relate to alleged actions and omissions of PAH. Plaintiff clearly has sour grapes about how his employment with PAH ended and he is suing everyone under the sun despite lacking any legal, factual or jurisdictional basis for doing so. The Add-On Defendants did not make any alleged promises or representations to Plaintiff. Any such unidentified and unspecified promises or representations were made by PAH. For the foregoing reasons, and those contained in Defendants' Supporting Memorandum (ECF No. 19) and the Declarations of Cumming, D. Ellmer and M. Ellmer (ECF No. 19-1, 19-2 & 19-3), the Court lacks personal jurisdiction over the Add-On Defendants and should dismiss them from this action.

**B.     Alternatively, the Court should transfer this matter to the Eastern District of Virginia Norfolk Division pursuant to 28 U.S.C. § 1404(a).**

The purpose of 28 U.S.C. § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. To this end it empowers a district court to transfer any civil action to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Such a transfer can be made to "any other district or division where it might have [originally] been brought." 28 U.S.C. § 1404(a). In a civil action, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391.

9

The United States District Court for the Western District of North Carolina, Charlotte Division, has set forth eleven factors to be considered when deciding if a matter will be transferred. The eleven factors are "(1) [t]he plaintiff's initial choice of forum; (2) [t]he residence of the parties; (3) [t]he relative ease of access of proof; (4) [t]he availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) [t]he possibility of a view; (6) [t]he enforceability of a judgment, if obtained; (7) [t]he relative advantages and obstacles to a fair trial; (8) [o]ther practical problems that make a trial easy, expeditious, and inexpensive; (9) [t]he administrative difficulties of court congestion; (10) [t]he interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) [t]he avoidance of unnecessary problems with conflict of laws." *Uniprop Manufactured Hous. Communities Income Fund II v. Home Owners Funding Corp. of Am.*, 753 F. Supp. 1315 (W.D.N.C. 1990).

Upon a review of each of these factors, it becomes abundantly clear that the Add-On Defendants' Motion to Transfer Venue should be granted:

1. Plaintiff's initial choice of forum. While it is true that a plaintiff's choice of forum is given weight, it is not controlling on its own. Plaintiff presumably filed suit in North Carolina because it was a convenient forum for him but, as explained below, this is the one and only factor that weighs in favor of keeping this case before this Court and it is insufficient.

2. The residence of the parties. There are currently five parties to this suit. Plaintiff, PAG, PAH, D. Ellmer and M. Ellmer. Plaintiff is a resident of North Carolina. All four Defendants are residents of Virginia. Plaintiff chose to sue four Virginia residents, and as such, this factor should be given substantial weight. Because eighty percent (80%) of the parties to this dispute — as it was styled by Plaintiff — are residents of Virginia, this factor weighs heavily in favor of

10

transfer to Virginia.  Not a single defendant resides or does business in North Carolina.  They and all of their documents and witnesses are in Virginia.

       3.      <u>The relative ease of access of proof</u>. No evidence is located in this District. Defendants do not have any property, records, employees, or any other documents in this District. All evidence is located in Virginia. Any relevant evidence that Plaintiff does not already have in his possession is located in Virginia. This factor weighs heavily in favor of transfer to Virginia.

       4.      <u>Availability of witnesses and associated costs</u>.  Plaintiff identifies eight (8) individuals by name in his FAC who are relevant to the claims contained therein. Beckley (himself), PAG, PAH, D. Ellmer, M. Ellmer, Pennell, Robert Chen, and Nick Mumejan. Of these individuals, Plaintiff, once again, is the only resident of North Carolina. The other seven, PAG, PAH, D. Ellmer, M. Ellmer, Pennell, Robert Chen, and Nick Mumejan, all reside in Virginia. Plaintiff argues in his opposition that he intends to call his wife as a witness, and two other witnesses from Keffer Mazda, who reside in North Carolina. The logistics and costs associated with coordinating the appearance in North Carolina of all other witnesses, not to include other PAG employees in Virginia who Plaintiff may call, are substantial.  This would be highly disruptive on Defendants and their business operations as well as the individual witnesses.  Each witness, aside from Plaintiff, would need to travel several hours by car from Tidewater Virginia to Charlotte, and stay in a hotel in Charlotte to appear as a witness in Plaintiff's case. This inherent inefficiency could be cured by having this matter heard in the Eastern District of Virginia, Norfolk Division, which is a substantially more convenient and accessible venue for all of the witnesses in this matter other than Plaintiff.  This factor weighs heavily in favor of transfer to Virginia.

