# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:21-CV-00072-RJC-DSC

| | |
|---|---|
| **JAMES BECKLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **PRIORITY AUTOMOTIVE** | ) |
| **HUNTERSVILLE INC.** *et. al.* | ) |
| | ) |
| **Defendants.** | ) |

## AMENDED MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on "Defendant Priority Automotive Huntersville, Inc.'s Motion to Dismiss for Failure to State a Claim" (document #17) and "Defendants Priority Auto Group, Inc., Dennis Ellmer and Matthew Ellmer's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim or, in the Alternative, Transfer of Venue" (document # 18), as well as the parties' briefs and exhibits, Docs. 19, 23–25.[1]

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for consideration.

---

[1] Defendants filed combined briefs in support of their Motions to Dismiss. See documents ##19 and 25.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motions to Dismiss be granted in part and denied in part as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court accepts the factual allegations of the Complaint as true.

Plaintiff, James Beckley, is a resident of Mecklenburg County, North Carolina. Defendant Priority Automotive Huntersville, Inc., ("PAH") is a Virginia Corporation with its primary location in Huntersville, North Carolina. Defendant Priority Auto Group ("PAG") is a Virginia Corporation with its primary location in Chesapeake, Virginia. Dennis Ellmer, President of PAG and former President of PAH, and Matthew Ellmer, Chief Operating Officer ("COO") of PAG and former COO of PAH, are both Virginia residents.

PAG provides human resources, payroll, marketing, accounting, legal, and financial services for PAH. On or about June 14, 2019, a PAG executive began recruiting Plaintiff to become the General Manager of PAH. On July 2, 2019, Defendant Matthew Ellmer traveled to Charlotte to discuss hiring Plaintiff as General Manager of PAH. This meeting occurred at a restaurant in Huntersville. Plaintiff alleges that they discussed the General Manager position, his current employment, and a future equity arrangement with PAH.

That same day, Dennis Ellmer flew to Charlotte to meet with Plaintiff. Plaintiff, Dennis Ellmer, and Matthew Ellmer met in the Concord Airport for two hours to discuss the job opportunity. Again, the potential for equity ownership was mentioned and Dennis Ellmer "assured Beckley that Priority Auto Group intended to remain in the Charlotte market and that Priority Huntersville would not be sold." (Complaint ¶ 58).

From July 8–9, 2019, Plaintiff traveled to Virginia to meet PAG managing partners, discuss their equity arrangements and attend a monthly General Manager dinner and a monthly status meeting. On July 9, after Plaintiff had returned to North Carolina, he received a text from Matthew Ellmer stating that PAG was putting together an offer. On July 10, 2019, Matthew Ellmer emailed Plaintiff an offer of employment as General Manager of PAH in Huntersville. Attached to the email was a "Pay Plan" that included a "One Year Guarantee: A minimum compensation of $40,000 Per month [to] be paid . . ." (Complaint ¶ 64). Plaintiff accepted the job offer on July 15, 2019, but informed Matthew Ellmer that his wife still had concerns about the position. Matthew Ellmer met with Plaintiff and his wife on July 19, 2019 in North Carolina to further discuss the position.

During the employment negotiations, Plaintiff let Matthew and Dennis Ellmer know that he would not accept an offer without a promise of equity ownership and assurance that PAG would not sell PAH. Plaintiff alleges that Matthew and Dennis Ellmer told him what "he needed to hear to secure [his] acceptance of their job offer" but did not actually intend to offer Plaintiff an equity position or discontinue marketing PAH for sale. (Complaint ¶ 70).

After accepting employment as General Manager of PAH, Plaintiff heard from several industry sources that PAG was continuing to search for a buyer for PAH. Between August 2019 to April 2020, at least four different individuals told him that PAH was being sold.

Nine months after beginning employment, Plaintiff was not offered an equity stake in PAH.

