# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:21-cv-00072-RJC-DSC

| | |
|---|---|
| JAMES BECKLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| | ) |
| PRIORITY AUTO GROUP, INC., | ) |
| PRIORITY AUTOMOTIVE | ) |
| HUNTERSVILLE, INC., | ) |
| DENNIS ELLMER, and | ) |
| MATTHEW ELLMER, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**THIS MATTER** comes before the Court on Defendant Priority Automotive Huntersville, Inc.'s Motion to Dismiss for Failure to State a Claim (Doc. No. 17), Defendants Priority Auto Group, Inc., Dennis Ellmer, and Matthew Ellmer's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim or, in the alternative, Transfer of Venue (the motions to dismiss collectively, the "Motions") (Doc. No. 18), the Magistrate Judge's Amended Memorandum and Recommendation (the "M&R") (Doc. No. 27), and Defendants' objection to the M&R (Doc. No. 28). For the reasons stated herein the M&R is **ADOPTED in part**.

## I. BACKGROUND

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, the Court adopts the facts as set forth in the M&R.

## II. LEGAL STANDARD

A district court may assign dispositive pretrial matters, including motions to dismiss, to a

magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Id.* Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). When "the district court decides jurisdiction on the motion papers alone, the plaintiff need only make a prima facie showing of a sufficient jurisdictional basis to prevail." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016). "When determining whether a plaintiff has made the requisite prima facie showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6)

'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fannie Mae v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III.    DISCUSSION

The Magistrate Judge recommended granting the Motions in part and denying them in part as follows.  First, the M&R concluded that this Court has personal jurisdiction over Defendants Priority Auto Group, Inc, ("PAG"), Dennis Ellmer ("D. Ellmer"), and Matthew Ellmer ("M. Ellmer").  Next, it considered Plaintiff's North Carolina Wage and Hour Act (NCWHA) claims and concluded: (1) Plaintiff alleged sufficient facts that individuals D. Ellmer and M. Ellmer were Plaintiff's employers; (2) Plaintiff alleged sufficient facts that PAG and Priority Automotive Huntersville, Inc. ("PAH") are a "single enterprise"; (3) Plaintiff stated a plausible claim that Defendants failed to timely pay wages pursuant to N.C. Gen. Stat. § 95-25.6; (4) Plaintiff stated a plausible claim that Defendants failed to provide twenty-four-hours written notice before changing his wage plan pursuant to N.C. Gen. Stat. § 95-25.13(3); and (5) Plaintiff did not sufficiently allege a claim for unlawful deductions from wages and recommended dismissal of this claim only.  Next, the M&R concluded Plaintiff stated claims for fraudulent inducement and negligent misrepresentation.  Finally, it recommended denying Defendants' motion to transfer venue to the Eastern District of Virginia.

Defendants objected to all of the Magistrate Judge's conclusions, except the recommended dismissal of Plaintiff's NCWHA claim for unlawful deductions from wages.  Plaintiff did not object.  A party's failure to make a timely objection is accepted as an agreement with the conclusions of the Magistrate Judge.  *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985).  No objection having been filed to the M&R's conclusion that Plaintiff did not sufficiently allege a claim for unlawful deductions from wages and recommended dismissal, and the time for doing so having passed, the parties have waived their right to de novo review of this issue.  Nevertheless, this Court has conducted a full review of the M&R and other documents of record and, having

4

done so, hereby finds that the recommendation of the Magistrate Judge as to the NCWHA unlawful deduction from wages claim is, in all respects, in accordance with the law and should be approved. The Court now turns to the Defendants' objections.

