UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JAMES BECKLEY, <br><br> Plaintiff, <br> v. <br><br> PRIORITY AUTO GROUP, INC., <br><br> PRIORITY AUTOMOTIVE HUNTERSVILLE, INC., <br><br> DENNIS ELLMER and <br><br> MATTHEW ELLMER <br><br> Defendants. | Case No. 3:21-cv-00072-RJC-DSC |

**PRIORITY AUTOMOTIVE HUNTERSVILLE, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY PHILIP GIBBONS AND GIBBONS FIRM**

Defendant and Counterclaimant Priority Automotive Huntersville, Inc. ("PAH") submits this Memorandum in Support of its Motion to Disqualify Philip J. Gibbons, Jr. ("Gibbons") and his firm Gibbons Law Group, PLLC f/k/a Gibbons Leis, PLLC (the "Gibbons Firm") from serving as counsel for Plaintiff and Counterclaim Defendant James Beckley ("Beckley") in this action.

**SUMMARY OF ARGUMENT**

Gibbons and the Gibbons Firm must be disqualified pursuant to Rule 3.7 of the North Carolina Rules of Professional Conduct because they are likely to be necessary witnesses and none of the exceptions apply. Their testimony is relevant, material and otherwise unobtainable. Their testimony does not relate to uncontested issues or the nature and value of legal services rendered in this case. Disqualification of Gibbons and the Gibbons Firm would not work substantial hardship on Beckley. To the contrary, it would prevent prejudice and conflict and preserve the integrity of the judicial process.

As their own text messages and other allegations and exhibits to PAH's Counterclaims confirm, Gibbons and the Gibbons Firm have personal knowledge of, proposed and actively participated in, and materially benefitted from Beckley's fraudulent transactions and self-dealing involving their materially discounted "purchase" of a non-street legal 2015 Jeep Wrangler Unlimited, VIN No. 1C4AJWAG4FL744577 (the "Non-Street Legal Jeep") as part of a scheme to resolve Beckley's debt to them for unpaid legal services (the "Jeep Transaction"). See PAH Counterclaim at ¶¶ 12-16, 106-147, 244, 260, 276, 303, 321, 360, and **Exhibits 1, 12-15.**

## PROCEDURAL HISTORY

On January 6, 2021, Beckley, through his counsel Gibbons and the Gibbons Firm, filed a Complaint against PAH, Priority Auto Group, Inc. ("PAG"), Dennis Ellmer ("D. Ellmer"), and Matthew Ellmer ("M. Ellmer"), (together, "Defendants"), in Mecklenburg County Superior Court. Beckley purported to assert claims against Defendants for alleged North Carolina Wage and Hour Act violations, breach of contract, fraudulent inducement, misrepresentation, and negligent misrepresentation following the sale of the Honda dealership operated by PAH (the "Dealership") to MileOne AutoGroup ("MileOne") on October 11, 2020, and MileOne's termination of his employment on October 23, 2020.

On February 17, 2021, Defendants timely removed this action to this Court on the basis of diversity jurisdiction. (Doc. 1). On February 24, 2021, Defendants moved to dismiss Beckley's Complaint for lack of personal jurisdiction and failure to state a claim. (Doc. 4).

On March 15, 2021, Beckley, through his counsel Gibbons and the Gibbons Firm, filed an Amended Complaint against Defendants. (Doc. 11).

On April 5, 2021, Defendants moved to dismiss Beckley's Amended Complaint for lack of personal jurisdiction and failure to state a claim. (Doc. 17).

On June 21, 2021, Judge Cryer issued an Amended Memorandum and Recommendation (the "M&R") granting in part and denying in part Defendants' motion to dismiss. (Doc. 27). On March 28, 2022, the Court entered its Order adopting in part the M&R. (Doc. 31).

On April 11, 2022, Defendants filed their Answer to Beckley's Amended Complaint and PAH filed its Counterclaims against Beckley. PAH asserts Counterclaims against Beckley for breach of fiduciary duties, aiding and abetting, fraud, conversion, conspiracy, unfair and deceptive trade practices, and unjust enrichment based on his misconduct during his employment with PAH as General Manager ("GM") of the Dealership. (Doc. 32).

