2022 WL 875993
Only the Westlaw citation is currently available.
United States District Court, E.D. North Carolina,
Southern Division.

M.D. RUSSELL CONSTRUCTION, INC., Plaintiff,
v.
CONSOLIDATED STAFFING, INC., Defendant.

No. 7:19-CV-221-BO
|
Signed 03/23/2022

**Attorneys and Law Firms**

Blake Younger Boyette, Joseph Z. Frost, Buckmiller Boyette & Frost, Raleigh, NC, for Plaintiff.

Philip Andrew Hinson, Kevin V. Parsons, Lewis Brisbois Bisgaard & Smith LLP, Charlotte, NC, for Defendant.

ORDER

TERRENCE W. BOYLE, UNITED STATES DISTRICT JUDGE

 **\*1**  This cause comes before the Court on defendant Consolidated Staffing's motion for summary judgment and plaintiff's motion for partial summary judgment. The appropriate responses and replies have been filed, or the time for doing so has expired, and the matters are ripe for ruling. For the reasons that follow, Consolidated Staffing's motion is granted and plaintiffs motion is denied.

BACKGROUND

Plaintiff M.D. Russell Construction (plaintiff or Russell Construction) is a Virginia construction company and defendant Consolidated Staffing (defendant or Consolidated) is a temporary staffing agency with a location in Jacksonville, North Carolina. Russell Construction filed this case in Onslow County Superior Court on September 10, 2020, alleging claims for breach of contract, fraud, unfair and deceptive trade practices, conversion, abuse of process, and in the alternative for negligence, negligent misrepresentation, and unjust enrichment. The claims arise out of Consolidated's agreement to provide temporary staffing to Russell Construction.

In its answer, Consolidated asserted counterclaims against Russell Construction for breach of contract and quantum meruit/unjust enrichment. Russell Construction has moved for partial summary judgment, seeking judgment in its favor as to liability on its breach of contract, fraud (or in the alternative negligent misrepresentation), unfair and deceptive trade practices, conversion, abuse of process, and negligence claims as well as on Consolidated's counterclaims. Consolidated seeks entry of summary judgment in its favor on all claims, including its counterclaims against plaintiff.

Unless otherwise indicated, the following facts are undisputed. Consolidated is a temporary staffing company which was contacted by Russell Construction in 2018 to provide temporary staffing on projects at the River Landing Development in Wallace, North Carolina where Russell Construction was to perform hurricane remediation. Consolidated sent Russell Construction two contractual offers for the River Landing project, one on September 24, 2018, and one on September 25, 2018. After Consolidated had sent the 24 September 2018 offer, Naomi Ledbetter, an employee of Russell Construction with authority to negotiate and enter into contracts, sent an email to Consolidated employee Jennifer Creech stating "I didn't see anything about time and a half in that paperwork. Would you be able to write something up so we have the rate in writing?" [DE 64 p. 3]. The 25 September 2018 agreement was provided the next day. Ms. Ledbetter was authorized to enter into the 25 September 2018 contract (hereinafter River Landing contract or 25 September contract) on behalf of Russell Construction and to work with Consolidated to secure staffing for the project. Ms. Creech executed the River Landing contract on behalf of Consolidated. The River Landing contract constituted the final agreement between the parties.

*Terms of the River Landing contract*
The 24 September 2018 offer and the River Landing contract are essentially identical with the exception of the bill rate, which was increased from $17.55 per hour to $23.50 per hour. The parties dispute what the adjusted bill rate reflects. Plaintiff contends that the evidence supports that the increase in the weekly bill rate would cover payroll, including FICA and other taxes, as well as overtime. Consolidated contends that the increase to the bill rate had no impact on which party would be responsible for overtime, and that the rate was increased to attract more workers to the job.

**\*2** The River Landing contract is silent as to the specific number of temporary laborers Consolidated would supply to Russell Construction for the project, but expressly provides that Consolidated would perform criminal background checks on request. Both parties had the right to terminate the River Landing contract at any time, with or without notice. The River Landing contract did not contain any guarantees of workmanship or mandate that any of the temporary laborers possess certain skills, however it did provide that Russell Construction could request that Consolidated relieve any underperforming worker at Consolidated's expense if the employee did not show the skills needed within two hours of arriving. The River Landing contract further provided that invoices would be due upon receipt as they were for labor.

*Performance under the River Landing contract*
Consolidated began providing temporary labor to Russell Construction on September 26, 2018. The parties disagree as to whether Russell Construction or Consolidated was responsible for supervising the temporary employees and ensuring they were completing their work, although Russell Construction does not dispute that the River Landing contract did not contain a provision which would require Consolidated to supervise the temporary workers it provided. Russell Construction contends, however, that while it would supervise some of the work being performed by the temporary staff, it was not feasible for it to supervise and inspect every task performed by the temporary workers, who were employees of Consolidated. The parties further disagree as to whether Consolidated provided Russell Construction with sufficient temporary staff needed to complete the River Landing projects.

