Potts v. KEL, LLC, Not Reported in S.E. Rptr. (2018)

2018 NCBC 24

2018 WL 1597644

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of North Carolina,
Iredell County.
Business Court.

W. Avalon POTTS, individually and derivatively on behalf of Steel Tube, Inc., Plaintiff,
v.
KEL, LLC; Rives & Associates, LLP; Elite Tube & Fab, LLC; Defendants,
and
Steel Tube, Inc., Nominal Defendant,
and
Leon L. Rives, II, Defendant/ Counterclaimant/Third–Party Plaintiff,
v.
Avalon1, LLC Third–Party Defendant/Counterclaimant

16 CVS 2877
|
March 27, 2018

**\*1** 1. This action arises out of a dispute between Plaintiff W. Avalon Potts and Defendant Leon L. Rives, II regarding the ownership and management of Steel Tube, Inc. Potts alleges that Rives, an officer and director of Steel Tube, used the company's assets for his personal benefit and engaged in self-dealing. Potts asserts seventeen claims for relief, individually and derivatively on behalf of Steel Tube, against Rives, his firm Rives & Associates, LLP, and two companies allegedly owned by Rives's family members.

2. Rives and Rives & Associates move to dismiss some but not all of Potts's claims under North Carolina Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is **GRANTED** in part and **DENIED** in part.

**Attorneys and Law Firms**

Moore Van Allen, PLLC, by Mark A. Nebrig and John T. Floyd, for Plaintiffs W. Avalon Potts and Steel Tube, Inc.

Sharpless & Stavola, P.A., by Fredrick K. Sharpless and Pamela S. Duffy, for Defendant Leon L. Rives, II.

**ORDER AND OPINION ON MOTION TO DISMISS**

Conrad, Judge.

I.

BACKGROUND

3. The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6). The following factual summary is drawn from relevant allegations in the amended complaint and the attached exhibits.

4. Steel Tube "is a carbon steel and galvanized steel tube manufacturer" based in Statesville, North Carolina. (V. Am. Compl. ["Compl."] ¶ 13, ECF No. 17.) Potts and Walter Lazenby co-founded the company in 1990 and served as its officers and directors for the next 25 years, until Lazenby resigned his positions in early 2015. (*See* Compl. ¶¶ 16, 24.) At the time of incorporation, Potts held a 50 percent ownership interest in Steel Tube, and Lazenby held the other 50 percent (part of which he later transferred to his wife). (*See* Compl. ¶¶ 14, 15.)

5. In July 2014, Rives expressed interest in acquiring Steel Tube from Potts and the Lazenbys. (*See* Compl. ¶ 17.) Rives had previously "provided tax preparation services" to Steel Tube. (Compl. ¶¶ 9, 17.) The discussions stalled by year's end, and Rives instead reached a separate deal to purchase the shares owned by Lazenby and his wife. (*See* Compl. ¶¶ 18, 19, 24.) In return for the Lazenbys' 50 percent interest in Steel Tube, Rives agreed to pay $600,000, split between an initial $20,000 lump sum and subsequent $6,000 monthly installments. (*See* Compl. ¶ 19(b).)

6. Rives and Lazenby executed their agreement on January 15, 2015, and Lazenby resigned the same day. (*See* Compl. ¶¶ 19, 24.) Before resigning, and as part of his agreement with Rives, Lazenby "add[ed] Rives to the signature card of any [Steel Tube] bank accounts." (Compl. ¶ 19(e).) Lazenby also executed an Acceptor Management Agreement, which purported to give Rives "full authority to manage the affairs of" Steel Tube and to name him Chief Executive Officer. (Compl. ¶ 22 & Ex. 4.) Rives did not disclose the Acceptor Management Agreement to Potts. (*See* Compl. ¶ 23.)