       5.      <u>The possibility of a view by the jury</u>.  The parties have not raised this issue, and as

11

such, the court should give this factor no weight. *See Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F.Supp.2d 357, 363 (W.D.N.C. 2003).

6.      The enforceability of a judgment. Because all Defendants are residents in the Eastern District of Virginia, if Plaintiff somehow obtains a judgment against Defendants, it would be easier for Plaintiff to enforce a judgment against Defendants if this matter is transferred. This factor weighs heavily in favor of transfer to Virginia.

7.      Relative advantages and obstacles to a fair trial. Defendants do not believe, and Plaintiff does not argue, that a trial in either district would be unfair or somehow biased. As a result, this factor should be given no weight.

8.      Practical issues affecting trial expediency and efficiency. It is in all of the parties' best interest to have an expeditious and efficient trial. It is especially advantageous for Plaintiff, because a more expeditious trial is a faster route to any potential recovery that he claims he is owed.  Data provided by uscourts.gov shows that as of December 31, 2019[1], the median time period for disposition of a case that went to trial in United States District Court for the Western District of North Carolina was 22 months. A copy of the report is attached hereto as **Exhibit 1**. The same data show that as of December 31, 2019, the median time period for disposition of a case that went to trial in United States District Court for the Eastern District of Virginia was 14.3 months. On average, the Eastern District of Virginia is resolving cases approximately eight months faster. The Eastern District of Virginia is an objectively more expedient and efficient district for this matter, and as such, this factor weighs heavily in favor of transfer to Virginia.

9.      The relative court congestion.  As mentioned above, the Eastern District of Virginia

---

[1] Comprehensive data was not available for the year 2020 as data is not reported for a given district if they do not have ten or more cases disposed of during trial. Presumably, the Western District of North Carolina did not have ten cases disposed of as a result of trial in 2020 due to COVID-19, and as such, the data was not available.

12

is, on average, disposing of civil cases nearly eight months faster than the Western District of North Carolina. This factor weighs heavily in favor of transfer to Virginia.

10.  Home Forum Interests. Plaintiff has three claims remaining in his FAC:  violation of the NCWHA (Count 1), fraudulent inducement and misrepresentation (Count 3), and negligent misrepresentation (Count 4). On the face of the FAC, the only North Carolina-specific claim that the Virginia court would be required to resolve is Count 1 for violation of the NCWHA. The remaining counts would not require a Virginia court to apply North Carolina-specific law.  Virginia has a greater interest in resolving this dispute because it involves the alleged malfeasance of (or false accusations against) two Virginia companies, and two Virginia citizens. Both districts have a vested interest in resolving this dispute and a result, this factor is neutral.

11.  The avoidance of conflict of laws.  Because neither Plaintiff nor Defendant have raised any conflict of law issues, the court should this factor no weight. *See Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F.Supp.2d 357, 363 (W.D.N.C. 2003).

It is clear that when applied correctly, that the facts and circumstances in this case weigh almost exclusively in favor of transfer to Virginia. Of the eleven factors, six factors weigh heavily in favor of transfer, three factors should be given no weight, one factor is neutral, and one favors Plaintiff.  In all respects, the Eastern District of Virginia is a more efficient, more cost-effective, and more proper venue for this dispute. The factors are overwhelming supportive of a transfer of venue, and as such the Add-On Defendants' motion to transfer should be granted.

**C.  Plaintiff fails to state a claim against any of the Defendants.**

Plaintiff fails in each of the counts set forth in his FAC to "plead factual content that allows the court to draw the reasonable inference that the [Defendants] are liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