In March 2020, PAG reduced the amount of Plaintiff's guaranteed pay from $40,000 to $30,000 per month due to the COVID pandemic. This pay reduction was communicated to Plaintiff over phone while he was physically located in North Carolina. Plaintiff was not provided a written

notice of the reduction in his monthly guaranteed minimum. Defendants owe him $50,000 in wages for this reduction.

Plaintiff alleges that "Defendants also unlawfully withheld or deducted approximately $32,000 of earned wages … during the course of his employment." (Complaint ¶ 82).

On or about September 9, 2020, Matt and Dennis Ellmer visited Plaintiff at PAH and informed him that they had sold the dealership and that pursuant to the sales agreement PAG could not employ him for two years.

Plaintiff filed his Complaint alleging (1) multiple violations of the North Carolina Wage and Hour Act ("NCWHA"), (2) breach of contract, (3) fraudulent inducement and misrepresentation, and (4) negligent misrepresentation. Plaintiff has since voluntarily dismissed his claim for breach of contract.

Defendants PAG, Dennis Ellmer, and Matthew Ellmer moved to dismiss all claims against them for (1) lack of personal jurisdiction pursuant to Rule 12(b)(2) and (2) failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). See document #18. In the alternative, Defendants moved to transfer this case to the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1404(a). Id. Defendant PAH also moved to dismiss all claims for failure to state a claim. See document #17.

## II. DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

In evaluating a motion to dismiss for lack of personal jurisdiction, all factual disputes must be resolved in favor of the non-moving party. The non-moving party must make a prima facie

showing that the exercise of personal jurisdiction is proper. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Vishay Intertechnology, Inc. v. Delta International Corp., 696 F.2d 1062, 1064 (4th Cir. 1982); General Latex and Chemical Corp. v. Phoenix Medical Technology, Inc., 765 F. Supp. 1246, 1248 (W.D.N.C. 1991). A plaintiff must prove facts sufficient for the Court to find that it has personal jurisdiction. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005).

Plaintiffs must show that the exercise of personal jurisdiction over defendants complies with the forum state's long-arm statute and the constitutional requirements of due process. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). Since "the North Carolina long-arm statute [N.C. Gen. Stat. § 1-75.4] has been interpreted as the legislature's attempt to allow the exercise of personal jurisdiction in all cases where such jurisdiction does not contravene due process, [the] normal two-step inquiry merges into one." Id., citing Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977). See also Thomas Centennial Communications Corp., No. 3:05CV495, 2006 WL 6151153, at *2 (W.D.N.C. December 20, 2006).

To be consistent with the limitations of due process, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts may be established by showing "general" or "specific" jurisdiction. Helicopteres Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

A court may exercise general jurisdiction over a non-resident defendant if that defendant has contacts with the State that are so "continuous and systematic" as to render them "essentially

at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). Clearly, Defendants PAG, Dennis Ellmer, and Matthew Ellmer have not had continuous and systematic contacts with North Carolina.

In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant in a cause of action arising from that defendant's activities in the forum state. The Fourth Circuit has "synthesized the due process requirement for asserting specific personal jurisdiction in a three-part test . . . (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

As the Fourth Circuit has explained, "our reasonableness analysis is designed to ensure that jurisdictional rules are not exploited 'in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a 'severe disadvantage' in comparison to his opponent.'" Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 217 (4th Cir. 2001) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)). As the Fourth Circuit stated in the final analysis, "[f]airness is the touchstone of the jurisdictional inquiry." Tire Eng'g. & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 301 (4th Cir. 2012), cert. denied, 133 S. Ct. 846 (2013).

The Fourth Circuit has made clear that a single contract executed or performed in North Carolina can satisfy minimum contacts requirement. See, e.g., Carefirst of Maryland, Inc. v.

Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003); Capstar Corp. v. Pristine Industries, Inc., 768 F. Supp. 518, 524 (W.D.N.C. 1991).