### A. Personal Jurisdiction

A district court may properly assert personal jurisdiction over a nonresident defendant only if (1) jurisdiction is authorized by the long-arm statute of the state in which the district court sits, and (2) assertion of that jurisdiction is consistent with constitutional due process. *Universal Leather, LLC v. Koro Ar, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). "North Carolina's longarm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Thus, in North Carolina, the two-prong test collapses into a single inquiry as to whether the exercise of jurisdiction over a defendant is consistent with due process. *Id.*

"A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc.*, 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction: general and specific. *Sneha Media & Entm't, LLC v. Associated Broad. Co. P*, 911 F.3d 192, 198 (4th Cir. 2018). General jurisdiction allows a court to reach nonresident defendants on the basis of contacts unrelated to the action if those contacts are "continuous and systematic." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). On the other hand, specific jurisdiction exists when "the

defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts." *Id*.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quotation marks omitted). In order to establish specific jurisdiction over a nonresident defendant, a plaintiff must show (1) the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) plaintiff's claims arise out of those activities directed at the forum state; and (3) the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

The first factor, purposeful availment, "is grounded on the traditional due process concept of minimum contacts." *Universal Leather, LLC*, 773 F.3d at 559. This analysis is flexible and analyzed on a case-by-case basis. *Id.* Courts have considered various factors in determining whether a defendant has purposefully availed itself of the forum. *Consulting Engineers Corp.*, 561 F.3d at 278. In the business context, the Fourth Circuit has developed several nonexclusive factors to be considered in determining whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Entm't, LLC*, 911 F.3d at 198–99.

Through this analysis, if a court finds the defendant availed himself of the privilege of conducting business in the forum, courts analyze the remaining factors necessary to determine if specific jurisdiction exists, specifically, whether plaintiff's claims arise out of those activities directed at the forum state, and whether the exercise of personal jurisdiction would be constitutionally reasonable. "The third prong—that the exercise of personal jurisdiction be constitutionally reasonable—permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. These factors include: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id.*

The Magistrate Judge considered whether the Court has specific jurisdiction and concluded it does. This Court agrees. Plaintiff made a prima facie showing that all Defendants are subject to personal jurisdiction in this Court. Defendants have purposefully availed themselves of the privilege of conducting activities in North Carolina in numerous ways. First, according to the Complaint, D. Ellmer and M. Ellmer, officers of PAG, reached into North Carolina to hire Plaintiff as the General Manager of PAH. They each attended at least two in person meetings in North Carolina with Plaintiff, where they traveled to North Carolina for the purpose of meeting Plaintiff and discussing his employment with PAH. Further, they each acted as officers of PAH, a car dealership located in North Carolina. Ultimately, D. Ellmer and M. Ellmer were involved in the decision to hire Plaintiff, a resident in North Carolina, as General Manager of PAH, which employment would be located and performed in North Carolina. Furthermore, M. Ellmer was the

signatory on the Pay Plan for Plaintiff's employment at PAH, to be performed and paid to Plaintiff in North Carolina, and Plaintiff reported directly to M. Ellmer while employed at PAH. Moreover, D. Ellmer and M. Ellmer communicated to Plaintiff, in person in North Carolina, that Defendants sold PAH which ultimately ended Plaintiff's employment relationship with Defendants. All of the aforementioned actions were conducted by officers of PAG. Moreover, PAG provided human resources, payroll, and marketing to PAH in North Carolina, including during Plaintiff's employment at PAH. Finally, as will be discussed below, for purposes of Plaintiff's NCWHA claims, Plaintiff alleged sufficient facts that M. Ellmer and D. Ellmer are Plaintiff's employers and that PAG and PAH are a single enterprise.

Plaintiff's claims arise out of these specific activities in which Defendants purposefully availed themselves in North Carolina. In addition, the exercise of personal jurisdiction is constitutionally reasonable in this case. The only relevant factor weighing in favor of Defendants when determining constitutional reasonableness is the convenience on Defendants; however, given the allegations in the Complaint, the contacts with North Carolina, and the nature of M. Ellmer and D. Ellmer's in person meetings in North Carolina, the burden on Defendants to litigate in North Carolina is not constitutionally unreasonable.