## RELEVANT FACTS

Through an investigation, PAH has learned that Gibbons and the Gibbons Firm have personal knowledge of, proposed and actively participated in, and materially benefitted from Beckley's fraudulent transactions and self-dealing involving their materially discounted "purchase" of a non-street legal 2015 Jeep Wrangler Unlimited, VIN No. 1C4AJWAG4FL744577 (the "Non-Street Legal Jeep"). PAH's Counterclaims (Doc. 32) at 12-16, 106-147, 244, 260, 276, 303, 321, 360, and **Exhibits 1, 12-15.**

In August 2019, Beckley orchestrated Gibbons' and the Gibbons Firm's inflated trade in of an old Jeep Wrangler, VIN No. 1C4BJWFG1FL572165 (the "Trade-In Jeep") and materially discounted "purchase" of the Non-Street Legal Jeep as part of a scheme to resolve his debt to Gibbons and the Gibbons Firm for unpaid legal services (the "Jeep Transaction"). *Id.* at ¶¶ 15, 110.

The Jeep Transaction benefited and enriched Beckley, Gibbons and the Gibbons Firm at the expense of and to the detriment of PAH. *Id.* at ¶¶ 16, 111.

Gibbons and the Gibbons Firm were not only fully aware of and active participants in Beckley's fraudulent and self-dealing Jeep Transaction, they were its primary beneficiary. Gibbons and the Gibbons Firm were the recipients of the Non-Street Legal Jeep that Beckley purchased with PAH's funds to pay off his legal fees owed to Gibbons and the Gibbons Firm from his litigation with his prior employer, Lake Normal Auto Mall, LLC d/b/a/ Keffer Mazda ("Keffer Mazda"). *Id.* at ¶ 112.

As their own text messages confirm, Gibbons and the Gibbons Firm have personal knowledge of, proposed and actively participated in, and materially benefitted from the Jeep Transaction. *Id.* at ¶ 113, **Exhibit 12**.

When they purchased the Non-Street Legal Jeep, Gibbons and the Gibbons Firm traded in the Trade-In Jeep which Beckley approved at an inflated trade-in credit of $37,000. At all relevant times, PAH determined the trade-in credit of a vehicle based on its trade-in value. At the time of Gibbons' and the Gibbons Firm's purchase of the Non-Street Legal Jeep, the trade-in value of the Trade-In Jeep was approximately $26,000. Gibbons' and the Gibbons Firm's trade-in credit of $37,000 for the Trade-In Jeep was intentionally overvalued by Beckley by at least $11,000, which caused a substantial loss to PAH to the benefit of Beckley, Gibbons and the Gibbon Firm. *Id.* at ¶¶ 114, 128-132, **Exhibit 15**.

The Trade-In Jeep listed the Gibbons Firm as the debtor for the vehicle. Beckley used PAH's funds to exhaust the debt of Gibbons and the Gibbons Firm by overpaying for the Trade-In Jeep. *Id.* at ¶¶ 115, 129.

As set forth in PAH's Counterclaims, Beckley caused PAH to purchase the Non-Street Legal Jeep for Gibbons and the Gibbons Firm. *Id.* at ¶ 116.

On or about August 12, 2019, less than one month after PH hired Beckley as GM of the Dealership, Beckley used PAH's funds to purchase the Non-Street Legal Jeep for Gibbons and the Gibbons Firm. Beckley did this to pay off his legal fees owed to Gibbons and the Gibbons Firm from his litigation with his prior employer, Keffer Mazda. *Id.* at ¶ 117.

As their text messages to Beckley confirm, Gibbons and the Gibbons Firm have personal knowledge of, proposed and actively participated in, and materially benefitted from the Jeep Transaction: "**On attorney's fees — I have a proposition for you**. If you look back at our texts, I estimated that you will end up in the 30k to 50k range for fees by the time this case is finished. On the new Jeep, I am looking at a balance of approximately 38k with the AEV trade-in. **If you want, I am willing to flat rate the entire defense of the lawsuit for the balance of the Jeep**. This means that you are 100% paid on fees. **The only out-of-pocket money on your end would be litigation costs**, which we will keep to a minimum. Costs are things like transcripts, court reporter fees, etc. Let me know if this works for you. … **Looking for a win-win arrangement** that provides certainty for both of us; i.e. you won't be running up big legal bills defending the case and I am paid in full." *Id.* at ¶ 118, **Exhibit 12** (emphasis added).