Russell Construction contends it notified Consolidated of inadequate work performed by temporary workers that had to be redone and suspicions that the temporary workers provided by Consolidated were billing for work that was never performed. Consolidated contends that while Russell Construction eventually withheld payment of invoices because it assumed the work being invoiced had not been performed, it lacks any facts which would establish this, a contention to which Russell Construction objects, citing, among other things, evidence of timesheets which were not signed by Russell Construction supervisors and thus should not have been paid, forged time sheets, and other time sheets for work which had to be performed by Russell Construction employees. At bottom, although it had promptly paid invoices throughout the project, even those which included overtime charges and were based upon unverified or unsigned time sheets, Russell Construction elected to withhold payment on the final invoice until the overtime and time sheet discrepancies could be resolved.

Russell Construction contends that it ultimately lost specific jobs on the River Landing project, and while Consolidated argues that Michael Russell (Mr. Russell), plaintiff's president and owner, cannot explain why, Russell Construction contends it was specifically due to the lack of staffing provided by Consolidated and the resulting inability to meet certain time and completion events.

*Virginia and Florida projects*
Russell Construction began discussing another remediation project in Florida with Consolidated in early October 2018. Russell Construction and Consolidated also discussed working together in Northern Virginia on a snow removal project. Neither the Virginia nor the Florida project were included in the 25 September contract for remediation at the River Landing Development.

Consolidated offered a possible discount to Russell Construction on labor for both projects; Russell Construction contends that this discount on the Florida and Virginia projects was offered in order to account for the final River Landing project invoice, which Russell Construction had contested. Consolidated contends that the discounted bill rate was offered due to the amount of labor involved. Consolidated ultimately informed Russell Construction that it would not supply any temporary workers for the Florida or Virginia projects until the final invoice for the River Landing project had been paid. Both Russell Construction and Consolidated understood that a written contract regarding the Virginia and Florida projects would be entered into, but no contracts were ever executed. Russell Construction contends, however, that verbal agreements were reached and that Consolidated did not inform Russell Construction that it would not provide temporary labor for the Florida or Virginia projects until payment of the River Landing project final invoice until after plaintiff was required to perform on those projects. It is undisputed that Russell Construction did not seek temporary labor from any other staffing company for the Florida or Virginia projects.

*Onslow County lawsuit*
**\*3** Russell Construction did not pay Consolidated the River Landing project outstanding final invoice balance of

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

$38,810.37. Consolidated then sent the unpaid final invoice to collections which was handled by former defendant Altus Global Trade Solutions. As part of the collections process, Consolidated filed suit in Onslow County Superior Court to collect the final River Landing project invoice. Consolidated later voluntarily dismissed the lawsuit on May 13, 2019. Plaintiff filed this action in Onslow County Superior Court several months later.

DISCUSSION

I. <u>Motion for extension of time, motion for leave to file in excess of page limitation, motions to strike</u>.
For good cause shown, Russell Construction's motion for extension of time to respond to Consolidated's motion for summary judgment [DE 60] is granted and the Court deems as timely the response filed at [DE 71].

Consolidated has moved to strike the last six pages of Russell Construction's memorandum in opposition to Consolidated's motion for summary judgment as in excess of the page limit provided in this district's Local Civil Rules. Consolidated has also moved to strike Russell Construction's counterstatements to Consolidated's Statement of Undisputed Material Facts which are not directly supported by citations to specific evidence as in violation of this district's Local Civil Rules. [DE 75].

As to the excess pages, Russell Construction has moved for leave to file excess pages, [DE 87], and for good cause shown that motion is granted. Accordingly, the request to strike the excess pages is denied.

The Court further denies Consolidated's request to strike Russell Construction's counterstatements to Consolidated's Statement of Undisputed Material Fact as well as Russell Construction's motion to strike Consolidated's Reply Statement of Material Facts [DE 91]. The Local Civil Rules are designed to facilitate a just, speedy, and inexpensive outcome in civil cases. Local Civil Rule 1.1. "Regular violations of local rules and serial motions to strike are no way to achieve" this goal. *Dudley v. City of Kinston*, No. 4:18-CV-00072-D, 2020 WL 6335960, at \*2 (E.D.N.C. Oct. 16, 2020). The Court, in its discretion, denies the requests to strike as it discerns no grounds for striking the filings from the docket.

In sum, Russell Construction's motion for leave to file excess pages [DE 87] is granted and the motions to strike [DE 75 & 91] are denied.

II. <u>Motions for summary judgment</u>.
A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party.... and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

**\*4** When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505.

(1) Choice of law.
At the outset, the Court must determine which law applies to the parties' claims. Russell Construction contends that each of its claims is governed by North Carolina law. Consolidated contends that the Court must apply North Carolina, Virginia, and Tennessee law to the pending claims.

Case 3:21-cv-00072-RJC-DSC   Document 43-4   Filed 07/18/22   Page 3 of 12

Federal courts sitting in diversity must apply the substantive law of the states in which they sit, including those states' choice-of-law rules. *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.,* 386 F.3d 581, 599–600 (4th Cir. 2004). Accordingly, this Court must apply North Carolina's choice-of-law rules to determine which state's law governs each of the pending claims.