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works. 1

Potts v. KEL, LLC, Not Reported in S.E. Rptr. (2018)

2018 NCBC 24

7. In February 2015, Potts and Rives held their first shareholder meeting, during which they elected themselves directors. (Compl. ¶ 25.) They immediately convened a meeting as the Board of Directors and elected Potts as President and Rives as Secretary and Treasurer. (*See* Compl. ¶¶ 25–26, Exs. 5, 6.) At the same meeting, Potts and Rives "agreed not to make material acquisitions or dispositions of [Steel Tube] assets or property or spend more than $25,000 unless both parties agreed." (Compl. ¶ 27.)

**\*2** 8. According to Potts, shortly after making this promise, Rives began using Steel Tube's assets to finance his purchase of the Lazenbys' shares. In May 2015, after opening a line of credit and a bank account for Steel Tube, Rives issued a certified check for $20,000 to Lazenby. (*See* Compl. ¶ 30.) Between June 2015 and June 2016, Rives made monthly cash withdrawals of $7,500 from a Steel Tube account, apparently to pay the monthly installments he owed to the Lazenbys. (*See* Compl. ¶ 31.) He deposited an additional $62,875 into a joint account with his wife in December 2015. (*See* Compl. ¶ 32.)

9. Potts further alleges that Rives engaged in self-dealing designed to benefit himself and his family. Rives's family members formed Elite Tube & Fab, LLC ("Elite Tube") in May 2015. (*See* Compl. ¶ 40.) Over the next few months, Rives transferred approximately $120,000 in cash to Elite Tube; removed some of Steel Tube's manufacturing equipment and delivered it to Elite Tube without consideration; and purchased other equipment, raw materials, and website design services for Elite Tube using Steel Tube's funds. (*See* Compl. ¶¶ 40, 41(a)–(e).)

10. In April 2016, Rives's brothers formed KEL, LLC. (*See* Compl. ¶ 37.) On behalf of Steel Tube, Rives entered into a contract with KEL to handle Steel Tube's transportation and trucking services. (*See* Compl. ¶ 38.) Until that time, Steel Tube had performed the services itself at a profit. (*See* Compl. ¶ 38.) When Potts learned of the contract in the summer of 2016, he canceled it. (*See* Compl. ¶ 39.)

11. After initiating this action in November 2016, Potts took steps to acquire Rives's ownership interest in Steel Tube. Potts first acquired the Lazenbys' security interest in the shares held by Rives. (*See* Order on Mot. to Am. ¶¶ 24–28, ECF No. 57.) Because Rives had defaulted at some point in 2016, Potts then repossessed the shares. (*See* Order on Mot. to Am. ¶¶ 28–30.) (The circumstances of the repossession and eventual foreclosure of the shares are the subject of Rives's

counterclaims, which are not at issue here. (*See* Am. Answer and Countercl. 14–24, ECF No. 58.) )

12. On February 22, 2017, Potts amended his complaint. Stating that Potts is now "the sole shareholder" of Steel Tube, the amended complaint includes seventeen claims (fourteen against Rives personally) for breach of fiduciary duty, fraud, and numerous other causes of action. (*See* Compl. ¶¶ 4, 42–121.) Potts also added claims against Rives & Associates, Elite Tube, and KEL.

13. In accordance with the Case Management Order, Rives and Rives & Associates filed their motion to dismiss on December 7, 2017. (Case Management Order 7, ECF No. 64.) The motion has been fully briefed, and the Court held a hearing on January 29, 2018, at which counsel for Potts, Rives, and Rives & Associates appeared. The motion is ripe for determination.

II.

ANALYSIS

A. Legal Standard

14. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). "Dismissal of a complaint under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

15. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986); *see also Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001).

Case 3:21-cv-00072-RJC-DSC   Document 43-6   Filed 07/18/22   Page 2 of 7

Potts v. KEL, LLC, Not Reported in S.E. Rptr. (2018)

2018 NCBC 24

**\*3** 16. The Court may consider documents "attached to and incorporated within" the pleadings without converting a Rule 12(b)(6) motion into one for summary judgment. *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007).