13

## 1. Plaintiff is attempting to improperly pierce the corporate veil.

"'[A] corporate entity is liable for the acts of a **separate, related entity only under extraordinary circumstances**, commonly referred to as piercing the corporate veil.'" *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 541 (4th Cir.2013) (quoting *Arctic Ocean Int'l v. High Seas Shipping, Ltd.*, 622 F.Supp.2d 46, 53 (S.D.N.Y.2009)). "This power to pierce the corporate veil, though, is to be exercised 'reluctantly' and 'cautiously' and the burden of establishing a basis for the disregard of the corporate fiction rests on the party asserting such claim." *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681 (4th Cir. 1976). "Factors which [] have been expressly impliedly considered in piercing the corporate veil include: [1] [i]nadequate capitalization; [2] [n]on-compliance with corporate formalities; [3] [c]omplete domination and control of the corporation so that it has no independent identity; and [4] excessive fragmentation of a single enterprise into separate corporations." *Glenn v. Wagner*, 313 N.C. 450, 455 (1985). An action to pierce the corporate veil is "**dependant [sic] upon first obtaining a judgment against the corporation**." *Dana v. 313 Freemason*, 266 Va. 491, 499 (2003) (emphasis added).

Plaintiff does not explicitly label his claims as an action to pierce the corporate veil of PAH, but that is exactly what Plaintiff is attempting to do. Despite attempting to impose liability on a separately owned and operated entity PAG, and personal liability on D. Ellmer and M. Ellmer, Plaintiff fails to allege any claim that the corporate veil of his employer PAH should be pierced. Plaintiff does not allege that PAH had: inadequate capitalization; non-compliance with corporate formalities; complete domination and control of the corporation so that it has no independent identity; or excessive fragmentation of a single enterprise into separate corporations. *Glenn*, 313 N.C. at 455. Because Plaintiff's claims against the Add-On Defendants are implausibly alleged, legally defective and contrary to applicable law, they should be dismissed.

14

### 2. Plaintiff fails to state a claim under the NCWHA (Count 1).

Plaintiff fails to plausibly allege a violation of the NCWHA, and misstates its provisions. The NCWHA does not "require[] that an employer pay all owed and promised wages on the employee's regular pay day" as Plaintiff falsely alleges. Doc. 24 at p. 9. The text of the NCWHA states that "Every employer shall pay every **employee all wages and tips accruing to the employee on the regular payday**." N.C. Gen. Stat. § 95-25.6 (emphasis added).

Plaintiff lays out the fatal flaw in his NCWHA claims on a silver platter for the Court:

> Under Beckley's compensation plan, Beckley earned a salary of $5,000 per month, plus monthly commission based on PAH['s] 'net profit' plus other performance-based commissions and bonuses. Defendants **guaranteed** Beckley a 'minimum compensation of $40,000 per month' during the first year of employment. In March 2020, Dennis Ellmer telephone Beckley and orally informed him that Beckley's **guaranteed compensation** was being reduced to $30,000 per month. This reduction was retroactive, including Beckley's already-earned wages for February 2020. Defendants did not provide Beckley with written notice of this reduction in his compensation plan.

ECF No. 24 p. 16 (emphasis added).

Although it provides that all owed wages must be paid, the NCWHA does not make employers liable for reduced guarantees. The plain language of the statue requires that an employer pay its employees "all wages and tips accruing the employee on the regular payday." N.C. Gen. Stat. § 95-25.6. When PAH called Plaintiff to inform him of the reduction in his **guarantee** in March 2020, nothing changed Plaintiff's **actual compensation calculation**. Plaintiff's compensation remained the same a base salary of $5,000 per month plus 10% of net profit of PAH. Plaintiff could still earn the same amount as all prior months based on this calculation. Plaintiff does not allege that his actual earning potential was reduced, because it was not. ECF No. 24 pp.

15

16-18. Plaintiff instead alleges that only his minimum guarantee was reduced. *See* FAC at ¶ 80; ECF No. 24 pp. 16-18.

PAH still paid Plaintiff all wages owed to Plaintiff at the same agreed-upon rate of $5,000 per month plus 10% of net profit of PAH. Plaintiff alleges that he is owed $50,000 for the reduced guarantee amount, but Plaintiff does not allege what amount of his actual income he suffered as a result of a reduce in guarantee. *See* FAC at ¶ 80. Plaintiff fails to plead that he was paid anything less than his guaranteed amount, and Defendants have not been adequately put on notice of the true amount of the wages in dispute as a result. Further, PAH's verified employee payroll records indicate that Plaintiff was paid $643,160.29 in his first year — far in excess of his guaranteed amount of $480,000. (ECF No. 19-1 ¶¶ 26-31).