Defendants Matthew and Dennis Ellmer argue that the actions Plaintiff alleges were not performed in their "personal capacities or their capacities as officers of PAG." Doc. 19 at 8, 10. But the Fourth Circuit has established that a court can claim personal jurisdiction over an agent of a defendant company who "was responsible for virtually all of the contacts between" the company and the plaintiff in the forum state. Crutchfield v. ImmunoScience, Inc., 2009 U.S. Dist. LEXIS 134940 (M.D.N.C. 2009). In cases claiming jurisdiction over a corporate actor, "there is no distinction made . . . of the role in which the defendant performed his tortious acts." Columbia Briargate Co. v. First Nat'l Bank, 713 F.2d 1052, 1058 (4th Cir. 1983) (explaining that "whether for his personal benefit or for the benefit of an employer or third party; the controlling issue is simply whether the non-resident defendant, whatever role he may have occupied, had [] 'minimum contacts'"). In Columbia Briargate, the court declined to recognize corporate agency or "fiduciary shield" as a restriction on personal jurisdiction "over a non-resident corporate agent who has in his fiduciary capacity committed a tort in a forum state . . . under [a] forum long-arm statute which is as broad as due process itself." Id. at 1060. Essentially, the Fourth Circuit has declined to recognize any restriction on a state's long-arm statute other than the requirement of minimum contacts where the statute has been interpreted to stretch as far as constitutional due process allows.

Applying those principles to the jurisdictional facts here, Plaintiff has made a prima facie showing that the exercise of specific personal jurisdiction over Defendants PAG, Dennis Ellmer, and Matthew Ellmer is proper. Defendants have purposefully availed themselves of the privilege of conducting activities in North Carolina by traveling here to meet with Plaintiff and ultimately soliciting and paying for his services to be performed in North Carolina. These actions form the

basis of Plaintiff's claims. The exercise of personal jurisdiction is constitutionally reasonable here. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction be denied.

### B. Motions to Dismiss for Failure to State a Claim

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior

era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### i. NCWHA Claims

Plaintiff brings three claims under the North Carolina Wage and Hour Act (NCWHA): (1) Failure to Pay all Earned Wages pursuant to N.C. Gen. Stat. § 95-25.6, (2) Unlawful Deductions from wages pursuant to N.C. Gen. Stat. § 95-25.8, and (3) Failure to Provide Twenty-Four-Hours

Written Notice before changing Plaintiff's wage plan pursuant to N.C. Gen. Stat. § 95-25.13(3). See N.C. Gen. Stat. §§ 95-25.6–25.13.

As a threshold matter, the Court must determine whether Plaintiff sufficiently established that Defendants are his employers and can thus be held liable under the NCWHA. N.C. Gen. Stat. § 95-25.2 ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee.").

In interpreting the NCWHA, North Carolina courts look to the Fair Labor Standards Act ("FLSA") for guidance. Armento v. Asheville Buncombe Cnty. Christian Ministry, Inc., 2021 WL 1561370 (4th Cir. 2021) ("Because the NCWHA defines the relevant terms identically to the Fair Labor Standards Act (FLSA), we may look to federal interpretations of the FLSA for guidance."); see also N.C. Admin. Code § 12.0103 ("Where the legislature has adopted the language or terminology of the Fair Labor Standards Act . . . for the purpose of facilitating and simplifying compliance by employers with both the federal and state labor laws, . . . the Department of Labor will look to the judicial and administrative interpretations and rulings established under the federal law as a guide for interpreting the North Carolina law.").

To decide whether an individual is an employer for purposes of the FLSA and the NCWHA, courts apply an "economic reality test." See Powell v. P2Enterprises, LLC, 247 N.C. App. 731, 734 (2016). "Factors commonly relied on by courts in determining the extent of an individual's operational control over employees include whether the individual: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Id. "The test examines the totality of the circumstances to determine

whether the individual has sufficient operational control over the workers in question and the allegedly volitive actions to be held liable for unpaid wages." Id.