Defendants argument that M. Ellmer and D. Ellmer are not subject to personal jurisdiction because their contacts with North Carolina were as officers of PAG and PAH is unpersuasive. While "the contacts of a company are not attributed to a corporate agent for jurisdictional purposes" a party "is not immune from jurisdiction . . . merely because her contacts with the [forum] were made ostensibly on behalf of [an employer]." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 177 (4th Cir. 2002). Courts may exercise personal jurisdiction over defendants if they have sufficient contacts with the forum, even if those contacts "were made ostensibly on behalf of [an

employer.]" *Id.* The cases Defendants cite are inapposite. For example, in *Thousand Oaks*, the court concluded it did not have personal jurisdiction over individuals when the allegations against them "rest[ed] on nothing more than that they are officers or employees" of an entity Defendant. *Thousand Oaks Barrel Co. v. Deep South Barrels, LLC*, 241 F. Supp. 3d 708, 718 (E.D. Va. 2017) (noting that an amended complaint may assert sufficient allegations that the individual defendants were involved in their employer's allegedly unlawful activities in the forum such that personal jurisdiction would exist). In contrast, as discussed herein, M. Ellmer and D. Ellmer had numerous contacts with North Carolina and jurisdiction rests on more than solely their status as officers or employees of PAG and PAH. Accordingly, Plaintiff made a prima facie showing that Defendants are subject to personal jurisdiction in this Court.

**B. North Carolina Wage and Hour Act Claims**

1. <u>Whether the Complaint Alleges Facts that D. Ellmer and M. Ellmer were Employers</u>

The NCWHA holds "employers" liable under certain circumstances as discussed herein. The NCWHA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." N.C. Gen. Stat. § 95-25.2(5). Because the NCWHA defines employer identically to the Fair Labor Standards Act (FLSA), courts "may look to federal interpretation of the FLSA for guidance" and apply the same standards to determine whether an individual is an employer. *Armento v. Asheville Buncombe Comm. Christian Ministry, Inc.*, 856 Fed. App'x 445, 451 (4th Cir. 2021); *Lima v. MH & WH, LLC*, 372 F. Supp. 3d 317, 335 n.9 (E.D.N.C. 2019). In deciding whether an individual is an employer, courts apply "an economic reality test, examining the totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." *Garcia*, 644 F. Supp. 2d 696, 720 (E.D.N.C.

9

2009) (quotation marks omitted). "Relevant factors include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016) (quotation marks omitted). No one factor is dispositive. *Id.* "Rather, the determination of whether a particular individual had sufficient operational control within a business enterprise to be considered an employer . . . requires a consideration of all of the circumstances and relevant evidence." *Garcia*, 644 F. Supp. 2d at 721.

Defendants argue Plaintiff "may be able to demonstrate that D. Ellmer and M. Ellmer were remotely involved in two of the four factors [of the economic reality test]" but the M&R erred by ascribing responsibility to them "as a pair as opposed to assessing their individual classification as employers." After assessing the allegations as to each M. Ellmer and D. Ellmer individually, whose actions are inherently intertwined, the Court agrees with the Magistrate Judge that the Complaint alleges sufficient factual allegations that M. Ellmer and D. Ellmer were Plaintiff's employer under the NCWHA.

First, the Complaint alleges facts indicating that M. Ellmer and D. Ellmer had the power to hire and fire Plaintiff by interviewing him, negotiating his employment terms, hiring him, and ultimately ending the employment relationship with Plaintiff when they sold PAH. Specifically, both M. Ellmer and D. Ellmer met with Plaintiff in person to discuss hiring him. Afterward, M. Ellmer informed Plaintiff that, after talking to D. Ellmer, "we are putting together an offer for you." (Doc. No. 11 ¶ 61). M. Ellmer emailed Plaintiff an offer of employment, with a Pay Plan on which M. Ellmer was the signatory for PAH. Plaintiff contacted M. Ellmer to accept the offer. During discussions prior to hiring Plaintiff, both M. Ellmer and D. Ellmer made reassurances that

the offer was for a long-term commitment. Additionally, in September 2020, M. Ellmer and D. Ellmer met with Plaintiff to inform him that they sold PAH and could not employ him for two years. While Defendants argue they did not ultimately fire Plaintiff, the facts alleged indicate M. Ellmer and D. Ellmer were, at least in part, responsible for selling the dealership and ending Plaintiff's employment under the PAG umbrella.