The Jeep Transaction was detrimental to PAH and furthered the personal interests of Beckley, Gibbons and the Gibbons Firm at the expense of PAH. Beckley purchased the Non-Street Legal Jeep by a PAH check in the amount of $42,000, plus a $1,000 PayPal Deposit. Beckley purchased the Non-Street Legal Jeep for Gibbons and the Gibbons Firm from Gallatin, Tennessee, and had the Non-Street Legal Jeep transported to PAH. Beckley did not charge Gibbons and the Gibbons Firm for the transportation fee, which is supposed to be passed on to the customer. Instead, Beckley caused PAH to pay this fee. *Id.* at ¶¶ 119-127, **Exhibits 13-15**.

When purchasing the Non-Street Legal Jeep from PAH, Gibbons and the Gibbons Firm were supposed to pay a down payment of $7,060.97. Instead, Gibbons and the Gibbons Firm only paid a down payment of $2,060.97. Beckley attempted to use PAH's funds to cover the remaining $5,000 down payment in order to eliminate Beckley's up front cost in paying for Gibbons' and the Gibbons Firm's Non-Street Legal Jeep. Beckley even went so far as to write "$5,000 covered by Company" on the settlement sheet for the sale of the Non-Street Legal Jeep. Beckley intended to have PAH pay the down payment for Gibbons' and the Gibbons Firm's Non-Street Legal Jeep. *Id.* at ¶¶ 133-136, **Exhibit 15**.

Beckley's attempt to have PAH pay the down payment for Gibbons' and the Gibbons Firm's Non-Street Legal Jeep was discovered and stopped by M. Ellmer. After being caught attempting to use PAH funds to offset the purchase of Gibbons' and the Gibbons Firm's Non-Street Legal Jeep, Beckley reluctantly personally paid the remaining $5,000 of Gibbons' and the Gibbons Firm's down payment on the Non-Street Legal Jeep. Gibbons listed himself personally as the owner on the title for the Non-Street Legal Jeep and listed the Gibbons Firm as the borrower to pay the balance of the loan taken out to purchase the Non-Street Legal Jeep. Beckley exploited his position as GM of the Dealership to harm PAH to the benefit of Beckley, Gibbons and the Gibbons Firm so that Beckley could use PAH funds and resources (instead of his own) to pay off his personal debt to Gibbons and the Gibbons Firm. *Id.* at ¶¶ 137-139

The Jeep Transaction involving Gibbons' and the Gibbons Firm's inflated trade in credit for the Trade-In Jeep and materially discounted "purchase" of the Non-Street Legal Jeep without paying any transportation fee or a proper down payment benefited and enriched Beckley, Gibbons and the Gibbons Firm at the expense of and to the detriment of PAH. *Id.* at ¶¶ 140-145.

PAH intends as part of the discovery process to interview or depose all witnesses that have material, relevant, and necessary information regarding the Jeep Transaction and other issues raised in PAH's Counterclaims. Such witnesses necessarily include Gibbons and the Gibbons Firm who not only were aware of and participated in but also proposed and personally benefitted from the Jeep Transaction. *Id.* at ¶¶ 146-147, **Exhibit 12**.

PAH also needs to be able to depose all witnesses who observed or participated in or were beneficiaries of Beckley's unlawful conduct, which will necessarily include Gibbons and the Gibbons Firm. *Id.* at ¶¶ 146-147, **Exhibit 12**.

Gibbons and the Gibbons Firm gained factual information as a result of their relationship with Beckley and their observation of and participation in at least the Jeep Transaction and potentially other events alleged in PAH's Counterclaims makes their testimony relevant, material and necessary. Gibbons and the Gibbons Firm were not only aware and involved in such events, they proposed and directly benefited from them. *Id.* at ¶¶ 146-147, **Exhibit 12**.

Based on these facts, Gibbons and the Gibbons Firm should not be allowed to serve as both witness and advocate and they should be disqualified from representation of Beckley in this matter.

## LEGAL ANALYSIS

### I. Gibbons and the Gibbons Firm Should Be Disqualified as Counsel for Beckley.

#### A. Legal Standard for Mandatory Disqualification.

It is well established in North Carolina that an attorney should not serve both as advocate and witness. This principle has been codified in Rule 3.7 of the North Carolina Rules of Professional Conduct ("Rule 3.7"). Rule 3.7 provides: "(a) A lawyer **shall not** act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in

the case; or (3) disqualification of the lawyer would work substantial hardship on the client." N.C. Rev. R. Prof. Conduct § 3.7 (a) (emphasis added).  Local Civil Rule 83.1(a) of the United States District Court for the Western District of North Carolina incorporates the North Carolina Rules of Professional Conduct as the ethical standard governing the practice of law in this Court.