Under North Carolina's choice-of-law rules, the substantive laws of North Carolina govern this case where the alleged injury occurred in North Carolina. *Martin Marietta Materials, Inc. v. Bondhu, LLC,* 241 N.C. App. 81, 83, 772 S.E.2d 143 (2015). "[I]ssues involving performance and damage for nonperformance [of a contract] are governed by the laws of the place of performance." *Contract A.L. Green & Co. v. Great-W. Life Assur. Co.,* 738 F. Supp. 965, 969 (W.D.N.C. 1990). As the place of performance of the River Landing contract was North Carolina, North Carolina law governs plaintiff's and defendant's contract claims for the River Landing project. [1]

The law of the situs of the claim traditionally is applied to determine which law governs "tort or tort-like" claims. *SciGrip, Inc. v. Osae,* 373 N.C. 409, 420, 838 S.E.2d 334 (2020). North Carolina courts interpret the situs of the claim as the "state where the plaintiff was injured" or the state "where the last act occurred giving rise to the injury." *Harco Nat. Ins. Co. v. Grant Thornton LLP,* 206 N.C. App. 687, 694, 698 S.E.2d 719 (2010) (internal quotations and citations omitted). Russell Construction is based in Virginia and Consolidated is headquartered in Tennessee.

Consolidated argues that Virginia law governs Russell Construction's fraud-based tort claims because Russell Construction did not suffer an injury until it paid Consolidated from its bank accounts in Virginia. Plaintiff's fraud and fraud-based claims specifically allege that plaintiff was injured when it continued to pay invoices submitted by Consolidated. The Court agrees that Russell Construction's pecuniary loss was suffered in Virginia, where Russell Construction's bank accounts are held, and thus Virginia law governs these claims. *Harco Nat. Ins. Co.,* 206 N.C. App. at 697, 698 S.E.2d 719.

Russell Construction's unfair and deceptive trade practices claim also specifically identifies as the injury a substantial portion of the total amount paid to Consolidated, along with reputational harm, lost profits, loss of opportunities, and losses associated with remediating and redoing substandard

work. Again, the site of the injury, or the last act giving rise to the injury, was payment from Russell Construction's bank accounts located in Virginia. *See P & L Dev., LLC v. Bionpharma, Inc.,* 367 F. Supp. 3d 421, 428 (M.D.N.C. 2019) (predicting North Carolina Supreme Court would apply lex loci test to determine which state's law applies to unfair and deceptive trade practice claim). Accordingly, the Court will apply Virginia law to plaintiff's unfair and deceptive trade practice claim.

**\*5** As to Russell Construction's conversion claim, Consolidated argues that Tennessee law applies as that is where its bank account held any allegedly converted funds when Consolidated refused to return them. Russell Construction contends that North Carolina is where a majority of the damages it suffered occurred. The Court agrees with Consolidated's analysis based upon the foregoing and it will apply Tennessee law to this claim. Finally, Consolidated and Russell Construction agree that plaintiff's abuse of process claim is governed by North Carolina law.

In support of its argument that North Carolina law applies to all of its claims, Russell Construction argues that Consolidated waived the choice of law issue, that Consolidated should be estopped from raising the issue, and that the law of the case requires the Court to only apply North Carolina law. Russell Construction is correct that a choice of law issue may be waived. *Williams v. BASF Catalysts LLC,* 765 F.3d 306, 316 (3d Cir. 2014) (citing *Bilancia v. Gen. Motors Corp.,* 538 F.2d 621, 623 (4th Cir. 1976)). Waiver is typically found, however, where a party has failed to raise the issue in the district court but attempts to raise it on appeal or where the party seeks to raise the issue after trial.

The Court further discerns no waiver in this case in Consolidated's failure to raise the issue in its *Fed. R. Civ. P. 12 (b)(6)* motion. To determine where an injury occurred often involves a fact-intensive inquiry which can be more appropriately raised after discovery and in a motion for summary judgment. *See Garlock Sealing Techs., LLC v. Simon Greenstone Panatier Bartlett,* No. 3:14-CV-116, 2015 WL 5148732, at \*3 (W.D.N.C. Sept. 2, 2015). Moreover, as the choice of law issue was neither raised nor analyzed in the Court's order denying defendant's motion to dismiss, there is no law of the case on this issue. Finally, neither equitable estoppel nor judicial estoppel are applicable in this circumstance. *See Thompson v. Charlotte-Mecklenburg Bd. of Educ.,* 222 N.C. App. 855, 731 S.E.2d 862 (2012); *King v. Herbert J. Thomas Mem'l Hosp.,* 159 F.3d 192, 196 (4th

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Cir. 1998). Accordingly, the Court will apply North Carolina, Virginia, and Tennessee law to the respective claims.

**(2) Russell Construction's claims.**
The Court will consider first whether either party, when taking the disputed facts in the light most favorable to the non-moving party, is entitled to summary judgment on plaintiff's claims. [2]

**A. Breach of contract**
Russell Construction alleges that Consolidated breached the 25 September 2018 proposal, which, together with communications exchanged between representatives of plaintiff and defendant, represented a binding and enforceable contract. Russell Construction alleges that Consolidated breached the 25 September contract by misrepresenting that the increase in bill rate would obviate plaintiff's responsibility to pay overtime for temporary workers; failing to provide competent, professional, and punctual workers with the requisite skills; and failing to perform criminal background checks as requested. Amd. Compl. ¶ 142(A)-(I). [3]

**\*6** A claim for breach of contract under North Carolina law requires a showing first of the existence of a valid contract and second of breach of the terms of the contract. *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838 (2000). A valid contract requires mutuality of agreement supported by adequate consideration. *Croom v. Goldsboro Lumber Co.*, 182 N.C. 217, 108 S.E. 735, 737 (1921); *Creech ex rel. Creech v. Melnik*, 147 N.C. App. 471, 477, 556 S.E.2d 587 (2001). A breach of contract is actionable where the breach is material, which means that it is "one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." *Long v. Long*, 160 N.C. App. 664, 668, 588 S.E.2d 1 (2003). Failure to comply with a duty assumed by a party to a contract constitutes breach. *Sechrest v. Forest Furniture Co.*, 264 N.C. 216, 217, 141 S.E.2d 292 (1965) (internal alterations and citation omitted).