### B. Fraud and Facilitating Fraud

17. Potts asserts his claim for fraud against Rives. He alleges that Rives falsely promised not to dispose of Steel Tube's assets or spend more than $25,000 without Potts's consent and then, a few months later, began misappropriating Steel Tube's assets for his own benefit and the benefit of his family and friends. (*See* Compl. ¶ 59; *see also* Compl. ¶¶ 29–41.) Potts further alleges that Rives & Associates and KEL facilitated Rives's fraud, entering into an agreement with him to carry out the fraudulent scheme. (*See* Compl. ¶¶ 94–98.)

18. Rives contends the fraud claim should be dismissed for two reasons. He first cites the general rule that a promissory representation will not support a claim for fraud. (*See* Br. in Supp. of Mot. Dismiss, 10–11 ["Br. in Supp."], ECF No. 71.) Second, he argues that the economic loss rule bars the claim. (*See* Br. in Supp. 16; Reply Br. in Supp. of Mot. Dismiss 5–6 ["Reply Br."], ECF No. 81.) Rives and Rives & Associates also argue that the claim for facilitating fraud should be dismissed if the underlying claim for fraud is dismissed. (*See* Br. in Supp. 18–19; Reply Br. 6.)

19. Our appellate courts routinely identify five "essential elements" needed to state a claim for fraud: (a) a false representation or concealment of a material fact; (b) that was reasonably calculated to deceive; (c) that was made with intent to deceive; (d) that did in fact deceive (*i.e.*, was relied upon by the recipient of the misrepresentation); and (e) that resulted in damage to the injured party. *Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992). Only the first element is at issue. The Court therefore assumes, for purposes of deciding the motion to dismiss, that the complaint sufficiently alleges the other elements.

20. To support a claim for fraud, a false representation must relate to a past or existing fact. *See Trull v. Central Carolina Bank & Trust Co.*, 117 N.C. App. 220, 225, 450 S.E.2d 542, 545 (1994); *Martinez v. Reynders*, 2013 NCBC LEXIS 31, at \*7, 2013 WL 3778152 (N.C. Super. Ct. July 10, 2013). Statements of opinion, predictions of future events, and promises of future intent generally do not give rise to an action for fraud. *See, e.g.*, *Leftwich v. Gaines*, 134 N.C. App. 502, 508, 521 S.E.2d 717, 722–23 (1999); *Braun v. Glade Valley School, Inc.*, 77 N.C. App. 83, 87, 334 S.E.2d 404, 407 (1985). In drawing this distinction, the law recognizes that opinions, predictions, and promises typically signal uncertainty or contingency in a way that statements of existing fact do not. The listener is entitled to rely on the latter, but not the former. *See Pritchard v. Dailey*, 168 N.C. 330, 332, 84 S.E. 392, 393 (1915) (holding that "[o]ne who relies on" opinions or promissory representations "must take the consequences of his own imprudence").

21. This is not a hard and fast rule. A speaker may not voice an opinion that he does not honestly believe, intending to deceive the listener, and then assert immunity from an action for fraud. *See Leftwich*, 134 N.C. App. at 508, 521 S.E.2d at 723. Likewise, "a promissory misrepresentation may constitute actual fraud if the misrepresentation is made with intent to deceive and with no intent to comply with the stated promise or representation." *Braun*, 77 N.C. App. at 87, 334 S.E.2d at 407; *accord Liggett Grp., Inc. v. Sunas*, 113 N.C. App. 19, 30, 437 S.E.2d 674, 681 (1993). In each case, the "misrepresentation of the state of the promisor's mind" is itself a misrepresentation of an existing fact, subject to a claim for fraud. *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 452, 279 S.E.2d 1, 6 (1981); *accord McKinnon v. CV Indus., Inc.*, 213 N.C. App. 328, 338, 713 S.E.2d 495, 503 (2011). Accordingly, it is permissible to state a claim for fraud based on promissory representations, but to do so, the plaintiff must allege facts "from which a court and jury may reasonably infer that the defendant did not intend to carry out such representations when they were made." *Whitley v. O'Neal*, 5 N.C. App. 136, 139, 168 S.E.2d 6, 8 (1969).