Plaintiff acknowledges receiving $643,160.29 in his first year ($163,160.29 more than his alleged One Year Guarantee of $480,000). Nevertheless, Plaintiff argues that his "aggregate annual earnings are irrelevant" because "the Pay Plan 'guaranteed' that Beckley would be paid a minimum of $40,000 each month, in the event Beckley's $5,000/monthly salary plus bonuses and commissions did not reach $40,000." (ECF No. 24 p. 17). The express language of the Pay Plan which he attaches to his FAC refutes Plaintiff's argument and necessitates the dismissal of his NCWHA claim (ECF No. 11-1). The Pay Plan provides: "**One Year Guarantee:** A minimum compensation of $40,000 per month will be paid should this amount be greater than that due above." Above there is "**Compensation**: $5,000 monthly salary (paid on the last day of every month)" and "**Commission**: 10% of 'Net Profit Before Bonuses and Income Tax….The commission is an annual calculation paid monthly….Final settlement for any amounts outstanding or due to the company is to be made after the year-end audit conducted by the company's outside accounting firm." (ECF No. 11-1).

16

This is a "One Year Guarantee" (not a per month guarantee) and payments are calculated and final settlement occur "annually." (ECF No. 11-1). Under his own theory, Plaintiff was guaranteed to be paid at the end of one year after annual calculation and final settlement the total sum of at least $40,000 per month for 12 months ($480,000). By his own admission, Plaintiff was paid much more than that ($643,160.29) during that time period. The Pay Plan refutes Plaintiff's claim for additional payment and his creative argument that "One Year Guarantee" actually means "Per Month Guarantee For 12 Months Irrespective of the Aggregate" is contradicted by the express language of the Pay Plan. (ECF No. 11-1).

Finally, whatever Plaintiff may claim PAH guaranteed, the Add-On Defendants have no guarantees or payment obligations to Plaintiff under the Pay Plan or North Carolina law. The Pay Plan refutes any such obligations on the part of the Add-On Defendants or anyone other than PAH.

### a.      The Add-On Defendants are not Plaintiff's "Employers."

Plaintiff's argument that the Add-On Defendants were his employers is sharply contrasted by his own allegations where he reiterates his role as the General Manager of PAH dozens of times. "Factors commonly relied on by courts in determining the extent of an individual's operational control over employees include whether the individual: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Id.* at 735; s*ee Steelman v. Hirsch*, 473 F.3d 124, 128 (4th Cir. 2007) ("the 'economic reality' standard calls for pragmatic construction" of employment relationships and any judicial evaluation must examine "the circumstances of the whole activity" instead of "isolated factors").

Under the economic reality test, all factors point back to PAH being Plaintiff's sole employer. And the Pay Plan itself confirms this. (ECF No. 11-1). PAH and its officers acting in

17

their official capacity as officers of PAH were the only individuals who could hire or fire Plaintiff, determine the rate and method and payment of Plaintiff's pay, and maintain employment records. As the General Manager of PAH, Plaintiff set his own work schedule, and controlled the work schedule and conditions of employment for his subordinate employees at PAH. PAG did not control any of the above-mentioned factors for Plaintiff, and D. Ellmer and M. Ellmer certainly had no control to do so in their personal capacities either.

The notice provisions of the NCWHA were not violated either when Plaintiff's guarantee was reduced. The statute explains that "[e]very employer shall: . . . [n]otify employees, in writing. . . at least 24 hours prior to any changes in promised wages." N.C. Gen. Stat. § 95-25.13(3). Again, only Plaintiff's guarantee was changed. The actual method by which Plaintiff earned income remained the same throughout his entire term of employment with PAH. For these reasons, in addition to those alleged in Defendants Memorandum of Law in Support of its Motions to Dismiss, Plaintiff has failed to plead a claim under the NCWHA.

> **3.** **Plaintiff fails to state a claim for fraudulent inducement and misrepresentation (Count 3).**

Plaintiff seeks to impose liability on the Add-On Defendants and PAH for allegedly fraudulent or negligent misrepresentations that Plaintiff claims induced him to enter into the Pay Plan with PAH. Because the Add-On Defendants were not a party to that Pay Plan, they cannot be individually liable to Plaintiff for any allegedly fraudulent or negligent misrepresentations that induced Plaintiff to enter into the Pay Plan with PAH. Plaintiff only alleges unfulfilled promises of PAH. *See generally* FAC. Furthermore, Plaintiff fails to allege any representation that induced Plaintiff to enter into a contract with any of the Add-On Defendants. Rather, Plaintiff only alleges that he was induced to enter the Pay Plan with PAH, and that he was paid incorrectly under that Pay Plan with PAH.