Applying the economic reality test to the facts here, Plaintiff alleges that Defendants had the power to hire and fire employees because they participated in recruiting Plaintiff to PAH, negotiated the terms and conditions of employment, interviewed, and hired him. Defendants had the power to supervise and control Plaintiff because he directly reported to Matthew Ellmer. Dennis and Matthew Ellmer ultimately sold PAH, thus terminating Plaintiff's employment. Defendants had the power to determine rate and method of payment because they formulated Plaintiff's Pay Plan. Matthew Ellmer emailed Plaintiff the offer of employment and is the signatory to Plaintiff's Pay Plan. Dennis Ellmer informed Plaintiff that his guaranteed minimum compensation was being reduced. And Defendants had the power to maintain employment records because Matthew Ellmer emailed and texted Plaintiff regarding his job offer and the terms and conditions of his employment. These allegations go beyond mere conclusory statements and establish that Defendants Matthew and Dennis Ellmer were Plaintiff's employers under the NCWHA.

PAG is Plaintiff's employer under the NCWHA because PAH and PAG constitute a single enterprise. Neither the Fourth Circuit nor the North Carolina Supreme Court have examined whether the single enterprise theory applies for the purposes of liability under the NCWHA. But the Fourth Circuit has long used the single enterprise theory for the purpose of holding an employer liable under the FLSA. See Brock v. Hamad, 867 F.2d 804 (4th Cir. 1989) (holding that a business owner's management of various rental properties constituted a single enterprise under the FLSA); see also Lima v. MH & WH, LLC, 372 F. Supp. 3d 317 (E.D.N.C. 2019) (finding that construction companies that shared laborers, maintained the same business address, and had shared ownership

interests could be considered a single enterprise under the FLSA). Again, because the NCWHA defines relevant terms identically to the FLSA, North Carolina courts look to the FLSA for guidance to interpret the NCWHA. See Armento, 2021 WL 1561370, at *4 (applying the FLSA economic reality test to the NCWHA because "employee" is identically defined within both the FLSA and the NCWHA). As "employer" is identically defined in both the FLSA and the NCWHA, it is reasonable to rely on the FLSA single enterprise test to determine if PAG and PAH can be held liable as a single enterprise. Furthermore, while the Fourth Circuit has not expressly determined all instances under which a defendant is an employer for the purposes of the FLSA and the NCWHA, the heart of the issue is determining whether the defendant had sufficient operational control within a business enterprise and over the plaintiff. See Garcia v. Frog Island Seafood, Inc., 644 F. Supp. 2d 696, 720 (E.D.N.C. 2009) (explaining that in determining whether a particular individual is an 'employer,' courts "examin[e] the totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions") (quoting Miller v. Colorcraft Printing Co., 2003 WL 22717592, at *3 (W.D.N.C. 2003)).

Under the FLSA, distinct corporate entities may constitute a "single enterprise" if (1) they perform related activities, (2) under unified operations or common control, and (3) for a common business purpose. Martin v. Deiriggi, 985 F.2d 129, 133 (4th Cir. 1992). To support the single enterprise test, Plaintiff alleges that (1) PAG performed human resourcing services for PAH, initiated the first contact with him, and controls terms and conditions for recruiting, onboarding, compensating, disciplining, and terminating employees at PAH; (2) Dennis and Matthew Ellmer are President and Chief Operating Officer of both PAH and PAG, respectively, and all employees working at PAH and PAG receive "@priorityauto.com" emails; and (3) PAG owns a website that

helps transport cars to PAH for purchase and pickup, and regularly interchanges used cars among its family of dealerships. (Complaint ¶¶ 30–46).

Defendants argue that Plaintiff is improperly attempting to "pierce the corporate veil" by asserting that PAH and PAG are a single enterprise. But "the FLSA and the NCWHA have an express exception to the requirement that a plaintiff must pierce the corporate veil because they both allow claims against 'any person acting *directly or indirectly* in the interest of an employer in relation to any employee.'" Earls v. forga Contr., Inc., 2020 WL 3063921 (W.D.N.C. 2020) (emphasis added). Plaintiff has made a prima facie showing that PAH and PAG are liable as a single enterprise for the purposes of the NCWHA.