The Complaint also alleges that M. Ellmer and D. Ellmer determined Plaintiff's rate and method of payment. For example, M. Ellmer provided Plaintiff with his Pay Plan for which M. Ellmer was the signatory. Additionally, Plaintiff discussed with M. Ellmer on multiple occasions his desire to purchase equity in PAH. M. Ellmer reassured Plaintiff he would have the opportunity to purchase equity, and later informed Plaintiff he would need to speak to D. Ellmer about his ability to purchase equity in PAH. In March 2020, D. Ellmer communicated to Plaintiff that he would receive a $10,000 per month pay reduction. Finally, M. Ellmer and D. Ellmer negotiated the conditions of Plaintiff's employment, and ultimately changed the terms and conditions of his employment during the relationship, and Plaintiff reported directly to M. Ellmer,

Accordingly, the facts alleged in the Complaint are sufficient to state claims under the NCWHA against M. Ellmer and D. Ellmer as Plaintiff's employers. To be clear, the Court is considering this matter at the motion to dismiss stage, and does not conclude that M. Ellmer and D. Ellmer were employers under the NCWHA as a matter of law.[1]

---

[1] Defendants' objection states, "[t]he Recommendation erroneously finds that D. Ellmer and M. Ellmer are liable in their individual capacities as officers of PAH for alleged violations under the NCWHA because they are 'employers' under the economic reality test." (Doc. No. 28 at 8).

11

      2.   <u>Whether the Complaint Alleges Facts that PAG and PAH are a Single Enterprise</u>

The Magistrate Judge concluded the Complaint alleges sufficient facts that PAG was Plaintiff's employer as a single enterprise with PAH. In reaching this conclusion, the M&R noted that "[n]either the Fourth Circuit nor the North Carolina Supreme Court have examined whether the single enterprise theory applies for the purposes of liability under the NCWHA" but applied the single enterprise theory looking to Fourth Circuit cases analyzing FLSA liability because the definitions of "employer" is identical to the NCWHA. Defendants' objection largely does not dispute that the single enterprise theory should be applied, other than to note it is a matter of first impression that is "best resolved by this Court," and then argues that in applying the single enterprise theory the Magistrate Judge reached the wrong conclusion.

The Court agrees with the Magistrate Judge that applying the single enterprise theory is appropriate here. When analyzing NCWHA claims, Courts looks to the interpretation of the FLSA for guidance, including whether entities constitute an enterprise. *Armento*, 856 Fed. App'x at 451; *Leverette v. Labor Works Internt'l, LLC*, 636 S.E.2d 258, (N.C. Ct. App. 2006) (applying FLSA guidance to determine entities did not constitute an "enterprise" under NCWHA); 13 N.C. Admin. Code § 12.0103 ("Where the legislature has adopted the language or terminology of the Fair Labor Standards Act (F.L.S.A.) for the purpose of facilitating and simplifying compliance by employers with both the federal and state labor laws, or has incorporated a federal act by reference, the Department of Labor will look to the judicial and administrative interpretations and rulings established under the federal law as a guide for interpreting the North Carolina law.").

Two separate entities may constitute a single enterprise if they (1) conduct related activities, (2) performed under unified operations or common control, and (3) for a common business purpose. *Brock v. Hamad*, 867 F.2d 804, 806 (4th Cir. 1989).

> Activities are deemed related . . . when they are the same or similar, such as those of individual retail stores in a chain, or when they are auxiliary or service activities. Auxiliary and service activities include generally all activities which are necessary to the operation and maintenance of the particular business, such as warehousing, bookkeeping, or advertising.

*Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 692 (4th Cir. 1990) (quotation marks and citations omitted). "[C]ommon control exists where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together." *Id.* at 693. While ownership is an important consideration for common control, it may be established in the absence of common ownership. *Id.* A common business purpose includes activities which are directed to the same business objective or to similar objectives in which the group has an interest. *Brock*, 867 F.2d at 807. "This common purpose must be more than just the common goal to make a profit . . . but factors such as unified operation, related activity, interdependency, and a centralization of ownership or control can all indicate a common business purpose." *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 604 (D. Md. 2014) (citations and quotation marks omitted). "When different business entities are involved, the critical inquiry is whether there is operational interdependence in fact." *Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 692 (4th Cir. 1990) (quotation marks omitted). "Entities which provide mutually supportive services to the substantial advantage of each entity are operationally interdependent and may be treated as a single enterprise under the Act." *Id.* at 692-93.