The language of Rule 3.7 is mandatory.  A lawyer "shall not" serve as both lawyer and witness unless one of three exceptions can be demonstrated, none of which is applicable here.  The Official Comments to Rule 3.7 explain that the combination of the role of "advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." Rule 3.7, Cmt. 1.  Such prejudice and conflict exist here.

Rule 3.7 prohibits lawyers from advocating in a trial in which they are likely to be a "necessary witness." N.C. Rev. R. Prof. Conduct 3.7; *Braun v. Trust Development Group, LLC*, 213 N.C. App. 606, 610, 713 S.E.2d 528, 531 (2011). The North Carolina State Bar has deemed a "necessary" witness to mean one whose testimony is "relevant, material, and unobtainable by other means." North Carolina State Bar, 2011 Formal Ethics Opinion 1 (April 22, 2011). *See also State v. Rogers,* 219 N.C. App. 296, 304, 725 S.E.2d 342, 348 (2012).

An attorney only needs to be aware of some portions of the issues at hand on which he can uniquely testify in order to be considered a necessary witness under Rule 3.7.  As little as a determination that an attorney "may have relevant information" regarding a legal issue at hand is enough to deem an attorney a material and necessary witness. *Robinson & Lawing, L.L.P. v. Sams*, 161 N.C. App. 338, 340, 587 S.E.2d 923, 925 (2003); *see also State v. Rogers,* 219 N.C. App. 296, 304, 725 S.E.2d 342, 348 (2012).  Gibbons and the Gibbons Firm easily surpass this standard.

### B. Gibbons and the Gibbons Firm are Likely to Be Necessary Witnesses.

Gibbons and the Gibbons Firm are likely to be "necessary witnesses" in this matter because their testimony is relevant, material, and otherwise unobtainable. *See USA v. Wells*, 2019 WL 6040785, at *2 (W.D.N.C. Nov. 14, 2019) (*citing State v. Smith*, 749 S.E.2d 507, 510 (N.C. Ct. App. 2013)); 2011 Formal Ethics Opinion 1 ("It is generally agreed that when the anticipated testimony is relevant, material, and unobtainable by other means, the lawyer's testimony is 'necessary'").

Pursuant to their own text messages, statements of other witnesses and documentary evidence, Gibbons and the Gibbons Firm not only have personal knowledge of and direct involvement in but also proposed and benefitted from the Jeep Transaction. No one else can testify about their knowledge of, role in or benefit from the Jeep Transaction that harmed PAH. Gibbons and the Gibbons Firm are the only witnesses with personal knowledge who can substantiate the facts, circumstances, purposes and results of the Jeep Transaction. *See Robinson & Lawing, L.L.P. v. Sams*, 161 N.C. App. at 340-41, 587 S.E.2d at 925 (affirming trial court's disqualification of defendant's counsel because he had relevant information concerning the defendant's lawsuit).

In *Robinson & Lawing, L.L.P. v. Sams*, plaintiff moved to disqualify the defendant's attorney due to discussions the attorney had with the defendant prior to his engagement as her counsel in the underlying lawsuit. *Id.* at 339, 587 S.E.2d at 924. Based on the plaintiff's motion, in which it "considered defense counsel a necessary and material witness, and stated its intention to call defense counsel as a witness during the trial[,]" the trial court disqualified the defendant's counsel. *Id.* at 340-41, 587 S.E.2d at 925. The North Carolina Court of Appeals held that the trial court properly disqualified the defendant's counsel under Rule 3.7 because he was likely to be a necessary witness and there was no applicable exception. *Id.* at 341, 587 S.E.2d at 925.

Like the plaintiff's counsel in *Sams*, here, PAH considers Gibbons and the Gibbons Firm to be necessary and material witnesses and intends to depose them and likely call them as witnesses during the trial of this matter. Gibbons' and the Gibbons Firm's pre-existing relationship with Beckley caused them to propose, participate and become entangled in the Jeep Transaction. Exactly what Gibbons and the Gibbons Firm had been told and understood about the fairness, authorization and legitimacy of the Jeep Transaction is an issue that will be explored in discovery. Whatever their knowledge, Gibbons and the Gibbons Firm were involved and benefitted.