**(i) River Landing project**

*Overtime and the number and skill of temporary workers*
It is undisputed that the 25 September agreement constitutes the River Landing contract. The River Landing contract contains no provisions which govern the number of laborers to be provided by Consolidated and no provision which

states that Consolidated agreed to assume the obligation to pay overtime. Rather, the River Landing contract expressly provides that Consolidated would "provide[ ] the following under the proposed bill rate: all required payroll taxes, certified payroll for government contracts, social security, Medicare contributions, federal and state unemployment taxes, workers' compensation insurance, as well as all administrative costs for recruiting employees, maintaining personnel records, including quarterly reports and year-end W-2 insurance." [DE 54-7].

In opposition to Consolidated's motion for summary judgment, Russell Construction argues that other conversations which took place between it and Consolidated after the 24 September 2018 offer was made demonstrate that the 25 September offer and River Landing contract placed the responsibility for paying overtime on Consolidated. "The parol evidence rule prohibits the admission of evidence of prior oral agreements to vary, add to, or contradict the terms of a written instrument intended to be the final integration of the transaction." *Godfrey v. Res-Care, Inc.*, 165 N.C. App. 68, 76, 598 S.E.2d 396 (2004) (internal alteration, quotation, and citation omitted); *see also Thompson v. First Citizens Bank & Tr. Co.*, 151 N.C. App. 704, 709, 567 S.E.2d 184 (2002) (parol evidence rule "prohibits the consideration of evidence as to anything which happened prior to or simultaneously with the making of a contract which would vary the terms of the agreement.") (citation omitted).

Thus, the written contract sets the terms of the agreement, and Russell Construction cannot use parol evidence to change or modify the terms of the 25 September contract. Although parol evidence may be used where there is latent ambiguity in the terms of the contract, *see Parks Bldg. Supply Co. v. Blackwell Homes, Inc.*, 247 N.C. App. 246 (2016), the terms of the River Landing contract are not ambiguous and Russell Construction does not argue that they are.

Russell Construction also alleges that Consolidated violated the River Landing contract by failing to provide workers who were punctual, competent, and professional and who possessed the requisite skills and expertise. Again, the River Landing contract did not require Consolidated to provide skilled or trained employees for the River Landing project, and instead only general labor. Accordingly, summary judgment in Consolidated's favor is appropriate as to this portion of the claim because Russell Construction has failed to create a genuine issue of material fact as to breach on these grounds.

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

*Background checks*

**\*7**  Russell Construction further alleges that Consolidated breached the River Landing contract by failing to perform background checks as requested. As Consolidated has argued, this breach was not material to the contract because conducting background checks did not go to the heart of the agreement. This is evidenced by the fact that Consolidated continued to provide temporary laborers after it had failed to provide background checks and Russell Construction continued to use and pay those laborers. *See* [DE 64-2] Russell Depo. p. 39.

Russell Construction does not expressly address this argument in its response to Consolidated's motion, and the Court has been provided with no evidence or argument that performing background checks was material to the performance of the contract. Accordingly, as failing to provide background checks cannot be characterized as a substantial failure to perform, Consolidated is entitled to summary judgment as to this portion of plaintiff's breach of contract claim.

(ii) Florida and Virginia projects

In its amended complaint, Russell Construction does not in its breach of contract claim specifically identify any contract regarding projects in Florida or Virginia as having been breached. *See also* [DE 30 p. 10] (noting that it appears the breach of contract claim arises solely from the River Landing project). Russell Construction has not amended its complaint to include such a claim.

But in opposition to Consolidated's motion for summary judgment and in its own motion for summary judgment, Russell Construction now contends there was a unilateral or implied contract that it and Consolidated entered into for the Florida and Virginia projects. A unilateral contract "is formed when one party makes a promise and expressly or impliedly invites the other party to perform some act as a condition for making the promise binding on the promisor." *CIM Ins. Corp. v. Cascade Auto Glass, Inc.*, 190 N.C. App. 808, 811, 660 S.E.2d 907 (2008). The complaint does not allege that a unilateral contract was formed or that Consolidated breached a unilateral contract regarding projects in either Florida or Virginia. Accordingly, dismissal of any attempt to raise a claim for breach of unilateral contract is appropriate, as Consolidated has not had notice of the claim against it. *See* Fed. R. Civ. P. 8.

A contract implied in law is one which would support a claim for quantum meruit or unjust enrichment, but is not an express contract subject to breach. *Waters Edge Builders, LLC v. Longa*, 214 N.C. App. 350, 353, 715 S.E.2d 193 (2011); *Horack v. S. Real Estate Co. of Charlotte, Inc.*, 150 N.C. App. 305, 314, 563 S.E.2d 47 (2002). Consolidated is accordingly entitled to summary judgment on any claim for breach of contract related to the Florida or Virginia projects.