**\*4** 22. Rives argues that the fraud claim lacks this essential allegation of fraudulent intent. In Rives's view, the complaint alleges only that he "made a promise" (not to make material transactions without Potts's consent) and that "the promise was ultimately not kept" (when he diverted assets and cash to himself and his family). (Br. in Supp. 13.) Thus, he contends, the complaint fails to state a claim because an alleged breach, standing alone, is not sufficient to give rise to an inference of fraudulent intent. *See Williams v. Williams*, 220 N.C. 806, 810, 18 S.E.2d 364, 366–67 (1942) ("Mere proof of non-performance is not sufficient to establish the necessary fraudulent intent."), *ovr'd on other grounds State ex rel. Utils. Comm'n v. S. Bell*, 307 N.C. 541, 299 S.E.2d 763 (1983).

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Potts v. KEL, LLC, Not Reported in S.E. Rptr. (2018)

2018 NCBC 24

23. The Court disagrees. According to the complaint, at the time Rives promised not to dispose of Steel Tube's assets without Potts's consent, he had already taken steps to give himself authority to do just that. Through the terms of his deal to purchase the Lazenbys' shares, Rives was added to the signature card for Steel Tube's bank accounts. (*See* Compl. ¶ 19(e).) Rives and Lazenby then executed an agreement that purported to give Rives "full authority to manage the affairs of" Steel Tube and further purported to be terminable only upon a "unanimous vote of all [Steel Tube] shareholders." (Compl. ¶¶ 21–22, Ex. 4.) Rives did not disclose this agreement to Potts. (*See* Compl. ¶ 23.)

24. Taking these allegations as true, it would be reasonable to infer that, from the moment he acquired an interest in Steel Tube, Rives sought to control its affairs without regard to Potts's interest. The allegations also suggest a willingness to conceal business matters from Potts, contrary to the promise he made just weeks later. At the pleading stage, this amply supports an inference of fraudulent intent. *See Brandis v. Lightmotive Fatman, Inc.*, 115 N.C. App. 59, 66–67, 443 S.E.2d 887, 890–91 (1994) (reversing order granting motion to dismiss fraud claim); *see also Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 U.S. Dist. LEXIS 31039 at *31, 2011 WL 1134453, at *9 (E.D.N.C. Jan. 25, 2011) (denying motion for summary judgment where "basic nature" of the parties' relationship suggested "a possible motive to deceive").

25. The inference of fraudulent intent is strengthened by the allegation that Rives breached his promise shortly after making it. Within three months, Rives began transferring cash, equipment, and other assets from Steel Tube to himself, his family, and companies controlled by his family members. (*See* Compl. ¶¶ 30–32, 40–41.) This short interval between promise and breach further supports an inference that Rives never intended to abide by the promise in the first place. *See Hudgins v. Wagoner*, 204 N.C. App. 480, 491, 694 S.E.2d 436, 445 (2010) (holding that jury could reasonably infer fraudulent intent where breach occurred "less than a full month" after promissory representation); *McKee v. James*, 2013 NCBC LEXIS 33, at *27–28, 2013 WL 3893430, at *9 (N.C. Super. Ct. July 24, 2013) (denying motion to dismiss fraud claim where defendant took actions inconsistent with promissory representation shortly after making it).

26. It bears noting that Potts must develop evidence to support these allegations and his "claim may ultimately be difficult to prove." *Priest v. Coch*, 2013 NCBC LEXIS 6, at *20, 2013

WL 312385, at *6–7 (N.C. Super. Ct. Jan. 25, 2013). At this early stage, however, the complaint's allegations permit a reasonable inference of fraudulent intent sufficient to survive Rule 12(b)(6) review.