18

In order for a defendant's failure to carry out its contractual promise to constitute fraudulent inducement of the contract, defendant's promise "must have been made (1) with the present intent not to carry it out and (2) with the purpose to induce the plaintiff to do work for which the defendant did not intend to pay." *Hoyle v. Bagby*, 253 N.C. 778 (N.C. 1961). Plaintiff's only basis for fraudulent intent is based on his "information and belief" that Defendants were making preparations to sell the dealership when Plaintiff was hired. FAC ¶ 69. "Information and belief" that fraud would occur over 15 months later (Plaintiff was hired in July 2019 and the dealership was not sold until October 2020) is entirely implausible and insufficient to state a claim. Such allegations have generally been held insufficient to state a claim under Rule 12(b)(6) because they are too conclusory. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 197 (M.D.N.C. 1997); *In re Thiel*, 2015 U.S. Dist. LEXIS 21961, at *13-14 ("This is a particular problem in light of the nature of the claim. If such conclusory allegations were sufficient, then any breach of contract claim could be converted into a fraud claim by simply asserting that the defendant never intended to perform."). Plaintiff's conclusory allegations, based on "information and belief," that Defendants did not intend to honor their promises when made, are insufficient to transform a purported breach of contract claim into a claim for fraud. Accordingly, Plaintiff's claim for fraud in the inducement and misrepresentation (Count 3) should be dismissed under Rule 12(b)(6).

To state a plausible claim for fraud in the inducement, the alleged misrepresentations that induced Plaintiff to contract must be reasonably connected in time to the act purportedly evidencing the fraud. See *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 111 (2001) (finding that plaintiff failed to state a claim for fraud in the inducement where the alleged fraudulent statement was made more than a year before the act purportedly evidencing the falsity occurred); *Twombly*, 550 U.S. at 570; Iqbal, 556 U.S. at 679. Plaintiff's allegations are simply too

19

implausible to state a claim for fraud in the inducement under *Yuzefovsky* and *Twombly* because fifteen (15) months between the alleged misrepresentation and the sale of the dealership is too remote. No reasonable fact finder could find that PAH (or the Add-On Defendants) had the present intent in July 2019 to sell the Honda dealership out from under Plaintiff in October 2020. PAH continued to operate the Honda dealership for the next fifteen (15) months after employing Plaintiff. Accordingly, Plaintiff's fraud in the inducement claim is too implausible and it fails to state a claim upon which relief can be granted.

In *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 537 (4th Cir.1988), the Fourth Circuit recognized that "fraud cannot ordinarily be predicated on unfulfilled promises or statements of future events." The one and only exception to this rule is where "defendant did not intend to perform at the time of contracting." *Id*. This is because "[w]hen he makes the promise, intending not to perform, his promise is a misrepresentation of present fact." *Id*.

Plaintiff cannot escape the fact that his fraud in the inducement claim is based only on the alleged fact that PAH (or the Add-On Defendants), at the time of contracting, had the then-present intent to sell the Honda dealership out from under him. Because Plaintiff's FAC alleges that the act evidencing the fraud (the sale of the dealership) did not occur until October 2020 – nearly 15 months after the alleged fraudulent representations – and PAH continued to employ Plaintiff and operate the Honda dealership during this 15 month period, Plaintiff's claim for fraud in the inducement is utterly implausible. *See Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 111 (2001) (finding that plaintiff failed to state a claim for fraud in the inducement where the alleged fraudulent statement was made more than a year and a half before the act purportedly evidencing the falsity occurred); *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 679; *See Krispy Kreme Doughnut Corp. v. Advantage Grp. Enter.*, 2008 WL 5216227 (M.D.N.C. 2008)

(dismissing fraudulent inducement claim at 12(b)(6) stage because plaintiff did not allege contemporaneous statements to third parties or other objective contemporaneous facts showing intent not to perform could not have been truthful); *Martinez v. Reynders*, 2013 WL 3778152 (2013 Wake County Superior Court) (granting motion to dismiss on fraud in the inducement claim for manager of Brazilian entity who entered agreement to become quota holder on entity lease debt for limited period, and ended up becoming personally liable because plaintiff failed to allege facts from which it may reasonably be inferred that defendant did not intend to carry out representation when made).