Under the NCWHA, "every employer shall pay every employee all wages and tips accruing to the employee on the regular payday," and "[p]ay periods may be daily, weekly, bi-weekly, semi-monthly, or monthly." N.C. Gen. Stat. § 95-25.6. Plaintiff alleges that his Pay Plan guaranteed him minimum compensation of $40,000 per month for the first year and that Defendants failed to pay him the minimum compensation for the months of February 2020 through July 2020. Doc. 24 at 16. Specifically, Plaintiff's Pay Plan guaranteed a minimum of $40,000 each month, in the event his $5,000/monthly salary plus commissions and bonuses did not reach $40,000. Id. Plaintiff alleges that Defendants owe him $50,000 for the pay periods between February to July 2020. Doc. 11 at 18. He alleges that the parties contracted for a specific monthly wage, those wages were not paid at the monthly intervals, and he has suffered damage as a result. Plaintiff has stated a plausible claim that Defendants failed to timely pay wages pursuant to N.C. Gen. Stat. § 95-25.6.

Under the NCWHA, "every employer shall … (3) Notify employees, in writing or through a posted notice maintained in a place accessible to its employees, at least 24 hours prior to any

changes in promised wages." N.C. Gen. Stat. § 95-25.13(3). Plaintiff alleges that Defendants failed to provide twenty-four-hours written notice prior to reducing his compensation. His reduction in pay was communicated to him verbally by Dennis Ellmer via telephone. Plaintiff has stated a plausible claim that Defendants failed to provide twenty-four-hours written notice before changing his wage plan pursuant to N.C. Gen. Stat. § 95-25.13(3).

N.C. Gen. Stat. § 95-25.8 provides circumstances when an employer may withhold or divert any portion on an employee's wages. To support this claim, Plaintiff alleges only that "Defendants also unlawfully withheld or deducted approximately $32,000 of earned wages from Beckley's paychecks during the course of his employment." (Complaint ¶ 82). This is a conclusory statement and not entitled the assumption of truth. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiff does not provide any facts to support this conclusory allegation. He does not allege when these wages were deducted or any failure by the Defendants to comply with the technical requirements of N.C. Gen. Stat. § 95-25.8, such as failing to obtain a signed acknowledgement of withheld wages. Since no other facts are alleged to support this NCWHA claim, Plaintiff has not met the 12(b)(6) pleading standard and this NCWHA claim for unlawful deductions from wages should be dismissed.

### ii. Fraudulent Inducement and Misrepresentation and Negligent Misrepresentation Claims

Plaintiff alleges that Defendants fraudulently and negligently misrepresented their intentions to offer him an equity partnership in PAH after nine months of employment, as well as their intentions to not sell PAH.

The essential elements of fraud in inducement in North Carolina are (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, and (5) results in damage to the injured party. Tradewinds Airlines, Inc. v. C-S Aviation Serv., 222 N.C. App. 834, 840, 733 S.E.2d 162, 168 (2012); *see also* Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007). Any reliance on the allegedly false representations must also be reasonable. Id.

Rule 9(b) of the Federal Rules of Civil Procedure requires a heightened pleading standard "in alleging fraud or mistake." Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake."). While the claim must be alleged with particularity, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id.

To support Plaintiff's fraudulent misrepresentation claim, he alleges multiple instances where Matthew Ellmer represented that a "similar equity arrangement [to the equity stake at his former job] could be provided … if [Plaintiff] accepted the General Manager position at [PAH]," and that "Priority Automotive was offering a long-term commitment to [Plaintiff] and [PAH]." (Complaint ¶¶ 53, 66). Plaintiff alleges multiple instances where Dennis Ellmer made similar representations, including on July 2, 2019 when he discussed the "employment opportunity … which included the promise of a long-term relationship," his intent to "remain in the Charlotte market and that PAH would not be sold;" on July 9, 2019 when Dennis Ellmer again assured Plaintiff that "PAH would not be sold;" and when he said to Plaintiff, "give me a 9-month commitment and I'll go myself to the bank with you in Charlotte and co-sign the deal of partnership with PAH." (Complaint ¶¶ 57–58, 60).