Plaintiff has sufficiently alleged PAG and PAH are single enterprise for purposes of his NCWHA claims. First, based on the facts alleged, PAG and PAH conduct related activities. Specifically, according to the Complaint, PAG "performs human resources, payroll, marketing, accounting, legal, and financial services for [PAH's] North Carolina employees." (Doc. No. 11 ¶¶ 10, 36). This is precisely the type of auxiliary or service activities necessary for the operation

13

of PAH.  Next, the Complaint alleges both PAG and PAH are under the leadership of D. Ellmer and M. Ellmer.  Specifically, D. Ellmer is the President of both PAH and PAG and M. Ellmer is the Chief Operating Officer for both entities, and they each controlled, at least in part, whether Plaintiff was able to obtain an ownership interest in PAH.  Further, PAG controls employment decisions and the operation and management of PAH, including policies and procedures, purchasing its insurance policies, interchanging dealership inventory, and sharing an email URL of @priorityauto.com.  These facts combine to demonstrate a common business purpose and result in the operational interdependence required to find that a single enterprise exists.  Therefore, the Court concludes the Complaint sufficiently alleges facts to state a claim against PAG as a single enterprise with PAH.  Again, the Court does not conclude that PAG and PAH are a single enterprise as a matter of law.[2]

3.  <u>Whether the Complaint States Claims Pursuant to N.C. Gen. Stat. § 95-25.6 and N.C. Gen. Stat. § 95-25.13(3)</u>

Pursuant to the NCWHA, "every employer shall pay every employee all wages and tips accruing to the employee on the regular payday."  N.C. Gen. Stat. § 95-25.6.  The NCWHA also requires "every employer shall … (3) Notify employees, in writing or through a posted notice maintained in a place accessible to its employees, at least 24 hours prior to any changes in promised wages."[3] N.C. Gen. Stat. § 95-25.13(3).

The Magistrate Judge concluded Plaintiff sufficiently stated claims pursuant to N.C. Gen. Stat. § 95-25.6 and N.C. Gen. Stat. § 95-25.13(3).  Defendants object to these conclusions arguing

---

[2] Defendants' objection states, "the Recommendation applies that test and erroneously finds that PAH and PAG are a 'single enterprise' and thus are both 'employers' who are liable under the NCWHA."  (Doc. No. 28 at 13).
[3] Effective July 8, 2021, the statute requires notice in writing at least one pay period prior to any changes in promised wages.  N.C. Gen. Stat. § 95-25.13(3).

the M&R does not apply the minimum pleading standard because Plaintiff's Complaint does not allege Defendants withheld the wages he earned or what he was actually paid during the months his minimum guaranteed pay was reduced. Defendants do not cite any case law or other legal authority explaining why Plaintiff must plead the amount he was paid in order to state a claim under either N.C. Gen. Stat. § 95-25.6 or N.C. Gen. Stat. § 95-25.13(3).

Plaintiff's Complaint alleges that he was entitled to guaranteed pay of $40,000 per month, but in March 2020, his pay was retroactively reduced to $30,000 per month, and this was communicated to him by D. Ellmer on the telephone. As a result PAG "owes Beckley $50,000 (February 2020 – July 2020)." (Doc. No. 11 ¶ 80). These facts are sufficient to state claims for violation of N.C. Gen. Stat. § 95-25.6 and N.C. Gen. Stat. § 95-25.13(3) because they allege Plaintiff was not paid "all wages . . . accruing to [him,] the employee" and it was not communicated to him in writing at least 24 hours before it occurred. Even assuming Defendants' argument is correct, and Plaintiff is required to allege the specific amount withheld or the amount he was paid, Plaintiff sufficiently did that here, by using basic math, where the Complaint states Plaintiff was guaranteed $40,000 per month, his pay was reduced to $30,000 per month, and he is owed $50,000. Accordingly, Plaintiff sufficiently stated claims under N.C. Gen. Stat. § 95-25.6 and N.C. Gen. Stat. § 95-25.13(3).