The Jeep Transaction occurred in or around August, 2019, well before Beckley would have engaged Gibbons and the Gibbons Firm as counsel in this case in late 2020 or early 2021. PAH should be free to explore everything that Gibbons and the Gibbons Firm observed and discussed with Beckley about the Jeep Transaction and to potentially examine them at trial about what they saw and did, how they and Beckley acted and responded, and what benefit they and Beckley received.

In sum, because Gibbons and the Gibbons Firm have relevant information regarding material factual issues alleged in PAH's Counterclaims, the Court should deem them material and necessary witnesses and disqualify them from representing Beckley in this action. *See Sams*, 161 N.C. App. 338, 340, 587 S.E.2d 923, 925 (2003); *Braun v. Tr. Dev. Grp., LLC*, 213 N.C.App. 606, 611, 713 S.E.2d 528, 531 (2011) (affirming trial court's grant of defendants' motion to disqualify pursuant to Rule 3.7 because plaintiff's attorneys were necessary witnesses); *see also State v. Rogers,* 219 N.C. App. 296, 304, 725 S.E.2d 342, 348 (2012) (affirming disqualification where defense counsel "was likely to be a necessary witness at defendant's trial").

### C. None of the 3 Exceptions to Mandatory Disqualification Apply.

Gibbons and the Gibbons Firm do not fall within any of the three exceptions to Rule 3.7's mandatory disqualification provision: (1) the Jeep Transaction is contested; (2) their testimony does not relate to the nature or value of legal services rendered in this case; and (3) there is no substantial hardship on Beckley.

First, their testimony relates to contested issues. Beckley claims the Jeep Transaction was legitimate. PAH disagrees and has documents and evidence to prove the contrary.

Second, their testimony does not involve the nature and value of legal services rendered in this case. Their testimony focuses on their knowledge of the Jeep Transaction in August 2019 – nearly a year and a half before Beckley filed this case in January 2021.

Third, their disqualification would not work a substantial hardship on Beckley. Beckley cannot claim any such prejudice because it is early in the litigation and discovery has not yet begun. Beckley has ample time to secure alternate counsel for discovery and trial. *See Rogers,* 219 N.C. App. at 304, 725 S.E.2d at 348 (affirming disqualification because "there is competent evidence in the record to support the trial court's conclusion that [defense counsel] was likely to be a necessary witness at defendant's trial and that none of the exceptions to Rule 3.7 apply.").

### D. Disqualification Furthers Public Policy, Avoids Prejudice and Conflict.

The genesis for Rule 3.7 is the substantial interest Courts possess in conducting a fair and unbiased legal proceeding. *State v. Taylor*, 155 N.C. App. 251, 255, 574 S.E.2d 58, 62 (2002). "If [an attorney is] *likely* to be [a] necessary witness[ ] on a contested issue, then [he or she may be] disqualified pursuant to Rule 3.7." *In re Se. Eye Ctr.-Pending Matters*, 2020 WL 509550, at *2 (N.C. Super. Jan. 30, 2020).

"Rule 3.7 prohibits a lawyer from simultaneously serving [as both an advocate and witness] because '[c]ombining the role of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client.'" *Id.* (*quoting Harris & Hilton, P.A. v. Rassette*, 252 N.C. App. 280, 283, 798 S.E.2d 154, 157 (2017) (quoting N.C. Rev. R. Prof. Conduct 3.7, cmt. 1)). "Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses." N.C.Rev. R. Prof. Conduct 3.7, cmt. 4.

As set forth in the comments to Rule 3.7, "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." N.C. Rev. R. Prof. Conduct 3.7, cmt. 1. When the jurors know an attorney has personal knowledge relevant to a case, it may not be clear whether that attorney's statements should be taken as proof or advocacy. N.C. Rev. R. Prof. Conduct 3.7, cmt. 2. This creates ambiguities which are unacceptable in a trial setting.

Such prejudice and conflict exist here. Whether deliberately or unwittingly, Gibbons and the Gibbons Firm proposed, participated in, and personally benefitted from the Jeep Transaction. Based on the nature and extent of their involvement, it is likely that: (1) they will be necessary witnesses at trial; (2) their testimony will encompass material, disputed issues; and (3) none of the exceptions in Rule 3.7 are applicable. Accordingly, Gibbons and the Gibbons Firm must be disqualified from representing Beckley in this matter. *Harris & Hilton*, 252 N.C. App. 280, 284.