B. Fraud

Russell Construction's claim for fraud is based upon the following allegedly fraudulent statements: Jennifer Creech's statement to Mr. Russell that Consolidated would perform criminal background checks on all workers supplied to Russell Construction under the contract; Ms. Creech's statement to Mr. Russell that Consolidated would charge Russell Construction the flat hourly labor rate of $23.50 per hour and that this increased hourly rate would ensure that Russell Construction would not incur overtime expenses by both attracting more workers and increasing the rate to cover the cost of any incidental overtime charges; and Consolidated's statement through one or more employees in its accounting department to Russell Construction that each line item on the invoice to Russell Construction was supported by a physical time sheet that accurately reflected the true hours worked by the respective workers and was signed off on or otherwise approved by an authorized agent of plaintiff. Amd. Compl. ¶¶ 149.

**\*8**  A claim for fraud under Virginia law requires a plaintiff to show "(i) a false representation by defendant, (ii) of a material fact, (iii) made intentionally and knowingly, (iv) with intent to mislead, (v) reliance by the misled party, and (vi) resulting injury to the party misled." *Diaz Vicente v. Obenauer*, 736 F. Supp. 679, 690 (E.D. Va. 1990).[4]  A plaintiff must prove these elements by clear and convincing evidence. *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014).

The intent to defraud must be present at the time the promise or inducement was made in order to be actionable as fraud. *Patrick v. Summers*, 235 Va. 452, 454, 369 S.E.2d 162 (1988). In other words, a claim for fraud cannot be based on merely unfulfilled promises. *Id.*[5]  Consolidated moves for summary judgment on this claim as Russell Construction has admitted, by way of Mr. Russell's deposition testimony, that it has no evidence Consolidated had any intent not to carry out its

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

obligations under the River Landing contract. *See* [DE 54-2] Russell Depo. pp. 195; 197; 199.

Although Russell Construction argues that recklessness indifference to the falsity of a statement is sufficient under North Carolina law, its argument misses the mark. First, Virginia law applies to Russell Construction's fraud claim, and it has cited no Virginia case which has held that reckless indifference is sufficient to demonstrate fraud. *Cf. Carlucci v. Han*, 907 F. Supp. 2d 709, 740 (E.D. Va. 2012) (although silence may constitute fraud under Virginia law where there is a duty to disclose, the concealment must be deliberate and "[r]eckless non-disclosure is not actionable.").

Second, Russell Construction has failed to come forward with evidence which would create a genuine issue of material fact as to whether Consolidated acted with the requisite scienter to support its fraud claim. Russell Construction has further failed to demonstrate that it is entitled to summary judgment on this claim in its favor by citing evidence which demonstrates that Consolidated intended not to carry out its obligations or otherwise defraud plaintiff. Summary judgment is therefore appropriate in Consolidated's favor.

### C. Unfair and Deceptive Trade Practices

Russell Construction also brings a claim under North Carolina's Unfair and Deceptive Trade Practices Act (NCUDTPA). N.C. Gen. Stat. § 75-1.1. Russell Construction relies on the following to support its claim: Consolidated's misrepresentation and concealment of material facts from Russell Construction regarding the quantity, quality, and costs of temporary laborers and Consolidated's adherence to the contract; Consolidated's attempts to simultaneously collect the final invoice by letters from former-defendant Altus and filing a collection lawsuit; converting Russell Construction's funds; intentionally and fraudulently interfering with Russell Construction's contracts with other entities, including the Virginia project; failing to disclose to Russell Construction that Consolidated was unable or unwilling to secure the requisite number of workers for each of Russell Construction's projects; and failing to perform the requisite background checks on temporary laborers. Amd Compl. ¶¶ 171 (A)-(I). Russell Construction further relies on the "substantially aggravating circumstances attendant to Defendant CSI's intentional, willful, and wanton breach of the contract between it and Plaintiff (as evidenced in part by the September 25 Proposal) and multiple violations of applicable North Carolina law." *Id.* ¶ 171 (J).

**\*9** At the outset, the Court has determined that Virginia law applies to plaintiff's tort claims, and thus the Court would not apply a North Carolina statute. *See Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 714 n. 13 (E.D. Va. 2009) (applying Virginia's lex loci choice of law rule and determining that as none of the plaintiff's injuries took place in North Carolina plaintiff could not sustain an action for violation of the NCUDTPA).

Moreover, even assuming, *arguendo*, that Russell Construction's NCUDTPA claim is proper, it has failed to create a genuine issue of material fact or demonstrate that summary judgment is appropriate in its favor. Even intentional breach of contract "simply does not suffice to support the assertion of an unfair and deceptive trade practices claim." *SciGrip*, 373 N.C. at 427, 838 S.E.2d 334. Accordingly, Russell Construction must show that the breach of contract is "surrounded by substantial aggravating circumstances" to support a NCUDTPA claim. *Griffith v. Glen Wood Co., Inc.*, 184 N.C. App. 206, 217, 646 S.E.2d 550 (2007). Russell Construction has failed to do so. At bottom, Russell Construction relies on its claims for fraud, abuse of process, and conversion to support its NCUDTPA claim. But because, as explained above and below, Consolidated is entitled to summary judgment on those claims, Russell Construction's NCUDTPA necessarily fails on the merits.