27. Rives next argues that the economic loss rule bars the claim for fraud because "[t]he face of the complaint reflects that these statements are governed by an alleged contract." (Br. in Supp. 18.) The North Carolina Court of Appeals recently clarified that, "while claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred." *Bradley Woodcraft, Inc. v. Bodden*, 795 S.E.2d 253, 259 (N.C. Ct. App. 2016). The economic loss rule therefore does not bar Potts's fraud claim. *See Austin v. Regal Inv. Advisors, LLC*, 2018 NCBC LEXIS 3, at *40, 2018 WL 324710, at *13 (N.C. Super. Ct. Jan. 8, 2018); *Haigh v. Superior Ins. Mgmt. Grp., Inc.*, 2017 NCBC LEXIS 100, at *24, 2017 WL 4848154, at *8 (N.C. Super. Ct. Oct. 24, 2017); *Holcomb v. Landquest LLC*, 2017 NCBC LEXIS 36, at *13, 2017 WL 1499345, at *5 (N.C. Super. Ct. Apr. 21, 2017).

 **\*5** 28. For these reasons, the Court denies the motion to dismiss Potts's claim for fraud. Rives and Rives & Associates offer no independent basis for dismissing the claim for facilitating fraud apart from the arguments discussed above as to the underlying fraud claim. Thus, having determined that the fraud claim survives, the Court also denies the motion as to the claim for facilitating fraud.

### C. Section 75–1.1

29. Potts bases his claim for unfair or deceptive trade practices on the same conduct that supports his fraud claim. Specifically, he alleges that Rives violated N.C. Gen. Stat. § 75–1.1 by making cash payments from Steel Tube to himself, diverting Steel Tube's assets to Elite Tube, and causing Steel Tube to enter into a transportation services contract with KEL. Rives argues that the claim must be dismissed on the ground that this conduct occurred within a single market participant and was therefore not in or affecting commerce. (*See* Br. in Supp. 19–22.)

30. Section 75–1.1 states that "unfair or deceptive acts or practices in or affecting commerce" are "unlawful." As construed by our Supreme Court, this language is broad enough "to regulate a business's regular interactions with other market participants" but not so broad as to capture

Case 3:21-cv-00072-RJC-DSC Document 43-6 Filed 07/18/22 Page 4 of 7

**Potts v. KEL, LLC, Not Reported in S.E. Rptr. (2018)**

2018 NCBC 24

conduct "solely related to the internal operations" of a business. *White v. Thompson*, 364 N.C. 47, 51–52, 691 S.E.2d 676, 679 (2010). Thus, "any unfair or deceptive conduct contained solely within a single business is not covered by" section 75–1.1. *Id.* at 53, 691 S.E.2d at 680.

31. At the hearing, Potts's counsel wisely conceded that section 75–1.1 does not extend to the funds Rives allegedly used to pay the Lazenbys or to other cash deposits into his personal account. (*See* Compl. ¶¶ 30–32.) These payments, made directly to himself or used for his personal expenses, are "more properly classified as the misappropriation of corporate funds within a single entity rather than commercial transactions between separate market participants." *Alexander v. Alexander*, 792 S.E.2d 901, 905 (N.C. Ct. App. 2016); *accord Urquhart v. Trenkelbach*, 2017 NCBC LEXIS 12, at *12–13, 2017 WL 536318, at *4–5 (N.C. Super. Ct. Feb. 8, 2017).

32. Potts instead points to the alleged transactions with Elite Tube and KEL. According to Potts, these "self-dealing transactions through other business entities" were not confined within Steel Tube and were therefore in or affecting commerce. (Mem. in Opp'n to Mot. Dismiss 10 ["Opp'n"], ECF No. 77.) Rives responds that the transactions were simply "another form of alleged misappropriation ... for Rives' personal benefit." (Reply Br. 8.)