Plaintiff fails to demonstrate with any specificity that any of the Defendants ever had any fraudulent intent, or any motive for that matter, to induce him to accept employment as GM of PAH by making allegedly false factual statements regarding [1] the sale of Priority Huntersville and [2] the promise of equity partnership after 9 months of employment. FAC ¶ 55. Plaintiff has failed to plausibly allege that these statements were "(1) false representation[s] or concealment of a material fact[s], (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to [Plaintiff]." *TradeWinds*, 733 S.E.2d at 168.

Plaintiff argues that he was deceived into accepting employment with PAH through false promises of equity and promises not to sell PAH. ECF No. 24 pp. 19-20. "[T]o be liable for fraud, the promissor must do something *more* than just disregard or break its promises." *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 595 (M.D.N.C. 2003). "[M]ere proof that a party did not ultimately comply with the contract is not sufficient to establish that the party did not intend, at the time it entered into the contract, to perform under the contract." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 700 (2009) (citing *Williams v. Williams*, 220 N.C. 806, 811 (1942)).

21

Plaintiff's Opposition does little to cure the glaring deficiencies in the FAC related to his claims of fraudulent misrepresentation. Undercutting his own position, Plaintiff relies heavily on his allegations M. Ellmer made representations that the dealership was not being sold by a text message conversation on April 3, 2020[2] (almost a year into Plaintiff's employment with PAH). Doc. 24 at p. 20. Plaintiff cannot rely on statements made nearly a year into his employment to support his claim that he was fraudulently induced to accept employment with PAH.

Plaintiff relies on *Gupta* to advance his position and attempt to skirt the law as set forth under *Norman*. FAC at pp. 23-24. In *Gupta* (an unreported case in North Carolina Superior Court), the employee asserted claims of fraudulent and negligent misrepresentation related to **executed agreements** for bonus compensation that the employer did not pay out on. *Gupta v. Eli Glob., LLC*, 2019 WL 2579911 *2 (N.C. Super. June 19, 2019). The case at hand is distinguished because Plaintiff is relying on unenforceable oral "agreements to agree" relating to equity and the sale of PAH as the basis for his fraudulent inducement and misrepresentation claims, all of which if they did exist would have been superseded by the terms of his Pay Plan anyway.

4. **Plaintiff fails to state a claim for negligent misrepresentation (Count 4).**

Plaintiff asserts that he relied on the Defendants' representations regarding the sale of PAH and his ability to purchase equity in PAG. FAC ¶ 102. "The tort of negligent misrepresentation occurs when [1] a party justifiably relies [2] to his detriment [3] on information prepared [4] without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988); *see also Simms*

---

[2] There is a typographical error in the Opposition where Plaintiff states that this text exchange occurred in April, 2019 (before Beckley was hired in July, 2019). The timeline of events in this portion of the Opposition confirms that this is an error because the preceding sentence says that "[i]n April, 2020 Beckley learned from a source he knew to be very reliable that PAG had found a buyer for PAH." The next sentence states that on "April 3, 2019, Beckley texted Matt Ellmer: 'We're not being sold out, are we?'". FAC at p. 6. Further, Beckley alleges that he was not recruited for the General Manager position of PAH until June 14, 2019. FAC at p. 2.

*v. Prudential Life Ins. Co. of America*, 140 N.C. App. 529, 532 (2000). "A party cannot establish justified reliance on an alleged misrepresentation if the party fails to make reasonable inquiry regarding the alleged statement." *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 369 (2014) (citing *Pinney v. State Farm Mut. Ins. Co.*, 146 N.C.App. 248, 256 (2001) ("It has also been held that when a party relying on a 'misleading representation could have discovered the truth upon inquiry, **the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence**.'")). (emphasis added).

Similar to his fraudulent inducement and misrepresentation claim, Plaintiff's negligent misrepresentation claim fails because he has not alleged that Defendants made any false representations or that he justifiably relied on those false representations. FAC ¶ 102. Plaintiff does not allege that Defendants furnished him any information without a reasonable duty of care, let alone in regard to the sale of the dealership, his alleged equity agreement, or his wages. *Id.* Plaintiff does not allege in the FAC that he was (1) "denied the opportunity to investigate," or (2) that he could not have learned the "true facts by exercise of reasonable due diligence." *Pinney*, 146 N.C.App. at 256. This omission is fatal to Plaintiff's negligent misrepresentation claim.