Plaintiff further alleges that these misrepresentations were reasonably calculated and intended to deceive because Defendants knew that he would not have accepted an offer of employment had he known that an equity agreement would not be offered or that PAH would be sold. Defendants also knew, based on Plaintiff's track record of increasing sales and profitability as General Manager of competing dealerships, that hiring him would increase the sale value and marketability of PAH.

These alleged misrepresentations resulted in financial and professional damage to the Plaintiff because he was not offered equity in PAH within nine months of beginning his employment and PAH was sold in October 2020.

Applying the principles of fraudulent misrepresentation to the facts as alleged, Plaintiff has plausibly stated a claim. He has alleged with specificity circumstances constituting the fraud, including the time, place, contents, and person who made the misrepresentations. Elements of intent have been generally, yet sufficiently alleged. The Motions to Dismiss Plaintiff's claim for fraudulent inducement should be denied.

The tort of negligent misrepresentation occurs when (1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care. Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988). Claims of negligence are held to the same heightened pleading standard as claims of fraud. Balt. Ciy. V. Cigna Healthcare, 238 F. App'x 914, 925 (4th Cir. 2007) (explaining that the plain text of Rule 9(b) [Federal Rules of Civil Procedure] "is not delimited by an intentionality requirement" and "covers 'fraud and *mistake*'") (quoting Fed. R. Civ. P. 9(b)).

Plaintiff generally relies on the same set of facts alleged in his claim for fraudulent inducement to support his claim of negligent misrepresentation. Plaintiff has clearly established that the alleged negligent misrepresentations were to his detriment.

North Carolina courts have established that in the course of his business, profession, or employment, one owes a duty to exercise reasonable care to supply truthful information when conducting business transactions. See Slattery v. AppyCity, LLC, 2021 WL 1124059, at *7 (N.C. Super. Mar. 24, 2021) ("[One who] supplies false information for the guidance of others in their business transactions … is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."). Plaintiff alleges that Defendants had a pecuniary interest in maximizing PAH's value and obtaining the highest sales price for PAH. Thus, Plaintiff has sufficiently alleged that Defendants had a duty to exercise reasonable care in conducting their business transactions.

Similarly, in cases of business transactions, a plaintiff sufficiently pleads the element of justifiable reliance when he alleges that the defendant who made the false representation possessed superior knowledge and/or experience and gave the plaintiff no reason to suspect that the representation was false. See id. at *6 ("[W]here … parties are not on equal footing, and a defendant possessing superior knowledge and/or experience makes a representation without giving the plaintiff reason to suspect the representation is false, the plaintiff may rely upon that representation."); see also Walker v. Town of Stoneville, 211 N.C. App. 24, 34–35, 712 S.E.2d 239, 246 (2011). Because Plaintiff has established that Defendants had superior knowledge about the alleged misrepresentations due to their employer-employee relationship, Plaintiff has sufficiently stated that his reliance was justifiable.

Plaintiff has alleged a plausible clam for negligent inducement and the Motions to Dismiss should be denied.

IV. **RECOMMENDATION**

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendants' Motion to Dismiss for Failure to State a Claim, Doc. 17, and Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim or, in the Alternative, Transfer of Venue, Doc. 18, be **GRANTED IN PART** and **DENIED IN PART**. That is, Defendants' Motions be **DENIED** in full **EXCEPT** as to Plaintiff's NCWHA Claim for Unlawfully Withholding Wages over the course of Plaintiff's employment, which should be dismissed with prejudice.

V. **NOTICE OF APPEAL RIGHTS**

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Amended Memorandum and Recommendation to counsel for the parties and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED**.

Signed: June 21, 2021

David S. Cayer
United States Magistrate Judge