### C. Fraudulent Inducement and Negligent Misrepresentation Claims

Federal Rule of Civil Procedure 9(b) mandates a heightened standard for pleading a claim for fraud. *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F.Supp.3d 722, 725 (M.D.N.C. 2015). Rule 9(b) requires, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this standard, the plaintiff must, at a minimum, describe "the time, place, and contents of the false representations,

as well as the identity of the person making the misrepresentation and what he obtained thereby," otherwise known as the "who, what, when, where, and how" of the alleged fraud. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quotation marks omitted). While the circumstances constituting the fraud must be pled with particularity, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The essential elements of fraud in the inducement are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. *Whisnant v. Carolina Farm Credit*, 693 S.E.2d 149, 157 (N.C. Ct. App. 2010); *TradeWinds Airlines, Inc. v. C-S Aviation Srvs.*, 733 S.E.2d 162, 168 (N.C. Ct. App. 2012). North Carolina has adopted the definition of negligent misrepresentation set forth in the Restatement (Second) of Torts under which:

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Lamb v. Styles*, 824 S.E.2d 170, 177 (N.C. Ct. App. 2019) (quoting Restatement (Second) of Torts § 552 (1977)). Thus, the tort of negligent misrepresentation occurs when (1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care. *Simms v. Prudential Life Ins. Co. of Am.*, 537 S.E.2d 237, 240 (N.C. Ct. App. 2000); *Supplee v. Miller-Motte Business College, Inc.*, 768 S.E.2d 582, 600 (N.C. Ct. App. 2015); *T.W.T. Distributing, Inc. v. Johnson Products Co., Inc.*, 966 F. Supp. 2d 576, 582 (W.D.N.C. 2013).

Defendants argue (1) the claims are barred by the economic loss rule; (2) the Complaint fails to plead fraud with particularity; (3) the Complaint is an impermissible group-pleading that fails to inform each Defendant separately of the nature of his alleged participation the fraud; and (4) the allegations are too remote because fifteen months passed between the alleged fraud and sale of PAH.

First, Defendants argue Plaintiff's fraudulent inducement and negligent misrepresentation claims are partly barred by the economic loss rule. "The economic loss rule addresses the intersection between contract remedies (including warranty remedies) and tort remedies." *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009). Under the rule, "[a] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract." *Rountree v. Chowan Cty.*, 796 S.E.2d 827, 830 (N.C. Ct. App. 2017). "North Carolina law requires courts to limit plaintiffs' tort claims to only those claims which are identifiable and distinct from the primary breach of contract claim." *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 164 (4th Cir. 2018) (quotation marks omitted). "[W]hile claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred and, indeed, '[t]he law is, in fact, to the contrary: a plaintiff may assert both claims.'" *Bradley Woodcraft, Inc. v. Bodden*, 795 S.E.2d 253, 259 (N.C. Ct. App. 2016) (citing *Jones v. Harrelson & Smith Contractors, LLC*, 670 S.E.2d 242, 250 (N.C. Ct. App. 2008)). In other words, a "tort action must be grounded on a violation of a *duty* imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties." *Rountree*, 796 S.E.2d at 831 (quotation marks omitted) (emphasis in original).

Plaintiff brings claims for fraudulent inducement and negligent misrepresentation based on two representations: (1) that Defendants would not sell PAH, and (2) the Defendants intentions to offer Plaintiff an equity partnership in PAH.  Defendants do not argue that the former claims are barred by the economic loss rule, but contend the economic loss rule bars the latter claims which are governed by the Pay Plan.  The Court agrees.  The Pay Plan encompasses the terms agreed to by the parties as to Plaintiff's compensation and does not contain provisions that Plaintiff would gain equity partnership in PAH after nine months.  Now Plaintiff seeks to bring fraud and negligent misrepresentation claims because he is unhappy with the Pay Plan and how the contractual relationship ultimately ended.  Plaintiff argues the economic loss rule does not apply because he is not seeking damages for breach of contract, but rather, the loss resulting from leaving his employment with Keffer Mazda in reliance on Defendants' alleged promises to offer him equity partnership.  However, Plaintiff's theory would turn any normal contractual negotiations into a fraud claim by simply alleging a promise or discussion that occurred during negotiation that was never incorporated into the final contractual agreement.  This is precisely the type of claim the economic loss rule bars, by preventing plaintiffs who are later unhappy with their contractual agreement or relationship from couching contractual claims as tort claims.  The agreed terms of the Pay Plan superseded earlier discussions and negotiations by the parties regarding Plaintiff's compensation, including equity partnership, and Plaintiff's fraud and misrepresentation claims based on these negations are barred.  As noted, Defendants do not argue Plaintiff's claims are barred to the extent they are based on Defendants' representations about selling PAH, but observes that, unlike the Plaintiff's equity position in PAH, the Pay Plan does not address and Defendants do not present any contractual agreement relating to the length of employment or the sale of PAH.  Thus, the Court will dismiss Plaintiff's fraud in the inducement and negligent misrepresentation