In addition to being mandatory, Gibbons' and the Gibbons Firm's disqualification furthers important public policy and avoids prejudice and conflict. Gibbons and the Gibbons Firm are persons and entities that PAH will depose and likely call as witnesses at trial to substantiate the

allegations raised in its Counterclaims concerning the Jeep Transaction. Gibbons and the Gibbons Firm have unique information from and about Beckley as a result of their pre-existing relationship and their involvement in the Jeep Transaction. As explained in the comment to Rule 3.7, "[a] witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." Rule 3.7, cmt. 2. Gibbons and the Gibbons Firm should not be allowed to continue to serve as both witness and advocate.

The ambiguities of the dual role are prevalent and manifest here. Any question Gibbons or the Gibbons Firm pose of a witness has the potential to be taken as proof. For example, if Gibbons or the Gibbons Firm ask a witness whether he or she believes the Jeep Transaction was legitimate or examines Beckley or cross-examines PAH witnesses about the Jeep Transaction, the jurors may infer that Gibbons or the Gibbons Firm knows this to be true or has additional information about the event.

This is improper, and Gibbons and the Gibbons Firm should not be allowed to essentially offer evidence from the counsel table by inquiring on subjects on which the jurors may infer they have personal knowledge. This is the basis for Rule 3.7's prohibition on serving as an advocate and a witness. Its application is clear here and disqualification is necessary to prevent further harm.

### E. Whether Beckley Intends to Call Gibbons as a Witness is Irrelevant.

Whether Beckley intends to call Gibbons (or the Gibbons Firm) as a witness is irrelevant. The fact that Gibbons and the Gibbons Firm have relevant, material, and otherwise unobtainable information and PAH intends to depose them and likely call them as witnesses at trial suffices and necessitates disqualification. *See Green v. Moog Music, Inc.*, 2021 WL 4130530 at * 2 (W.D.N.C. September 10, 2021) (granting motion to disqualify plaintiff's counsel Mr. Soboleski even though

plaintiff filed a declaration asserting that she did not intend to call him at trial because "there are factual disputes as to what occurred during that event, information from the few individuals present, including Mr. Soboleski, is relevant and material. There is also no indication that Mr. Soboleski's recollection of those matters can be obtained by other means."); *USA v. Wells*, 2019 WL 6040785, at *2 (W.D.N.C. Nov. 14, 2019) (granting motion to disqualify defendant's counsel because "the government intends to call counsel as a witness at trial on the issue of whether the defendant made false statements on February 19; therefore, counsel's testimony as to what she had provided to him as of that date is relevant and material to the obstruction charge in Count Thirty-Six. Second, the record does not reflect that any other witness could provide the same information as counsel….Accordingly, the Court finds that counsel has an actual, or a serious potential, conflict of interest in trying this case because he is likely a necessary witness."). Irrespective of Beckley's intentions, Gibbons and the Gibbons Firm are unique sources concerning the Transaction and PAH intends to depose them and likely call them as trial witnesses.

### F. Pre-Existing Relationships Support Disqualification.

Disqualification is particularly appropriate where, as here, there are pre-existing relationships between the attorney and the parties and witnesses to the proceeding. *See State v. Rogers,* 219 N.C. App. 296, 304, 725 S.E.2d 342, 348 (2012) (affirming disqualification of attorney Eads and noting that "because Eads had personal knowledge of the relationship between Chardell and defendant, a potential, or even actual, conflict of interest regarding attorney representation was far more probable in this case" based on "the preexisting relationships between the attorney and the parties and witnesses to the proceeding"). Gibbons and the Gibbons Firm's pre-existing relationship with Beckley – the facts and circumstances of which are directly at issue in PAH's Counterclaims - precludes their continued representation of Beckley in this case. *Id.*

As the North Carolina Court of Appeals recognized in an analogous context, Gibbons' and the Gibbons Firm's pre-existing relationships with Beckley create a "**serious potential for conflict**" because allowing them to remain as Beckley's counsel and testify could require them "**to disclose confidential information regarding the relationship between [Beckley] and [PAH], which information may have divulged [Beckley's] motive for [the Jeep transaction], which in turn could compromise his duty of loyalty to his client**." *Rogers,* 219 N.C. App. at 304 (emphasis added). PAH intends to ask Gibbons and the Gibbons Firm about Beckley's relationship with PAH, and whether they believed the transaction to be approved and authorized or in the interests of PAH.