### D. Conversion

Russell Construction alleges that Consolidated converted Russell Construction's funds when it received and kept money paid by Russell Construction for fraudulent time sheets and overtime which Russell Construction did not owe. Amd. Compl. ¶¶ 176-186.

Under Tennessee law, the "tort of conversion may lie where a defendant may have rightfully obtained possession of the property of the owner but refuses to return it to the owner when legally required to do so. By making a rightful demand for the return of his property, a plaintiff establishes a *prima facie* case of conversion, and the defendant must then show facts that constitute a justification or excuse for his failure to deliver it." *Permobil, Inc. v. Am. Express Travel Related Servs. Co.*, 571 F. Supp. 2d 825, 841 (M.D. Tenn. 2008) (internal citations and quotations omitted). [6]

At the outset, it is undisputed that Consolidated rightfully received the funds paid to it by Russell Construction. Accordingly, Russell Construction's claim is premised only

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

on what it contends is Consolidated's unlawful retention of the funds after Russell Construction allegedly discovered it had paid Consolidated for improperly invoiced time sheets and for overtime it was not supposed to owe. In opposition to Consolidated's motion for summary judgment, Russell Construction contends that the evidence demonstrates that Russell Construction paid Consolidated at least $13,835.75 for overtime it did not owe; at least $17,037.061 for timesheets submitted by workers which were invalid; and for 568 hours or $13,348.00 for work which was not, in fact, performed by Consolidated's temporary laborers. In support of this claim, Russell Construction argues that the payment of these invoices was premised on Consolidated's fraudulent concealment of the true facts underlying the invoices. *See also* [DE 64-12] (showing that timecards were not signed or initialed by RC supervisors); [DE 70-1] Todd & Cleek Depo. [7] pp. 80-81 (discussing Consolidated's billing practice which included billing Russell Construction for unsigned or irregular timecards).

**\*10** However, the Court has determined that Consolidated is entitled to summary judgment in its favor on Russell Construction's fraud claim because Russell Construction has failed to create a genuine issue of material fact as to scienter. Accordingly, as Russell Construction advances only a theory that the conversion took place by fraudulent means, summary judgment is appropriate in Consolidated's favor on this claim as well.

### E. Abuse of Process

Russell Construction alleges that Consolidated is liable for abuse of process by attempting to collect on its final invoice, even though it knew the amount charged was the product of fraud, overbilling, and billing for unauthorized time or for an unauthorized rate, and by filing and prosecuting a collection lawsuit against plaintiff which it subsequently voluntarily dismissed. Amd. Compl. ¶¶ 188-89. Russell Construction alleges that the Onslow County lawsuit was filed for the sole and improper purpose of attempting to coerce Russell Construction to pay the final invoice. *Id.* ¶¶ 129-130. Russell Construction further alleges that Consolidated maintained the Onslow County lawsuit after it had assigned the rights to collect the final invoice to defendant Altus. *Id.* ¶ 133.

"[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ."

*Fowle v. Fowle,* 263 N.C. 724, 728, 140 S.E.2d 398 (1965) (emphasis omitted). Dismissal of an abuse of process claim is appropriate where "there are no allegations that a defendant misused process *after* proceedings had been initiated." *Chidnese v. Chidnese,* 210 N.C. App. 299, 311, 708 S.E.2d 725 (2011). In other words, "the mere filing of a civil action with an ulterior motive is not sufficient to sustain a claim for abuse of process. In order to proceed on an abuse of process claim, a plaintiff must allege the misuse of process after an action between the parties has already commenced." *Id.* at 312, 708 S.E.2d 725.

In its own motion for summary judgment, Russell Construction argues that Consolidated filed the Onslow County lawsuit with an ulterior motive, namely to collect based on the final invoice money it was not due, and further that Consolidated had already "assigned" the portion of the final invoice that had been paid by its insurance carrier to the carrier. [DE 86 p. 25].

Neither Russell Construction's argument nor the evidence it relies on demonstrates that Consolidated "assigned" any amount to its insurance carrier. *See* [DE 70-1] Todd & Cleek Depo. pp. 146-150 (discussing Consolidated's receipt of insurance proceeds for the amount not disputed by Russell Construction and describing that Consolidated would need a judgment in its favor for the full amount of the final invoice in order to receive payment from the carrier for the disputed portion of the final invoice).

Moreover, the evidence is further devoid of any suggestion of misuse of process after the Onslow County lawsuit had commenced. The second element of Russell Construction's abuse of process claim requires it to demonstrate "that once the prior proceeding was initiated, *the defendant committed some wilful act* whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter." *Fuhs v. Fuhs,* 245 N.C. App. 367, 376, 782 S.E.2d 385 (2016) (emphasis in *Fuhs*) (quoting *Stanback v. Stanback,* 297 N.C. 181, 201, 254 S.E.2d 611 (1979)). Russell Construction has not identified, nor has it create a genuine issue of fact as to whether Consolidated engaged in, any willful act by which it tried to use the existence of the Onslow County lawsuit to gain an advantage over Russell Construction in any collateral matter. Accordingly, Consolidated is entitled to summary judgment on this claim as well.