33. The Court agrees with Rives. The very purpose of this lawsuit is to resolve disputes about the management of a single business (Steel Tube) that arose between its co-owners and co-directors (Potts and Rives). Indeed, the premise of Potts's section 75–1.1 claim is that "Rives took advantage of his position as an officer and director of" Steel Tube to benefit himself and his family. (Compl. ¶ 118; *see also* Compl. ¶¶ 39, 40.) Our courts have recognized similar disputes for what they really are: intra-company feuds about internal operations. *See, e.g.*, *JS Real Estate Invs. LLC v. Gee Real Estate, LLC*, 2017 NCBC LEXIS 104, at *21, 2017 WL 5197488, at *7 (N.C. Super. Ct. Nov. 9, 2017) (granting summary judgment in dispute between LLC members); *Chisum v. Campagna*, 2017 NCBC LEXIS 102, at *34–36, 2017 WL 5161978, at *11–12 (N.C. Super. Ct. Nov. 7, 2017) (granting motion to dismiss in dispute between LLC members); *McKee v. James*, 2014 NCBC LEXIS 74, at *42, 2014 WL 7534078, at *8 (N.C. Super. Ct. Dec. 31, 2014) (granting summary judgment in dispute between co-owners of corporation).

**\*6** 34. The involvement of Elite Tube and KEL "does not change the fundamental character of the dispute." *JS Real Estate*, 2017 NCBC LEXIS 104, at *21, 2017 WL 5197488, at *7. As this Court recently noted, "*White* itself involved a partner's breach of fiduciary duty by diverting work to his own business and away from the partnership," which the Supreme Court deemed outside the scope of section 75–1.1. *Id.* (citing *White*, 364 N.C. at 53, 691 S.E.2d at 680). Here, Rives may have carried out his mismanagement and misappropriation of Steel Tube's assets by channeling money and equipment to Elite Tube and diverting a corporate opportunity to KEL. But the unfairness of these actions, if any, inheres in the relationship between Potts and Rives *as co-owners* of Steel Tube.

35. The cases cited by Potts are therefore inapposite. *See Sara Lee Corp. v. Carter*, 351 N.C. 27, 32–33, 519 S.E.2d 308, 311–12 (1999); *Wilkie v. Stanley*, 2011 NCBC LEXIS 11, at *14–15, 2011 WL 1674961, at *5 (N.C. Super. Ct. Apr. 20, 2011). These cases concerned unfair acts that "clearly occurred in the broader marketplace." *Powell v. Dunn*, 2014 NCBC LEXIS 3, at *10, 2014 WL 340254, at *2 (N.C. Super. Ct. Jan. 28, 2014); *see also Sara Lee*, 351 N.C. at 32–33, 519 S.E.2d at 312 (stating that "defendant and plaintiff clearly engaged in buyer-seller relations in a business setting"); *Wilkie*, 2011 NCBC LEXIS 11, at *14–15, 2011 WL 1674961, at *5 (noting allegation that "Defendant made misrepresentations to ... clients").

36. Potts has not alleged any unfairness in the broader marketplace. Rather, he alleges a management disagreement within Steel Tube, in which the unfairness occurred in the interaction between the company's owners and directors. The involvement of Elite Tube and KEL was merely incidental to what is, at bottom, an intra-company dispute. *See JS Real Estate*, 2017 NCBC LEXIS 104, at *21, 2017 WL 5197488, at *7; *Chisum*, 2017 NCBC LEXIS 102, at *36, 2017 WL 5161978, at *12; *Bandy v. Gibson*, 2017 NCBC LEXIS 66, at *21–22, 2017 WL 3207068, at *7 (N.C. Super. Ct. July 26, 2017).

37. Because the alleged wrongdoing concerns the internal operations of a single market participant, the complaint fails to state a claim under section 75–1.1. The claim is dismissed with prejudice.

D. Individualized Injury

Case 3:21-cv-00072-RJC-DSC Document 43-6 Filed 07/18/22 Page 5 of 7

Potts v. KEL, LLC, Not Reported in S.E. Rptr. (2018)

2018 NCBC 24

38. Potts asserts his claims for breach of fiduciary duty, constructive fraud, and fraud both individually and derivatively on behalf of Steel Tube. Rives argues that these claims should be dismissed to the extent Potts asserts them in his individual capacity. (*See* Br. in Supp. 22.)