Plaintiff also fails to allege or identify any false factual statements about (1) the sale of Priority Huntersville, (2) equity partnership or (3) compensation made at any time before, during or after his employment with PAH. Refuting Plaintiff's assertions: (1) Priority Huntersville was not sold until 15 months after he was hired; and Plaintiff continued to work for PAH through October 11, 2020, without raising any issues concerning his alleged partnership interest eligibility as of April 19, 2020, or his compensation reduction due to the COVID-19 pandemic along with all other PAH employees in March 2020. Plaintiff admits that he did not ever bring the issue up to D. Ellmer because the monthly managers meetings in Virginia "were cancelled due to the COVID-

Case 3:21-cv-00072-RJC-DSC   Document 25   Filed 05/10/21   Page 23 of 25

19 Pandemic." FAC ¶ 78. If Plaintiff *truly* believed that he was entitled to an equity interest in the dealership, Plaintiff would have contacted D. Ellmer by phone or email in order to set up a time to discuss such an arrangement.  Quite simply, Plaintiff never did that because there never was an agreement for him to obtain equity in any Priority-affiliated entity, and Plaintiff knew it.

**5.      The Economic Loss Rule Bars Plaintiffs' Claims.**

Finally, Plaintiff's claims also should be dismissed under the economic loss rule.  "Simply stated, the economic loss rule prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law." *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C.App. 635, 639 (2007) (citing *Moore v. Coachmen Industries, Inc.*, 129 N.C.App. 389, 401 (1998)). North Carolina's economic loss rule "does not limit tort actions that arise **in the absence of a contract**," but "[t]he privity requirement does, in some cases, preclude action in tort in the absence of a contractual relationship." *Ellis–Don Constr., Inc. v. HKS, Inc*., 353 F.Supp.2d 603, 606 (M.D.N.C.2004) (emphasis added).  The rationale for the economic loss rule is that where there is a contract governing the parties' relationship they are free to include, or exclude, provisions as to their respective rights and remedies. To give a party a remedy in tort, would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract.  *Id*.

Here, the Pay Plan (ECF No. 11-1) supersedes any prior representations that Plaintiff alleges were made.  Plaintiff knew, or should have known, that any prior representations regarding a potential equity arrangement would have necessarily been included in the terms of the Pay Plan. Instead, Plaintiff is claiming that PAH (or the Add-On Defendants) represented that he would receive some unidentified ownership interest in the Honda dealership for some unidentified price on unidentified terms and conditions on some unidentified future date if he accepted an employment position with PAH and stuck around. This is *purely* an economic loss that is refuted by the express language of the Pay Plan and barred by the economic loss rule.

24

### III. CONCLUSION

For the foregoing reasons and those set forth in their Brief in Support (ECF No. 19) the Declarations of Cummings, D. Ellmer and M. Ellmer (ECF No. 19-1, 19-2 & 19-3) and their Motions to Dismiss (ECF Nos. 17-18), Defendants respectfully request that the Court: (1) dismiss all of Plaintiff's claims against the Add-On Defendants PAG, D. Ellmer and M. Ellmer for lack of personal jurisdiction pursuant to Rule 12(b)(2) or failure to state a claim pursuant to Rule 12(b)(6), or alternatively transfer venue to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a); and (2) dismiss all of Plaintiff's claims against PAH and Plaintiff's FAC in its entirety for failure to state a claim pursuant to Rule 12(b)(6).

Dated: May 10, 2021      Respectfully submitted,

**PRIORITY AUTO GROUP, INC., PRIORITY AUTOMOTIVE HUNTERSVILLE, INC., DENNIS ELLMER and MATTHEW ELLMER**

By     /s/   Joshua F. P. Long

Joshua F. P. Long (N.C. Bar No. 26497)
WOODS ROGERS PLC
Wells Fargo Tower, Suite 1800
10 S. Jefferson Street
Roanoke, Virginia 24011
Telephone: (540) 983-7725
Facsimile: (540) 983-7711
jlong@woodsrogers.com

*Counsel for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to all counsel of record.

/s/    Joshua F. P. Long

25