claims but only to the extent they rely on misrepresentations made to Plaintiff regarding his ability to obtain equity partnership in PAH.

Next, as it relates to the remaining claims, the Court concludes Plaintiff sufficiently pled his claims for fraud and negligent misrepresentation. The Complaint contains several specific representations made to Plaintiff, including who, what, when, where, and how. Specifically, as to M. Ellmer, the Complaint alleges a meeting a dinner meeting with M. Ellmer in Charlotte, North Carolina, during which M. Ellmer represented to Plaintiff that PAG was "offering a long-term commitment" and a text message in April 2020 from M. Ellmer stating PAH was not begins old. (Doc. No. 11 ¶¶ 18, 71). As to D. Ellmer, the Complaint alleges a meeting with D. Ellmer on July 2, 2019, in North Carolina, in which D. Ellmer represented to Plaintiff that PAH was not for sale, PAH would not be sold, and Plaintiff's employment with PAH would be a "long-term relationship." (Doc. No. 11 ¶ 60). The meeting was followed by a trip to Virginia on July 9, 2019, during which D. Ellmer represented again to Plaintiff that PAH "would not be sold." (*Id.*). M. Ellmer and D. Ellmer made these statements as officers of PAG and PAH. These allegations meet the Rule 9(b) pleading requirements and provide notice of the representations made separately by the Defendants.

Finally, Defendants' argument that the allegations related to the sale of PAH are too remote because the sale of PAH occurred fifteen months after the alleged misrepresentations is also unavailing. According to the Complaint, only one month after the misrepresentations were made to Plaintiff, Defendants were attempting to sell PAH. Specifically, in August 2019, one month after the alleged misrepresentations were made to Plaintiff that PAH would not be sold, Plaintiff "heard from several industry sources" that PAG continued to search for a buyer for PAH. According to the Complaint, Plaintiff estimates that he heard from at least four different

individuals, including a source he knew to be very reliable, between August 2019 and April 2020, that Defendants were selling PAH. The fact that it took fifteen months to ultimately find a buyer and sell PAH on the right terms is irrelevant when Defendants allegedly continued to search for a buyer almost immediately after making the representations to Plaintiff. Moreover, as alleged in the Complaint, Plaintiff raised concerns that Defendants were hiring him to increase the ultimate value of PAH, such that the Complaint alleges facts indicating the time period between the representations and the sale could be part of the alleged fraud itself.

### D. Motion to Transfer Venue

Last, Defendants argues the M&R failed to address their alternative motion to transfer venue to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). Section 1404(a) authorizes a district court to transfer an action "[f]or the convenience of parties and witnesses [and] in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The statute sets forth a two-step process for determining whether to transfer a case. First, the court must determine whether the action "might have been brought" in the district to which the defendant seeks a transfer. *Cable–La, Inc. v. Williams Commc'ns, Inc.*, 104 F. Supp. 2d 569, 574 (M.D.N.C.1999). "This requirement is met if the transferee court has jurisdiction over the subject matter of the action, if venue is proper there, and if the defendant is amenable to process issuing out of transferee court." *Id.* (quotation marks omitted). "After determining that a suit could have been brought in another district, the court must determine whether that forum is a legally convenient one pursuant to 28 U.S.C. § 1404(a)." *Knight Med., Inc. v. Nihon Kohden Am., Inc.*, 765 F. Supp. 291, 292 (M.D.N.C.1991).

The decision whether to transfer a case under section 1404(a) is within the district court's discretion and a court should make "an individualized, case-by-case consideration of convenience

and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation marks omitted).