### G. Gibbons' Implication in Jeep Transaction Supports Disqualification.

Finally, disqualification is especially important for the integrity of the judicial process where, as here, the attorney is not only aware of but also potentially implicated in his client's alleged impropriety. *USA v. Wells*, 2019 WL 6040785, at *2 (W.D.N.C. Nov. 14, 2019) ("Such disqualification will protect important interests in the trial process. When chosen counsel has first-hand knowledge of the events presented at trial, his performance as an advocate can be impaired because he may be constrained from making arguments on behalf of his client based on what he knows or by the temptation to minimize his own involvement. Also, the government is prejudiced when counsel functions as an 'unsworn witness,' effectively testifying while advocating in a dual role before the jury. Thus, disqualifying current counsel from advocating at trial promotes the defendant's right to effective assistance of counsel, the government's interest in a fair trial, and the Court's role in ensuring the integrity of the judicial process."). Gibbons and the Gibbons personal knowledge of, direct involvement in, and materially benefit from the Jeep Transaction precludes their continued representation of Beckley in this case. *Id.*

As this Court has recognized: "**When chosen counsel has first-hand knowledge of the events presented at trial, his performance as an advocate can be impaired because he may be constrained from making arguments on behalf of his client based on what he knows or by the temptation to minimize his own involvement**." *USA v. Wells*, 2019 WL 6040785, at *2 (W.D.N.C. Nov. 14, 2019) (emphasis added).

Here, as in *Wells*, Gibbons "has first-hand knowledge of the [Jeep Transaction]," including the facts, circumstances, purposes and results, and how and why he got a sweetheart deal from Beckley at the expense of and to the detriment of PAH. *Id*. Gibbons "may be constrained from making arguments on behalf of [Beckley] based on what he knows [about the purchase price, the lack of transportation fee, the inflated trade-in credit, the lack of down payment, the source of funds, Beckley's debt to him] or by the temptation to minimize his own involvement." *Id.*

Discovery will establish exactly what Gibbons and the Gibbons Firm had been told and understood about the fairness, authorization and legitimacy of the Jeep Transaction. Were Gibbons and the Gibbons Firm knowing participants in Beckley's fraud and self-dealing or did Beckley deceive them too as to the facts and circumstances of the Jeep Transaction? The latter is clearly a better position for Gibbons and the Gibbons Firm but a worse position for Beckley. The temptation for Gibbons and the Gibbons Firm to downplay their knowledge of the Jeep Transaction or claim they believed it was approved and authorized by PAH is strong. *Id.* By claiming Beckley kept them in the dark, they would be defending themselves but incriminating their own client. *Id.*

As a result of their "temptation to minimize [their] own involvement" and avoid liability, Gibbons and the Gibbons Firm "may be constrained from making arguments on behalf of [Beckley]" and this constraint creates an inherent irresolvable conflict of interest that necessitates disqualification. *Id.* This is a textbook case for when and why disqualification is proper.

## CONCLUSION

Rule 3.7 of the North Carolina Rules of Professional Conduct provides that "a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," unless a Rule 3.7 exception applies. Gibbons is a necessary witness because he has relevant, material and otherwise unobtainable information as to the contested Jeep Transaction underlying PAH's Counterclaims. There is no applicable Rule 3.7 exception for Gibbons and the Gibbons Firm to evade the prohibition that they cannot act as advocate at a trial in which they will be necessary witnesses. Because it would be contrary to the governing ethical rules, unfair, prejudicial and a conflict of interest for Gibbons and the Gibbons Firm to be allowed to continue serving as Beckley's counsel in this case, the Court should grant PAH's Motion to Disqualify.

Dated: April 11, 2022

Respectfully submitted,

**PRIORITY AUTOMOTIVE HUNTERSVILLE, INC.,**

By  /s/  Joshua F. P. Long

Joshua F. P. Long (N.C. Bar No. 26497)
WOODS ROGERS PLC
Wells Fargo Tower, Suite 1800
10 S. Jefferson Street
Roanoke, Virginia  24011
Telephone: (540) 983-7725
Facsimile: (540) 983-7711
jlong@woodsrogers.com

*Counsel for Defendants and Counterclaimant Priority Automotive Huntersville, Inc.,*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to all counsel of record.

/s/  Joshua F. P. Long