### F. Negligent misrepresentation & Negligence

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**\*11** Russell Construction alleges claims for negligent misrepresentation and negligence in the alternative to the above claims. Its negligent misrepresentation claim is based upon Consolidated's alleged material misrepresentations of fact regarding its performance under the contract and the amounts to which it was entitled. Russell Construction further alleges that Consolidated failed to exercise reasonable care in obtaining or communicating false information to Russell Construction upon which Russell Construction justifiably relied. Amd. Compl. ¶¶ 205-06. In support of its negligence claim, Russell Construction alleges that Consolidated owed Russell Construction a duty of ordinary care and that it breached that duty by, among other things, failing to: properly account for amounts owed by Russell Construction under the contract, failing to provide employees who had successfully passed a criminal background check, failing to ensure that the temporary workers had the requisite skills, failing to disclose that it could not consistently meet Russell Construction's staffing needs, failing to ensure that the terms of the contract between the parties was reduced to writing, failing to verify the amount of debt allegedly owed by plaintiff, and failing to correct billing errors. *Id.* ¶ 213.

Under Virginia law, a claim for negligent misrepresentation is not recognized, but rather is construed as one for constructive fraud. *Baker v. Elam*, 883 F. Supp. 2d 576, 581 (E.D. Va. 2012). Where "allegations of constructive fraud are nothing more than allegations of negligent performance of contractual duties [they are] not actionable in tort. A tort action cannot be based solely on a negligent breach of contract." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 559, 507 S.E.2d 344 (1998). As Russell Construction's negligent misrepresentation claim is based upon Consolidated's performance under the contract, the claim fails. Moreover, Russell Construction cannot prevail on a claim for constructive fraud where, as here, the Court has found that summary judgment in favor of defendant is appropriate on the fraud claim. *Baker*, 883 F. Supp. 2d at 581. [8]

Under Virginia law, a claim for negligence requires a plaintiff to show a legal duty, breach of that duty, and resulting damages. *See RGR, LLC v. Settle*, 288 Va. 260, 275, 764 S.E.2d 8 (2014). Russell Construction's negligence claim is grounded, at bottom, on its claim that Consolidated breached its contracts with Russell Construction. "[I]n certain circumstances the actions of the party breaching the contract can show both a breach of the contract terms and a tortious breach of duty. But the duty tortiously or negligently breached

must be a common law duty, not one existing between the parties solely by virtue of the contract." *Foreign Mission Bd. of S. Baptist Convention v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144 (1991) (internal quotation and citation omitted).

Russell Construction's negligence claim is premised on Consolidated's duties under the contract, and the complaint does not identify any separate common law duty sufficient to permit such a claim to proceed. The gravamen of Russell Construction's complaint is that Consolidated failed to perform under the River Landing contract and any implied contract for other projects. The Court determines that on these facts under Virginia law it should "heed[ ] the common law's caution against turning every breach of contract into a tort[.]" *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 92, 834 S.E.2d 244 (2019) (quotation and citation omitted). [9]

**\*12** Moreover, in support of its motion for summary judgment, and in opposition to Consolidated's motion, Russell Construction again fails to cite any evidence which would either create a genuine issue of fact on this issue or establish that Russell Construction is entitled to summary judgment. Accordingly, the Court determines that Consolidated is entitled to summary judgment on this claim.

### G. Unjust enrichment

"The underlying purpose of allowing *quantum meruit* recovery is two-fold, i.e. to prevent the breaching party from being unjustly enriched and to restore the aggrieved party in the contract to the position he occupied prior to entry into the contract. *Quantum meruit* merely seeks to return to the plaintiff the reasonable value of the services and goods provided to the defendant." *W.F. Magann Corp. v. Diamond Mfg. Co.*, 775 F.2d 1202, 1208 (4th Cir. 1985). To recover on a claim for unjust enrichment, the plaintiff must show that it conferred a benefit on another party, which was consciously accepted by the other party as a benefit, and, as applicable here, that the benefit was not gratuitously conferred. *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116, 661 S.E.2d 834 (2008). [10]

Russell Construction alleges a claim for unjust enrichment/ quantum valebant in the alternative to its breach of contract claim and "to the extent no contract is found to exist between Defendant CSI and Plaintiff". Amd. Compl. ¶ 220. Consolidated has agreed that a contract between the parties existed and this claim accordingly fails as to the River Landing project.

There is further no evidence which would support or tend to show that Consolidated was unjustly enriched under any implied contract for work to be performed in Virginia or Florida. Russell Construction has not argued, nor has it demonstrated, that Consolidated was enriched by any implied contract or that Russell Construction provided any goods or services to Consolidated or conferred a benefit to Consolidated which was not gratuitous. Accordingly, summary judgment is appropriate in Consolidated's favor on this claim.

(3) Consolidated's counterclaims.

Having determined that summary judgment is appropriate in favor of Consolidated on Russell Construction's claims, the Court considers whether, when viewing the facts in the light most favorable to the non-moving party, either party is entitled to summary judgment on Consolidated's counterclaims.

Consolidated alleges that Russell Construction breached the River Landing contract by failing to pay $38,810.37 for employment services provided to Russell Construction for the River Landing project. Consolidated also seeks to recover attorneys' fees provided for under the 25 September contract amounting to 20% of the invoice amount.