39. The "well-established general rule" is that "shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation." *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 335, 525 S.E.2d 441, 444 (2000) (quoting *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 219 (1997) ). North Carolina courts recognize two exceptions to this rule: where the shareholder was owed a special duty, or where the shareholder has suffered an individualized injury. *See Barger*, 346 N.C. at 660, 488 S.E.2d at 219.

40. As confirmed by counsel at the hearing, Potts does not assert the existence of a special duty. (*See* Opp'n 10–12.) Instead, Potts argues that he has suffered an individualized injury because Rives caused the filing of tax documents containing false statements about Steel Tube's ownership and financial condition. (*See* Opp'n 11.) Potts alleges that he has incurred or may incur penalties and "costs associated with preparation and filing of corrected tax return documents" for his individual tax returns. (Compl. ¶¶ 49, 57; *see also* Opp'n 11.)

41. The Court agrees that the complaint sufficiently alleges an individualized injury. Potts seeks recovery for costs incurred for his individual tax returns, not for any costs or penalties incurred by Steel Tube as to its own tax returns. The injury is "peculiar or personal" to Potts and therefore sufficient to support a claim in Potts's individual capacity. *Wirth v. Sunpath, LLC*, 2017 NCBC LEXIS 84, at *11, 2017 WL 4126923, at *4–5 (N.C. Super. Ct. Sept. 14, 2017).

 **\*7** 42. In his reply brief, Rives points out that the complaint also seeks individual recovery for lost assets, lost profits, and lost opportunities. (*See* Reply Br. 9; *see also* Compl. ¶¶ 49, 57.) Potts does not address these allegations and appears to concede that they do not qualify as special, individualized injuries. Indeed, lost profits and similar injuries are plainly injuries to the corporation, and the Court concludes they cannot support an individual claim. *See, e.g.*, *Timbercreek Land & Timber Co., LLC v. Robbins*, 2017 NCBC LEXIS 64, at *22–23, 2017 WL 3214427, at *7–8 (N.C. Super. Ct. July 28, 2017).

43. Rives also correctly observes that the fraud claim "makes no references to personal tax expenses or personal tax consequences to Potts." (Reply Br. 10.) As a result, Potts's fraud claim does not include any allegations sufficient to satisfy *Barger*'s special injury exception.

44. Accordingly, the Court denies the motion to dismiss Potts's individual claims for breach of fiduciary duty and constructive fraud to the extent those claims seek recovery of Potts's individual tax-preparation costs and penalties. The Court grants the motion to dismiss Potts's claim for fraud to the extent it is brought in his individual capacity.

E. Negligent Misrepresentation

45. In his response brief, Potts "consents to the dismissal of" his claim for negligent misrepresentation. (Opp'n 12.) The Court therefore grants the motion to dismiss as to negligent misrepresentation and dismisses the claim with prejudice.

III.

CONCLUSION

46. For these reasons, the Court **GRANTS** in part and **DENIES** in part the motion.

a. The Court **DENIES** the motion as to the claims for fraud and facilitating fraud to the extent brought derivatively.

b. The Court **GRANTS** the motion as to the section 75–1.1 claim. The claim is **DISMISSED** with prejudice.

c. The Court **DENIES** the motion to dismiss Potts's individual claims for constructive fraud and breach of fiduciary duty to the extent those claims seek recovery for individual injuries related to the costs of tax preparation. The Court **GRANTS** the motion to dismiss the claim for fraud to the extent it is brought in Potts's individual capacity.

d. The Court **GRANTS** the motion to dismiss the claim for negligent misrepresentation. The claim is **DISMISSED** with prejudice.

Case 3:21-cv-00072-RJC-DSC Document 43-6 Filed 07/18/22 Page 6 of 7

**Potts v. KEL, LLC, Not Reported in S.E. Rptr. (2018)**

2018 NCBC 24

**All Citations**

Not Reported in S.E. Rptr., 2018 WL 1597644, 2018 NCBC
24

---

**End of Document**                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:21-cv-00072-RJC-DSC   Document 43-6   Filed 07/18/22   Page 7 of 7