Courts consider the following factors in deciding whether a case should be transferred:

> (1) the plaintiff's initial choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view by the jury; (6) the enforceability of a judgment, if obtained; (7) the relative advantages and obstacles to a fair trial; (8) other practical problems that make a trial easy, expeditious, and inexpensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of unnecessary problems with conflict of laws.

*Scholl v. Sagon RV Supercenter*, LLC, 249 F.R.D. 230, 239 (W.D.N.C. 2008). "Generally, the movant carries a heavy burden in establishing a case should be transferred pursuant to 28 U.S.C. § 1404(a)." *Id.* The moving party "must show (1) more than a bare balance of convenience in his favor and (2) that a transfer does more than merely shift the inconvenience." *Datasouth Computer Corp. v. Three Dimensional Tech., Inc.*, 719 F. Supp. 446, 451 (W.D.N.C. 1989). "[T]he analysis of these factors is qualitative, not merely quantitative." *Commercial Equip. Co. v. Barclay Furniture Co.*, 738 F. Supp. 974, 976 (W.D.N.C. 1990).

Again, Plaintiff asserts Defendants' arguments regarding transfer of venue should be limited to their opening brief, which fails to analyze the eleven factors and largely only argues the Eastern District of Virginia is the more convenient forum because the majority of witnesses are located there. Defendants only argued the eleven-factors in their reply brief. The Court agrees that Defendants, with the burden of establishing that the case should be transferred, failed to

analyze the relevant factors in their opening brief and waived such arguments. Thus, they failed to meet their burden in establishing the case should be transferred.[4]

Even if the Court considered Defendants' analysis of the eleven-factors, the Court agrees with the Magistrate Judge's conclusion to deny the motion to transfer. The first factor weighs in favor of Plaintiff, who initially chose this forum and "his choice of forum is given considerable weight and 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Stevens v. Atricure Inc.*, No. 3:17-CV-00010-MOC-DSC, 2021 WL 4785503, at *1 (W.D.N.C. Oct. 12, 2021) (quoting *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)). Plaintiff's choice of this forum is not arbitrary. Rather, Plaintiff resides in this District, he was employed at PAH in this District, several of Plaintiff's potential witnesses are located in this District, Plaintiff met in person with Defendants in this District on numerous occasions, and the harm occurred in this District. For these reasons, the second, third, fourth, fifth, seventh, eighth, tenth, and eleventh factors are neutral.

While Defendants argue a judgment against Defendants may be more easily enforced against Defendants in the Eastern District of Virginia, where they are located, and that civil cases are disposed of "nearly eight months faster" in the Eastern District of Virginia which according to Defendants is "especially advantageous for Plaintiff, because a more expeditious trial is a faster route to any potential recovery," the Court does not find these factors particularly persuasive, where Plaintiff's choice of forum is given considerable weight and Plaintiff opposes the request to transfer, despite Defendants' arguments that these factors are beneficial to Plaintiff. In sum,

---

[4] Defendants' objection states the "Recommendation summarily denies this motion to transfer without engaging in or analyzing the eleven-factor test applied by this Court to determine when a matter will be transferred;" however, as noted Defendants waived such arguments by failing to analyze the eleven-factor test in their opening brief.

Defendants' arguments in favor of transferring venue largely center around the convenience to Defendants and their witnesses, which is insufficient to show the case should be transferred.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's Amended Memorandum and Recommendation, (Doc. No. 27), is **ADOPTED in part**; and

2. Defendant Priority Automotive Huntersville, Inc.'s Motion to Dismiss for Failure to State a Claim, (Doc. No. 17), and Defendants Priority Auto Group, Inc., Dennis Ellmer, and Matthew Ellmer's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim or, in the alternative, Transfer of Venue (Doc. No. 18), are **GRANTED IN PART** and **DENIED IN PART**.   Specifically, Defendants' Motions are **GRANTED** as to Plaintiff's NCWHA Claim for unlawfully withholding wages and as to Plaintiff's fraud in the inducement and negligent misrepresentation claims but only to the extent they rely on misrepresentations made to Plaintiff regarding his ability to obtain equity partnership in PAH.  The Motions are **DENIED** in all other respects.

Signed: March 28, 2022

Robert J. Conrad, Jr.
United States District Judge