Consolidated contends that, as provided for by the terms of the River Landing contract, it sent weekly invoices to Russell Construction and that Russell Construction paid the invoices, including invoices that expressly included overtime charges and were supported by allegedly unverified time sheets. [DE 54-2] Russell Depo. pp. 67-69; 158; 202; [DE 54-18 p. 2].

In opposition to Consolidated's motion, Russell Construction argues that Consolidated is not entitled to summary judgment because Russell Construction is entitled to amounts in excess of those sought by Consolidated. [DE 71 p. 35]. Whether Russell Construction would be entitled to a set off does not preclude entry of summary judgment in Consolidated's favor.

 **\*13** Accordingly, in light of the Court's holding on Russell Construction's claims and Russell Construction's failure to create a genuine issue of material fact as to whether it owes Consolidated the amount claimed plus contracted for attorney fees, the Court grants Consolidated's motion for summary judgment on its counterclaim for breach of contract. Its unjust enrichment counterclaim is therefore duplicative and dismissed.

CONCLUSION

For the foregoing reasons, plaintiff's motion for extension of time [DE 60] is GRANTED, plaintiff's motion for leave to file excess pages [DE 87] is GRANTED, plaintiff's motion to strike [DE 91] is DENIED, and plaintiffs motion for partial summary judgment [DE 77] is DENIED. Defendant's motion to strike [DE 75] is DENIED and defendant's motion for summary judgment [DE 53] is GRANTED. The Clerk of Court is DIRECTED to enter judgment in defendant's favor on plaintiff's claims as well as on defendant's counterclaim in the amount of $38,810.37 plus attorney fees of 20% of the invoiced amount and close the case.

SO ORDERED, this 23rd day of March 2022.

**All Citations**

Slip Copy, 2022 WL 875993

---

**Footnotes**

1    Plaintiff does not argue, and thus concedes, that Florida and Virginia law would apply to any contract formed to perform work in those states.

2    Prior to engaging in its analysis, the Court would note that in its opposition to Consolidated's motion for summary judgment as well as in its own motion for partial summary judgment, which repeats many of the arguments made in opposition to Consolidated's motion, Russell Construction generally fails to provide

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

specific citation to evidence in the record which would create a genuine issue of material fact as to its claims or establish that it is entitled to summary judgment on liability.

Although Russell Construction has provided the Court with a large record in support of its motion, "[l]itigants may not thrust upon the Court the burden of combing through the record to make a case on their behalf." *Reynolds v. N. Neck Reg'l Jail Auth.*, Civil Action No. 3:07CV700, 2009 WL 1323224 at *1, 2009 U.S. Dist. LEXIS 39889 at *1 (E.D. Va. May 11, 2009). Accordingly, in considering the parties' motions, the Court will consider the evidence specifically cited and relied upon by plaintiff, but it will not comb the record on plaintiff's behalf.

3       Russell Construction's breach of contract claim lists other acts or omissions by Consolidated which comprise the basis of its tort-based claims, and the Court thus considers those grounds when considering RC's tort claims.

4       A claim for fraud under North Carolina law requires a plaintiff to similarly show "(1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage." *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 194 (M.D.N.C. 1997).

5       *See also McKinnon v. CV Indus.*, 213 N.C. App. 328, 338, 713 S.E.2d 495 (2011) ("unfulfilled promise is not actionable fraud").

6       *See also United States v. Whedbee*, 964 F.2d 330, 333 (4th Cir. 1992) (reciting similar elements of claim for conversion under North Carolina law).

7       Eric Todd and Craig Cleek as Rule 30(b)(6) designees of Consolidated.

8       Russell Construction is further not entitled to summary judgment in its favor even if the claim is considered under North Carolina law. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609 (1988) ("tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care."). First, the Court would note that in its motion for summary judgment Russell Construction fails in discussing this claim to cite to a single piece of evidence in the record. As noted above, it is not the duty of the Court to comb the record to find facts which may support a party's argument. Second, as discussed above in relation to Russell Construction's fraud claim, the record does not support a finding that Consolidated or its employees made statements that they knew at the time to be false. Even assuming misrepresentation were made by Consolidated employees, Russell Construction has not come forward with evidence which would create a genuine issue of fact as to whether the information provided by Consolidated was prepared without reasonable care. Russell Construction has further failed to demonstrate that it is entitled to summary judgment in its favor on this claim.

9       North Carolina law recognizes that "a duty of care may arise out of a contractual relationship, 'the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract.'" *Olympic Prod. Co., A Div. of Cone Mills Corp. v. Roof Sys., Inc.*, 88 N.C. App. 315, 322, 363 S.E.2d 367 (1988) (quoting *Pinnix v. Toomey*, 242 N.C. 358, 362, 87 S.E.2d 893 (1955)). However, at this stage of the proceeding, relying, as Russell Construction does, only on an allegation or argument that Consolidated breach its duty not to breach the contract is insufficient to go forward on this claim. *See Hardin v. York Mem'l Park*, 221 N.C. App. 317, 326, 730 S.E.2d 768 (2012).

10      *See also Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554 (1988).

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

© 2022 Thomson Reuters. No claim to original U.S. Government Works.